ROBERT L. ADAMS JR       :

   v.           :    CIVIL NO. 23-02142

BUCKS COUNTY CORRECTIONAL    :
FACILITY et, al

             :

Dear Clerk of court,

enclosed you will find a complete amended complaint against bucks county correctional facility and its many officials. Please be advised that I have not received a copy of the documents that I requested from this court nor have i received any mail regarding the motions I filed for an extention to submit my Amended-Complaint. I did call you and speak to you personally and I informed the court of how I had limited use of supplies and of how I needed to purchase stamps. Paper and envelopes. I am hereby requesting a full copy of everything that has been filed under this docket number. I am aware of the illegal actions of bucks county correctional facility and it many officials and I know from whats been sent back to me (The copy of the complaint) that bucks county did indeed sabotage my paperwork. I would like a copy of all the Exhibits filed in this case and I humbly and respect-fully request them. As proof from the record, I have been able to pay the cost of the fees that come alone with filing my 1983 complaint. The court taken a percentage of my money every month and I have paid significantly. So Again, with the upmost respect, I sincere beg for a copy of all the exhibits and affidavits filed in this case. Thank you so very much and May God Bless you.

        RESPECTFULLY SUBMITTED: ROBERT L. ADAMS JR

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

# UNITED STATES DISTRICT COURT

for the

Eastern  District of Pennsylvania

|  |  |  |
|---|---|---|
| | ) | Case No.   23-2142 |
| **ROBERT  L.  ADAMS  JR** | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| **SEE Attached** | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued.  If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.  Do not include addresses here.)* | | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

The Clerk will not file a civil complaint unless the person seeking relief pays the entire filing fee (currently $350) and an administrative fee (currently $52) in advance, or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915.  A prisoner who seeks to proceed in forma pauperis must submit to the Clerk (1) a completed affidavit of poverty and (2) a copy of the trust fund account statement for the prisoner for the six month period immediately preceding the filing of the complaint, obtained from and certified as correct by the appropriate official of each prison at which the prisoner is or was confined for the preceding six months.  See 28 U.S.C. § 1915(a)(2).

If the Judge enters an order granting a prisoner's application to proceed in forma pauperis, then the order will assess the filing fee (currently $350) against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct an initial partial filing fee equal to 20% of the greater of the average monthly deposits to the prison account or the average monthly balance in the prison account for the six-month period immediately preceding the filing of the complaint, as well as monthly installment payments equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00, until the entire filing fee has been paid.  See 28 U.S.C. § 1915(b). **A prisoner who is granted leave to proceed in forma pauperis is obligated to pay the entire filing fee regardless of the outcome of the proceeding, and is not entitled to the return of any payments made toward the fee.**

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name _____

All other names by which

you have been known: _____

ID Number _____

Current Institution _____

Address _____

_____

|  | *City* | *State* | *Zip Code* |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name _____

Job or Title *(if known)* _____

Shield Number _____

Employer _____

Address _____

_____

|  | *City* | *State* | *Zip Code* |

☐ Individual capacity     ☐ Official capacity

Defendant No. 2

Name _____

Job or Title *(if known)* _____

Shield Number _____

Employer _____

Address _____

_____

|  | *City* | *State* | *Zip Code* |

☐ Individual capacity     ☐ Official capacity

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

Defendant No. 3

    Name _____

    Job or Title *(if known)* _____

    Shield Number       **See Attached**

    Employer _____

    Address _____

             *City*       *State*       *Zip Code*

    ☐ Individual capacity   ☐ Official capacity

Defendant No. 4

    Name _____

    Job or Title *(if known)* _____

    Shield Number       **See Attached**

    Employer _____

    Address _____

             *City*       *State*       *Zip Code*

    ☐ Individual capacity   ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

    A.    Are you bringing suit against *(check all that apply)*:

        ☐ Federal officials (a *Bivens* claim)

        ☒ State or local officials (a § 1983 claim)

    B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

being beaten, Excessive Force, CRuel and unusual punishment, denied access to the court, due process violations, mental torture, intentional infliction of emotional distress, Defamation of character, professional negligence, deliberate indifference, attempted murder, Medical deliberate indifference, deliberate indifference, 14th Amendment violations, denial of equal protection, calculated harassment, Retaliation, 1st Amendment violations, inhumane unsanitary conditions, false imprisonment, 8th Amendment violations, Physical abuse, excessive force, assault, battery,

    C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

<u>**See Attached Complaint**</u>

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

[X] Pretrial detainee

[ ] Civilly committed detainee

[ ] Immigration detainee

[X] Convicted and sentenced state prisoner

[ ] Convicted and sentenced federal prisoner

[X] Other *(explain)*   <u>I am a parole violator facing new charges</u>

## IV.  Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

<u>On B-Block, On The RHU (Restricted Housing Unit) and on the MHU (Mental Health Unit)</u>

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

Defendant No. 3
    Name
    Job or Title *(if known)*
    Shield Number
    Employer
    Address

| *City* | *State* | *Zip Code* |

☐ Individual capacity    ☐ Official capacity

Defendant No. 4
    Name
    Job or Title *(if known)*
    Shield Number
    Employer
    Address

| *City* | *State* | *Zip Code* |

☐ Individual capacity    ☐ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

    A.    Are you bringing suit against *(check all that apply)*:

        ☐ Federal officials (a *Bivens* claim)

        ☐ State or local officials (a § 1983 claim)

    B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

    C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

C.   What date and approximate time did the events giving rise to your claim(s) occur?

**11/1/2022 at 8:30am and continued through to late June  2023**

D.   What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

Facility failed to protect me with its unsecured security cell doors that suppose t keep inmates in the cell and unwanted inmates out of the cell that doesn't belong t them. Guards labeling plaintiff a Snitch; Calling plaintiff A Fagget and Homo-Muslim guards psychology torturing plaintiff, guard getting plaintiff assaulted by another inmate, Staff beating plaintiff fracturing his nose, tearing ligaments in plaintiff right hand, right shoulder, left facial contusion, facial and head swelling, dehydr ation, infection, unsanitary conditions, food being spit in, being denied a mattres shower for weeks, being stripped naked and left in front of orther inmate twice,bein stripped searched in front of a woman twice, excessive searching, reading and censo ring plaintiffs legal mail, poisioning plaintiff by deliberately giving him differe nt medication, calling plaintiff niggers, denying plaintiff access to the court,den ying plaintiff access to attorney, discrimination, humiliation, denied equal protec tion of law, false imprisonment, denied 1st amendment right to associate,

V.   **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Fracture nose, Torn ligaments in right hand, torn ligaments in right shoulder left temple (Facial) contusion, head swelling, facial swelling, infection, dehydra-tion, mental distress, emotional distress, ptsd, legal swelling and ankle swelling

VI.   **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Plaintiff Respectfully request $100,000 (one Hundred Thousand) Dollars from each defendant For all the reasons set forth in attach complaint and $60,000 (Sixty Thousand) dollars from each defendant for nominal and punitive damages. Please see Attach complaint

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Bucks county Correction Facility

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☒ Do not know

If yes, which claim(s)?

See Attached complaint. I'm not really sure what this means but I believe I covered this question in attached complaint.

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

[X]  Yes

[ ]  No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

[X]  Yes

[ ]  No

E.    If you did file a grievance:

1.    Where did you file the grievance?

George W. Hill Correctional facility in Delaware County

2.    What did you claim in your grievance? Beating, assault, false imprisonment, excessice force, Being stripped naked and left naked in front of other inmates,being stripped searched in front of a woman, being labeled a Snitch, fractured nose, torn ligaments in right hand and shoulder, reading of legal mail, harassment, excessive searching, psychological torment, denial of equal protection, conspiracy, discrimination, defaming of character, unsanitary conditions, feces covered cell, urine covered cell, denial of mattress and showers, denial of yard, denial of Lexis Nexis law service, Denied acces to court, denied access ot attorney, 1st, 4th, 14th, 8th Amendment violations and more. See Attached Complaint

3.    What was the result, if any? I was denied help, Captain nottingham told me directly, ("NO, I'm not going to help you, stop sending me reequest slips). I was denied help from the institution and its officials.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (Describe all efforts to appeal to the highest level of the grievance process.) I appeal my grievances up to the highest levels, I wrote reequest forms, I filed motions trying to asked the court for help with a preliminary injunction. I was told to stop filing grievances and I was told that my grievances would not be answered. I was visited by Deputy warden K. Reed Twice, Deputy Cantino Once, Superintendent Metellus never came to visit me, Captain nottingham denied me help to my face an all my grievances were denied.

F.    If you did not file a grievance:

    1.   If there are any reasons why you did not file a grievance, state them here:

> I filed grievances to the highest level (Prison Oversight Board)

    2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

> Lt. Thompson, I told every sergeant and lieutenant named in this complaint. I told the superintendent Metellus through countless request and letters. I wrote both Deputy Warden Cantino and Kelly Reed countless request slips and grievances.. I filed a grievance at delaware county. I wrote the NAACP, The Prison Society of Pennsylvania and I wrote: "The Pennsylvania Institutional Law Project"

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

> Appealed to the prison Oversight board, The highest level

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)   _____

Defendant(s)   _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.   _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒ Yes

☐ No

D.      If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)          ROBERT L. ADAMS JR

Defendant(s)        DELAWARE COUNTY et, al.,

2.   Court *(if federal court, name the district; if state court, name the county and State)*

In THE EASTERN DISTRICT OF PENNSYLVANIA

3.   Docket or index number

2:23-cv-01178-JFM

4.   Name of Judge assigned to your case

3/24/23

5.   Approximate date of filing lawsuit

6.   Is the case still pending?

☒ Yes

☐ No

If no, give the approximate date of disposition

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

E.D.Pa. AO Pro Se 14 ( Rev. 01/21) Complaint for Violation of Civil Rights

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____

Signature of Plaintiff       _____

Printed Name of Plaintiff   _____

Prison Identification #      _____

Prison Address               _____

_____
            *City*              *State*        *Zip Code*

### B.   For Attorneys

Date of signing: _____

Signature of Attorney       _____

Printed Name of Attorney    _____

Bar Number                   _____

Name of Law Firm             _____

Address                      _____

_____
            *City*              *State*        *Zip Code*

Telephone Number             _____

E-mail Address               _____

DOCTOR GESSNER
NURSE JAMIE
NURSE ENA
SGT. JURGELEWICZ
MISCONDUCT EXAMINER DITTMAN
CASE MANAGER DAVID WEBB
BUCK COUNTY CORRECTIONAL ADMINISTRATION

## JURISDICTION AND VENUE

1.This is a civil action authorized by 42 U.S.C Section 1983 t redress the depriva-
tion, under color of state law, of rights secured by the constitution of the UNITED
STATES. The court has jurisdiction under 28 U.S.C section 1331 and 1343(a)(3).
Plaintiff seeks declaratory relief pursuant to 28 U.S.C section 2201 and 2202.
Plaintiff claims for injunctive relief are authorized by 28 U.S.C. Section 2283 &
2284 and rule 65 of the federal rules of civil procedure.

2. Venue lies in this judicial district pursuant to 28 U.S.C.§1391 (b)(2) because
the events giving rise to this  action occurred in Bucks County, Pennsylvania, with-
in the eastern district of Pennsylvania.

## PARTIES

Plaintiff **ROBERT L. ADAMS JR** is a 43-year-old man who is/was incarcerated at the
Bucks County Correctional Facility in Doylestown, Pennsylvania From October 1, 2022
to June ___, 2023.

4. Defendant Bucks county correctional facility is a Municipal corporation organize
under the Laws of the Commonwealth of Pennsylvania. Bucks county receives federal
assistance for the operation of Bucks county correctional facility.

5. Defendant C. Metellus is the Superintendent of Bucks county correctional facility
He is legally responsible for the operation of bucks county correctional facility
and for the welfare of all the inmates in the prison. At all times mentioned in this
complaint He held the   Rank   of Superintendent and acted under the color of Law.
He is being sued in his Individual and Official capacity.

6.Defendant Kelly Reed Is the Deputy Warden of Bucks county correctional facility.
She is legally responsible for the operation of Bucks county correction facility,
inmate affairs and for the welfare of all the inmates in the prison. Who held the
rank of Deputy warden at all times mentioned in this complaint and who also acted
under the color of law. She is being sued in her individual and official capacity.

7. Defendant Galione is the deputy warden at bucks county correctional facility. He
was legally responsible for operations of buck county correctional facility and for
the welfare of the inmates in that prison. HE held the rank of deputy warden at all
times mentioned in this complaint, who acted under the color of law. He is being

(2)

8. Defendant Deputy warden Cantino is the Deputy warden at Bucks county correctional facility. He is legally responsible for the operations of Bucks county correctional facility and for the welfare of the inmates in that prison. Who held the rank of Deputy warden at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

9. Defendant Captain Nottingham is the captain at Bucks county correctional facilit He is legal responsible for the operations of Bucks county correctional facility and for the welfare of the inmates in the prison. Who held the Rank of Captain at all times mentioned in this complain and who acted under the color of law. He is being sued in his individual and Official capacity.

10. Defendant LT. K. Wylie is a lieutenant at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and the welfare of all the inmates in the prison. Who at all times mentioned in thi complaint held the rank of lieutenant and who acted under the color of law. He is being sued in his individual and official capacity.

11. Defendant LT. M. Clayton id s lieutenant at buck county correctional facility. He is legally responsible for the operations of buck county correctional facility and for the welfare of the inmates in that prison. Who held the rank of Lieutenant at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

12. Defendant LT. C. Hugg is a lieutenant at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in that prison. Who held the rank of lieutenant at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

13. Defendant LT. J. Whitesall is a lieutenant at bucks county correctional facilit He is legally responsible for the operations of bucks county correctional faiclity and for the welfare of the inmates in that prison. He is also responsible for training the officers. Who at all times mentioned in this complaint held the rank of lieutenant and who acted under the color of law. He is being sued in his individ ual and official capacity.

14. Defendant Lt. Kavoch is a lieutenant at bucks county correctional facility. He is legally responsible for the operations of bucks county correction facility and for the welfare of the inmates in that prison. Who aat all times mentioned in this complaint held the rank of Lieutenant and who acted under the color of law. He is being sued in his individual and official capacity.

15. Defendant SGT. N. Murphy is a sergeant at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in that prison. Who held the rank of Sergeant at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

16. Defendant SGT. M. Raggi is a sergeant at bucks county correctional facility. He is legally responsible for the operations of buck county correctional facility and for the welfare of the inmates in the prison. Who held the rank of sergeant at all times mentioned in this complain and who acted under the color of law. He is being sued in his individual and official capacity.

17. Defendant SGT. A. Beck is a sergeant at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in that prison. Who held the rank of sergeant at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

18. Defendant SGT. R. Grous is a sergeant at buck county correctional facility. He is legally responsible for the operations of bucks county correctional facility and for the welfare f the inmates in that prison. Who held the rank of sergeant at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

19. Defendant SGT. N. Cruz is a sergeant at bucks county correctional facility. She is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in that prison. Who held the rank of sergeant at all times mentioned in this complaint and who acted under the color of law. She is being sued in her individual and official capacity.

20. Defendant SGT. C. Odonnell is a sergeant at bucks county correctional facility He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in that prison. Who held the rank of sergeant at all times mentioned in this complaint and who act under the color of law. He is being sued in his individual and official capacity.

21. Defendant SGT. A. Cruz is a sergeant at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in that prison. Who held the rank of sergeant at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

22. Defendant SGT. K. Kinkelin is a sergeant at bucks county correctional facility She is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of sergeant at all times mentioned in this complaint and who acted under the color of law. She is being sued in her individual and official capacity.

23. Defendant SGT. Jurgelewics is a sergeant at bucks county correctional facility He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of sergeant at all times mentioned in this complaint and who acted under the color of law.

24. Defendant SGT. Hodges is a sergeant at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of sergeant at all times mentioned in this complaint and who acted under color of law. He is being sued in his individual and official capacity.

25. Defendant C/O F. Williams, is a correctional officer at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

26. Defendant C/O Schuster, is a correctional officer at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility.

27. Defendant C/O Schuster, is a correctional officer at bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

28. Defendant C/O Mcfadden, is a correctional officer at the bucks county correctional facility. He is legally responsible for the operations of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

29. Defendant C/O Swan, is a correctional officer at bucks county correctional facility. He is legally responsible for the operations of buck county correctional facility and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

30. Defendant C/O B. Butler, is a correctional officer at bucks county correctional facility. He is responsible for the operations of buck county correctional facility and for the welfare of the inmates in the prison. Who held the rank of Correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

31. Defendant C/O Clarke, is a correctional officer at the bucks county correctional facility. He is responsible for the operations of the prison and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

32. Defendant C/O Harrison, is a correctional officer at the bucks county correctional facility. He is responsible for the operations of the prison and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

33. Defendant C/O M. Gray, is a correctional officer at the bucks county correctional facility. He is responsible for the operations of the prison and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

34. Defendant C/O D. Connor, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county correctional facilit and for the welfare of the inmates in the prison. Who held the rank of correctional officer and who acted under the color of law. He is being sued in his individual and official capacity.

35. Defendant C/O New, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county correctional facilit and for the welfare of the inmates in the prison. Who held the rank of correctional officer and who acted under the color of law. He is being sued in his Individual and official capacity.

36. Defendant C/O Black, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county correctional facilit and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

37. Defendant C/O Geibert, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county correctional facilit and for the welfare of the inmates in the prison. Who held the rank of correctional officer and who acted under the color of law. He is being sued in his individual and official capacity.

38. Defendant C/O Romano, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county correctional facilit and for the welfare of the inmates in the prison. Who held the rank of correctional officer and who acted under the color of law. He is being sued in his individual and official capacity.

39. Defendant C/O Mayers, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all time mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

40. Defendant C/O Smythe, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all time mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

41. Defendant C/O Miles, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all time mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

42. Defendant C/O Faggins, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all time mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

43. Defendant C/O Hortijenko, is a correctional officer at bucks county correction facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all time mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

44. Defendant C/O Glenn, is a correctional officer at the bucks county correctiona facility. He is responsible for the operations of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of correctiona officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

45. Defendant C/O Bromiley, is a correctional officer at the bucks county correct-ional facility. He is legally responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

46. Defendant C/O John Doe #1, is a correctional officer at the bucks county correctional facility. He is  responsible for the operations of bucks county priso and for the welfare of the inmates in the prison. Who held the rank of correctiona officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

47. Defendant C/O John Doe #2, is a correctional officer at bucks county correct-ional facility. He is responsible for the operations of bucks county prison and fo the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

48. Defendant C/O Barnette, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county correctional facilit and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

49. Defendant C/O J. Polichetti, is a correctional officer at bucks county

correctional facility. He is responsible for the operations of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

50. Defendant C/O South, is a correctional officer at the bucks county correctional facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

51. Defendant C/O Keefe, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

52. Defendant C/O Mattoi, is a correctional officer at bucks county correctional facility. He is responsible for the operations of bucks and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

53. Defendant C/O Kasyprzk, is a correctional officer at the bucks county correctional facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the Rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

54. Defendant C/O Labadie, is a correctional officer at the bucks county correctional facility. His is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

55. Defendant C/O Roque, is a correctional officer at bucks county correctional facility. She is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. She is being sued in her individual and official capacity.

56. Defendant Hernandez, is a correction officer at bucks county correctional Facility. He is responsible for the operations of bucks county and for the welfare of the inmates in the prison. Who held the rank of correctional officer at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

57. Defendant "Bucks County Policy makers", are responsible for the operations and policies of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of "Bucks county Policy Makers" at all times mentioned in this complaint and who acted under the color of law. And who are being sued in their Individual and official capacity.

58. Defendant Bucks county medical department(PrimeCare Inc), is the medical incorporation the operate in bucks county correctional facility. PrimeCare is responsible for all the medical care for all the inmates, "Including Plaintiff Adams" while incarcerated at bucks county correctional facility. At all times mentioned in this complaint did the operate under the color of law. PrimeCare is being sued in its individual and official capacity.

59. Defendant Brian Norfleet (Chief Medical Administrator), is the Chief medical administrator who works for PrimeCare Inc, and the bucks county correctional facility. He is responsible for the inmates care, Including Plaintiff Adams well-being, while incarcerated at bucks county prison. Who held the rank of Chief Medical administrator at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

60. Defendant Doctor Gessner, Is the Doctor that works for PrimeCare and Bucks county correctional facility. Doctor Gessner is responsible for the medical care of all the inmates in bucks county correctional facility, including Plaintiff Adams Who held the Rank of Doctor at all times mentioned in this complaint and who acted under the color of law. She is being sued in her individual and official capacity.

61. Defendant Nurse Jamie. is a nurse that works for PrimeCare Inc, and Bucks count correctional. He is responsible for the medical care of all the inmates incarcerated at bucks, Including Plaintiff Adams. Who held the rank of Nurse at all times ment-ioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

62. Defendant Nurse Ena, is a nurse that works for Primecare Inc, and Bucks county correctional facility. She is responsible for the medical care of all the inmates incarcerated at bucks, including Plaintiff Adams. Who held the rank of nurse at all times mentioned in this complaint and who acted under the color of law. She is being sued in her individual and official capacity.

63. Defendant SGT. Jurgelewizc, is a sergeant at bucks county correctional facility He is responsible for the operations of bucks county correctional facility and for the welfare of the inmates in the prison. Who held the rank of sergeant at all time mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

64. Defendant Misconduct Examiner Dittman, is the misconduct hearing examiner for bucks county correctional facility. He is responsible for overseeing the misconduct hearings of inmates in bucks county prison. Who held the rank of "Hearing Examiner" at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

65. Defendant David Webb (Case Manager), is/was the case manager for inmates at the bucks county correctional facility. He was responsible for case managing those in-mates on his case load at bucks county. Who held the rank of case manager at all times mentioned in this complaint and who acted under the color of law. He is being sued in his individual and official capacity.

66. Defendant "Bucks County Corrections Administration", is the administration at bucks county who are legally responsible for the operations of bucks county correct ional facility and the welfare of the inmates in the prison. Who held the rank of (Administration) at all times mentioned in this complaint and who acted under the color of law. Bucks Administration is being sued in its individual and official capacity.

### AMENDED COMPLAINT

Plaintiff **ROBERT L. ADAMS JR**, is a 43 year old man who was incarcerated at bucks count correctional facility in Doylestown Pennsylvania, on 10/1/2022 for simple assault charges that derive out of Bensalem Pennsylvania. While at Bucks county correctional facility, Plaintiff Adams was moved around a lot due to his loud voic and his LBGTQ+ demeanor. He was eventually moved back to B-Block where he began. While on B-Block, Plaintiff Adams maintained compliance with his **OPIOID USE DIS-ORDER MEDICATION**, namely: SUBOXONE and his mental health medication, namely: (Seraquill and RimRON. Outside of keeping a religious book in his hand, Plaintiff stayed on the phone trying to save his marriage and he attended drug and alcohol group every week.

On 11/1/22, when plaintiff returned to the B-Block unit from his Drug and alcohol group, Plaintiff was denied safety and equal protection of the law as bucks county staff deliberately and intentionally caused plaintiff Adams to be Maliciously hurt and assaulted by another inmate, who broke into plaintiff Adams locked cell where he was housed, after telling the Correctional officer he was going to assault the plaintiff. The bucks county correctional facility "Itself" also denied plaintiff Adams safety, security and equal protection by deliberately neglecting to fix the faulty locking mechanisms within the doors of the cells for years.

This incident on B-Block lead to the retaliation of officers and other staff acros the facility, which included plaintiff adams being: (Assaulted by officers, battery mental torment, beatings, intentional infliction of emotional distress, excessive force, cruel and unusual punishment, tampering with out going federal mail, First Amendment violations of searching incoming legal mail, reading it and censoring it while out of plaintiffs presence;  Fourth Amendment violations of Due process; Excessive searching; Harassment;  Being stripped searched in from of a female officer to humiliate plaintiff in violation of Plaintiff eighth Amendment;  Being denied a mattress for weeks; Being denied a shower for weeks; Being denied healthy sanitary conditions; Being placed in feces and urine covered cell after cell; Being stripped naked and left naked in front of other inmates on two different occasions to humiliate and degrade plaintiff; Being forced to freeze and sleep on frozen bed frame;  Nose being fractured by assaulting staff; Ligaments being torn in right from handcuffs being smashed down with excessive force done maliciously and intentionally to hurt plaintiff; Ligaments in right shoulder being torn by assaulting officers; swollen face and head; Left facial contusion where skin was torn off from officer kneeing plaintiff in the face; Medical stall being   deliberately indifferent to plaintiffs medical needs;  Officers being deliberately indifferent to plaintiff serious medical needs; Food being tampered with, spit in and made unsafe to consume; Being given "Eventually" A mattress that was covered with stained urine and fecal matter; Medical Negligence; Being denied access to th courts; Conspiracy; Professional Negligence; Psychological torment; Being denied access to Attorney; Attorney client confidentiality chilled; Being denied equal protection of the law: 14th Amendment violations of procedural due process; Inhumane unsanitary conditions in violation of the 14th and 8th Amendment; Attempted murder by Bucks county Correctional officer and PrimeCare Nurse; First Amendment violations, being denied visits and the right to associate; Humiliation, and Torture by Housing plaintiff/transferring plaintiff to the MHU unit where inmates bang, kick and scream 24/7 without pause to fatigue.

On 11/21/22, Defendant officer south Deliberately Attempted to murder plaintiff Adams by intentionally tucking his bald head and launching it upwards at plaintiff Adams defenseless falling face, with the full force and weight of his running body behind his attack. Defendant South was running with top speed. Plaintiff had  surrender and was going down to the floor. This officer  failed to use any kind of protocol and maliciously and sadistically attempted to murder plaintiff with his excessive force. Defendants mercenary kill move could have drove plaintiffs nose cartilage up into his brain, fatally wounding plaintiff. Plaintiff remained motionless on the floor while he was then quickly hand cuffed. While six or seven officer sat on plaintiff's motionless back, plaintiff was again attacked by Office Schuster who kneed plaintiff in the head and face, fracturing his nose and tearing skin from plaintiffs left temple. Another defendant punched placed in the face while plaintiff laid handcuffed and motionless on the floor.

Plaintiff Adams brings this action pursuant to 42. U.S.C § 1983 for violations of his constitutional rights under the 14th, 4th, 8th, 6th, and 1st Amendment of the UNITED STATES CONSTITUTION; The Americans with Disability Act of 1990 ("ADA"), 42 U.S.C §12131; The Rehabilitation Act, 29 U.S.C. § 794; Pennsylvania Professional Negligence Law; Deliberate indifference under the Eighth and Fourteenth Amendment clause

## FACTS

57. On 4/21/23 Plaintiff Robert L. Adams Jr, Gave the Montgomery County Public defender a Manila envelope containing a 75 page hand written complaint with 30 pages of evidence in it, (Exhibits against bucks county and its staf. The exhibits consisted of grievances, medical request slips, request slips, medical documents from two outside hospitals). **COURTROOM FOOTAGE WILL SHOW PLAINTIFF GIVING THE ATTORNEY THE MANILA ENVELOPE TO MAIL. PLAINTIFF DELIBERATELY SHOWED THE COURTROOM CAMERA THE STAMPED ENVELOPE.** In june 2023, while housed at bucks county correctional facility, plaintiff mailed another manila envelop out to the Federal courthouse in Philadelphia. That manila envelops contained another handwritten complaint along with another 30 something pages of evidence...i.e, "Grievances, request to medical,  hospital paper and grievance responds. Plaintiff Adams have received an Order from this Honorable court to rewrite A Amended complaint and Plaintiff shall Obey the Order of the court.

58. On 11/1/2022 at about 9:30am, Plaintiff Adams returned to Housing Unit B-Block after attending DNA (Drug and Alcohol) Group. Plaintiff went to the phone room but was then escorted to his cell by Defendant C/O G. Simpson. On the way to his cell, plaintiff Adams got a soda from the inmate in 35 cell while officer Simpson held his cell door open. He was then locked in his cell. Plaintiff called off simpson and he immediately returned to plaintiffs cell and opened his door to provide plaintiff with cleaning supplies. Plaintiff needed the cleaning supplies to clean up after his new cell mate who was detoxing.

59. Defendant C/O simpson than began to argue with the inmate in 9-cell about a constitutional tablet. The inmate in 9-cell told officer Simpson how his old cellmate broke his tablet before he left and plaintiff Adams stated, (From inside his own locked cell) that the statement 9-cell made were true. Plaintiff was housed in 3-cell. Defendant C/O simpson then yelled: "Adams shut the fuck up you Rat! All you do is snitch on what goes on on the unit, trying to get browny points." Plaintiff said; "Yo Stop lying on my name." Defendant C/O Simpson then said: "You've been telling since you've been on this block." Plaintiff yell, "You're a fuckin' lie, stop saying shit like that."

70. Defendant C/O simpson then yelled out to the block-(Who was already paying close attention to the argument)-and inmate boiling answered his called and teamed up with officer simpson. Inmate boiling then came over to 7,8 and 9 cell and began arguing with Plaintiff Adams and 9-cell, along with officer simpson.

71. Defendant C/O Simpson continued to argue with 9-cell and plaintiff said: "That man broke the tablet before he was transferred to philly. you wasn't even working when he left." Officer Simpson said: "You fucking Rat, why don't you mind your own business. All you do is tell." Plaintiff said: "Stop calling me a fucking snitch yo, I'm not one of these bucks county inmates." Officer simpson said: "Your a snitch and you it. I don't have to make it up." Inmate boiling then began to argue with Plaintiff Adams because the plaintiff told him: "Your wrong for coming to the aid of a guard youngin." Inmate boiling then told officer simpson: "Im getting ready to knock this fagget out. I hate mother fuckers who rat yo."  He then turned to plaintiff Adams, who was locked in his cell and said to him while he stood in front of officer Simpson: "I'm going to kick your fuckin teeth in you snitch ass Nigga. I promise I'm about to beat your ass, keep talking."

72. Plaintiff Adams continued to argue with simpsom. Boiling then stood on plaintif

Adams door and began yelling while officer simpson yelled at 9-cell. They then switched doors briefly and officer simpson told Plaintiff "You should of stayed out of this." Plaintiff Adams said from behind his cell door, "That man is telling you the truth and he really didn't break his tablet."

73. Inmate "Boiling" told officer Simpson to step off while he handled the situation (Plaintiff Adams). Being as though down stairs was locked in for the morning recreation period and up stairs was out for rec, Plaintiff Adams did believe he was safe behind his locked cell door. The big metal door was locked and both tiers was not out for recreation. Plaintiff Adams was where he was suppose to be and he didn't not leave his cell.

74. Defendant C/O Simpson followed Inmate "Boiling's" orders and went to the front desk and then sometime later, He returned to 8-cell and asked Plaintiff Adams, 'How'd he just get in here?' How'd this door just open?" Plaintiff Adams told him, 'You buzzed the door open I guess." Plaintiff immediately said after that, "You just opened the door." Officer simpson said, "Not just now, when he was in here?" Referring to inmate Boiling who has assaulted Plaintiff Adams.

75. Plaintiff Adams replied He didn't know and that the last thing he remembered was talking to him on the door. Officer simpson then left and closed the cell and then a minute later, three officer then Removed Plaintiff Adams from the block and placed him in the holding cell.

76. Plaintiff Adams began to complain about stomach pain and how he had to use the bathroom. He was forced to use the bathroom on the floor and himself. Plaintiff has a bullet lodged in his adomen that prevents him from holding anything for a long period of time.

77. SGT. A. Cruz met Plaintiff Adams in medical and asked him what happened. Plaintiff Adams replied, "I don't know, I was attacked and when I woke up my jumper was tore off." Sergeant A. Cruz said, "So he attacked you?" Plaintiff Adams said, "Yes! I was locked in my cell and then I woke up in my cell with my door open and he was running out of it." Plaintiff then told SGT. A. Cruz He needed to be checked out by medical and that he would like that a Rape kit be done and Sergeant A. Cruz denied plaintiff Adams medical treatment and took him out of medical and locked him back in to the holding cell.

78. Plaintiff Adams seen Sergeant Pohopia and said, "Your officer is calling me a snitch and he just allowed a inmate to enter my cell and attack me. I couldn't run, I couldn't call for help and I couldn't flee. Please view the cameras, Your officer got me hurt and allowed a inmate to enter my cell." Sergeant Pohopia just looked at plaintiff and then walked away.

79. Plaintiff Adams was placed in the RHU on a Medical watch where, another inmate sat in front of his cell and observed his actions. He was written up for fighting when, he wasn't fighting. He wrote a grievance on line paper that night. (The inmate monitor) wrote the grievance for Plaintiff Adams. (Please view video Footage).

80. On 11/2/2022 at about 1:30am, Plaintiff Adams was informed that inmate "Boiling" broke into his cell. Plsintiff Adams immediately wrote a grievance to deputy Kelly Reed and Superintendent Metullus, about the Faulty locking mechanisms within the cell doors. It was brought to his attention by officers that, the institution has been aware of the problem with how all the cell door locks are faulty and malfunctioned.

81. It was brought to Plaintiff Adams attention that, Inmates had been receiving misconduct reports for years for popping the locks or tampering with the cell door locks and placed in the RHU (Restricted housing unit) because of it/

82. Inmate "Boiling" was seen on camera, popping Plaintiff Adams cell door lock from the outside and breaking into Plaintiff Asams cell. Inmate "Boiling" was written up  for breaking into Plaintiff Adams cell and for fighting. He has, (As of this date 5/27/23) several misconducts for breaking into inmates cell and stealing their property and fighting. Breaking into others cells and robbing their cell is his M.O.

83. Defendant C/O Simpson lied on his misconduct report stating he was stocking toilet paper. He also lied about inmates fighting as Plaintiff Adams was not fighting.

84. Defendant Dittman (Misconduct hearing examiner) lied and stated Plaintiff was seen fighting on the video footage. Plaintiff Adams knows this to be a lie because, "He was not fighting," and also because a Lieutenant told him he was not seen on video fighting and that he doesn't understand why his appeal wasn't granted.

85. Plaintiff Adams filed an appeal that came back forged by (Lt. Clayton) who, re-wrote and altered Plaintiff's appeal and then sent plaintiff the actual newly writ-ten document with wet ink. Please see attached exhibit 1 in plastic. This ink was transferred onto this tissue. Inmate are not given this type of pen ink from this type of pen. Plaintiff Believes the pen ink on this sticky is the same ink. **(Evidence is with the first complaint that was given to montgomery county public defenders to file. Also, evidence of this was filed with the complaint that bucks county opened and removed evidence from the manila envelope." (Video footage from the prison and courthouse will prove my filing of these  documents)**

86. On 11/2/2022, correctional officer Franklin Williams began to call Plaintiff Adams out of his name, in an attempt to amuse other inmates that was housed on the RHU-unit. Plaintiff Adams didn't feed into officer williams but did hand words with the inmate monitor that sat on his door and watched him. The arugment made the inmate monitor and after a few more words of degration from officer williams, The days verbal assault ended,

87. On 11/23/2023, C/O F. Williams began to call Plaintiff Adams out of his name more disrespectfully than he had the day before. Plaintiff Adams asked c/o williams to stop calling him snitches and faggets and homo muslim man and nigga'. Plaintiff Adams told Officer F. Williams, "I'm not your nigga or none of that." Inmate carrol began crying like a baby, (teaming up with officer williams) and attacking plaintiff Plaintiff Adams said, "Stop calling me a nigga, that's racist." And Defendant C/O f. Williams said, "I'm Black, I can call you nigga as much as I want nigga."

88. 0n 11/4/2022, plaintiff Adams was threatened by officer williams. Williams told Plaintiff Adams he was going to shoot him. Williams also told Plaintiff Adams, he was going to get his wife's address from his visiting list and then go see her and "Fuck" his wife in front of his son. Plaintiff Adams wrote a green request slip to defendant deputy warden Kelly Reed, asking her for help and to tell c/o F. williams to stop bullying him  and calling him a snitch. He (Plaintiff Adams) Told how c/o williamswas telling inmates that inmate "Boiling" beat him up and how he was a rat.

89. On 11/4/2022, Plaintiff Adams asked for a grievance in his request slip to deput warden Kelly Reed. A formal Grievance. Staff at bucks county correctional facility instruct inmates to write their grievance on regular paper. Plaintiff Adams has don that as well and it was written/reported to Deputy Warden Kelly Reed.

90. On 11/4/2022, Plaintiff Adams appealed his misconduct as staff had instructed him and the appeal took over two weeks to come baci. The Appeal came back forged with wet ink.  Defendant F. williams began to hang on plaintiffs door and really degrade him calling plaintiff: "Snitches, faggets, homo muslim man and more." He even called out to other inmate and use Plaintiff Adams Homosexuality as a stage to belittle plaintiff and more. Plaintiff Adams often cried after the mental assaul

sessions that would last for hours during Defendant williams shift.

91. On 11/9/2022, Plaintiff Adams wrote a Grievance to Defendant Deputy Kelly Reed, about being denied the law library to research and litigate his case. Sgt Pohopia denied plaintiff Adams law library and he denied plaintiff Adams the law library again on 11/15/2022 when, Plaintiff Adams asked to use the Tablet where he could use "Lexis Nexis" to research his case. Plaintiff Adams also requested a power of attorney from the law library and was denied.

92. On 11/9/2022, Plaintiff Adams appealed his misconduct to Superintendent Metellus and stated that He, The Plaintiff, was not fighting. He complained about the faulty locking mechanisms in the door and how it should have been secure enough to keep inmate "Boiling" from breaking in and assaulting him. Plaintiff also complained about officer simpson calling him a Snitch in front of all the other inmates and then he complained about how defendant C/O Simpson didnt rush to his Aid nor did he call a code 99 for help.

93. Plaintiff Adams told superintendent Metellus about how the security door that was suppose to protect him didn't and he complained about the faulty locking device, lock within the door and, he asked to be released from the RHU. Plaintiff requested to press charges on both Defendant C/O Simpson and inmate Boiling in a reaquest to Defendant Superintendent Metellus and in a grievance to Superintendent metellus before, he sent The superintendent a letter. **(Please view all grievances and re-quest slips submitted to this honorable court during the first and second attempted filing of this complaint. Also view all video footage from bucks county showing the plaintiff have filed grievances and request slips and sick calls. Everything is on video footage).**

94. Between the dates 11/9/2022 and 11/20/2022, Plaintiff Adams wrote several request slips and grievances complaining about Defendant Correctional officer Franklin williams calling him Faggets, Snitches, Homo-Muslim, Homo-Muhammad, Niggers and then he complained about officer F. Williams threating his life and the life of his wife and children. On one incident that occurred on a wednesday, while Mr. Adams was in the down stairs shower, Defendant C/O F. Williams held his keys so that they would not cling and make a sound and eased up on the side of the shower outer wall and peeked around the corner. Plaintiff Adams complained how that was weird to Sergeant Raggi, (Who was present. Sgt. Raggi was trying to provoke plaintiff in to a conver-sation about a "Fake old employee that never worked there", to see if plaintiff would jump in the conversation). However, plaintiff didn't join in on their conver-sation and was escorted back to his cell by officer Kaidee, without incident.

95. After Plaintiff Adams was in his cell, Officer williams made his way to the top tier and began threatening Plaintiff Adams from outside his cell door. Defendant F. Williams stood directly in front of Plaintiff Adams cell door and said, "You fucking Fagget, I'll kill you you bitch ass nigga. You don't know who I am, I ain't from around here pussy. I'll shoot you on sight. I shoot your son, he wont make it to see 18....Etc..etc" Defendant Lieutenant Whitesall caught Defendant Officer F. Williams. Plaintiff Adams had snapped and screamingly cried as he kicked the door and yelled at defendant F. Williams. Plaintiff Adams was unable to regain control for some time. Defendant Lieutenant Whitesall removed Defendant F. Williams from the block after this incident. **(Please view video footage of Defendant F. Williams on plaintiff Adams door calling him faggets and rats and see how Lt. Whitesall caught him).**

96. Later that evening, medical (Nurse Ena) came and checked on plaintiff, without plaintiff ever putting in a sick call slip or with out even telling staff he felt ill. She checked plaintiff's blood pressure and the told him to smile and do certain facial movements. Now, plaintiff knows that bucks county correctional facility was slipping him medications and other substances that caused plaintiff to have physical problems and issues. On this particular day though, plaintiff was not aware of what was being done to him by this defendant (Nurse Ena).

97. Plaintiff Adams wrote a grievance about Defendant C/O F. Williams, inviting Plaintiff to his penis. Plaintiff complained about williams continuously picking on him, singling him out and antagonizing him. He complained about him bullying him for weeks. He told about Williams calling him Snitches and about all the threats, and about the humiliating names from Nigger, Fagget, A bunch of bitches, Pussy's, Homosexuals, Homo-muslim, Homo-Muhammad, Rats, dick eater and more. The Grievance was sent to Defendant Deputy Warden Kelly Reed.

98. On 11/21/2022 Defendant C/O F. Williams entered Plaintiff Adams cell while Adam was in the shower, (Something he had never done at entire time Adams was housed over on the RHU, Until that day). Plaintiff looked out of the shower and yelled "Why you in my cell?. Plaintiff Adams got out of the shower some time after that and was taken to his cell (15) where he noticed his Quran tossed on the floor under the toilet. There was a white Substance smeared on the right hand corner of Plaintiff Adams Religious Paper (Ayatul-Kursi). **(See Exhibit titled "1. Ayatul Kursi" for stain of substance on paper)......(This Honorable courts clerk sent plaintiff a cop of his complaint and the exhibits that plaintiff filed with the complaint, did not come with the copy of this complaint. One could only hope and pray that the clerk of this honorable court has all the grievances and other documents that plaintiff filed with his complaint.  Video footage will show plaintiff filing grievance and mailing documents to this Honorable court).**

99. Plaintiff Adams called Defendant C/O F. Williams (Who was already on the top tier). After williams told the Rookie to leave the block, he approached Plaintiff Adams cell door and said: "What Pussy!" Plaintiff replied: "Why you toss my Quran on the floor and whats this white shit on my papers?"

100. Defendant F. Williams said: "Why Allah aint stop me, huh Fagget? You bitch ass nigga' what you going to do about it?" Plaintiff Adams replied: "You's a bitch! Ope my door. Why you tossed my Quran yo?"

101. Defendant F. Williams said: "You squat 600 pounds, kick the door open pussy and see how I beat your fagget ass. Why Allah aint stop me from throwing you Quran? You fagget, now do something. Write another grievance bitch. Im a different breed, I'll murder you, your kids and whoever. I ain't from around here fagget. Where Alla at now. **(See footage of Defendant Williams tormenting Plaintiff).** Defendant william Then said out loud for everyone to hear: "This rat Fagget told on me y'all. He told I told him to commit suicide. This nigga a rat".

102. Plaintiff Adams began kicking on the cell door and screaminly crying while he kicked the door. He continued to kick the door and then the door broke open because of the faulty locking mechanism that he had wrote several grievances about to defendant Superintendent Metellus and Defendant Deputy warden Kelly Reed. Plaintiff ran down the stairs with a pole in his hand but dropped the pole and did not hit Defendant F. Williams with it. Williams has aways stated that he was not struck with the pole.

103. Plaintiff Adams was moving so fast that he could not stop his forward momentum So while running, he leaped over the chair to keep from crashing into it. Defendant F. Williams immediately grabbed Plaintiff Adams left leg and plaintiff sprawled immediately to keep from being lifted. Plaintiff Adams yelled, "Leave me the fuck alone". Plaintiff Adams used his hand s to push Defendant F. Williams off of his leg using a sumo style push.

104. Plaintiff Adams then immediately got away from Defendant F. Williams and went down in surrender immediately while other officers ran on to the unit. Plaintiff Adams laid on the floor and remained motionless.

105. Defendant C/O South tired to murder plaintiff with a spear head-butting upward tackled, aimed at plaintiff Adams Exposed Defenceless face and missed. He crashed into the floor face first. He did not follow protocol and yell: "Stop! Get Down!

(14)

surrender," when he ran on to the block. Nor did he need too when plaintiff Adams was already going down in surrender. Defendant Officer South maliciously      and sadistically tried to cause serious bodily fatal injury to plaintiff Adams by turning himself into a human projectile with the intentions of hurting a defenceless man. **(Video footage will show Defendant C/O South's excessive force).**

106. Plaintiff Adams laid of the floor motionless while Defendant John Doe #1 punched him in the face while he was handcuffed. While still handcuffed, Defendant Schuster kneed plaintiff in the head. He then kneed plaintiff Adams in the face, tearing skin off his left Temple. Plaintiff Adams was then punched in the face again by Defendant John Doe #1 and this caused Plaintiff's nose to erupt with great pain. **(See video footage from entrance camera and other cameras on unit).**

107. 6 or 7 other officers was on top of plaintiff Adams while he was attacked by Defendant Schuster who used two officers for leverage to make his blows more powerful and guided. Plaintiff Adams was then lifed from the floor and taken off the RHU unit. Lieutenant Thompson and Correctional Officer Hitchens took Plaintiff from the assaultive officers and took him to medical. **(See preliminary hearing video and prison video footage).**

108. Plaintiff Adams face was looked at and medicine was applied to the large wound on the left side of his temple where Defendant Schuster had kneed him. Plaintiff Adams complained about his left eye burning and his blurry vision to nurse Linda as she applied cleaning salution to the contusion. Plaintiff also complained about not being able to breathe out of his nose and how his nose was in server pain. He told the nurse, "They beat me while I was handcuffed. I'm only one man." **(Investigator Anthony took photos of plaintiffs open facial wound caused be being assaulted by Defendant C/O Schuster and he testified to having kept those photos out of evidence given to the commonwealth).**

109. Nurse linda cleaned Plaintiffs face and shook her head and tried to soothe the plaintiff who had tears falling from his eyes.

110. On 11/21/2022, plaintiff Adams was Transferred to the MHU (Mental Health Unit) and placed in cell 3 where he was then stripped searched. A packet of crushed medication was found on him. Plaintiff Admitted it was his medication. Plaintiff was saving his medication like Defendant F. Williams has told him too so, he could attempt suicide again. While housed on RHU, defendant Officer F. Williams heard plaintiff Adams tell another inmate how he attempted suicide in the past. He then told Plaintiff Adams to: "Save all your psyche meds and kill yourself. Take them, I wont call a medical emergency. Or hang yourself from the bunk while your celly at yard, I won't save you." Plaintiff was going to commit suicide to stop officer williams from torturing and tormenting him. **(See attached exhibit "Misconduct")**

111. The cell plaintiff was placed in, (3-cell), was covered with Feces and urine. The mattress was soaked and dripping urine and it was covered with Feces. Plaintiff complained about numbness in his left leg and arm and requested medical. Defendant SGT. A. Beck, Defendant C/O Geibert and Defendant C/O John Doe #2, responded and came to plaintiff's cell where Sergeant A. Beck forced Plaintiff Adams to hop on one leg over to the tray slot. Plaintiff was handcuffed with his hands behind his back and once the door opened, Defendant SGT. A. Beck, Defendant C/O Geibert and Defendant John Doe #2 aggressively slammed plaintiff Adams on the hard plastic bed frame and put leg irons on him.

112. Plaintiff Adams screamed as defendant Sgt. A. Beck clinched the cuffs on his wrist extremely tight by smashing his weight down on the cuffs, forcing them to close even tighter after they reached their locking limits. Plaintiff Adams scream ed and cried out from the pain of the handcuffs. The nurse just stood there and looked from a distance and did not examine Plaintiff Adams.

113. Plaintiff Adams cried to be set free and so defendant C/O Geibert cuffed the leg shackles around the center of the handcuffs and then with Defendant SGT. A.Beck snatched Plaintiff Adams through the tray slot. Plaintiff Adams fell to the floor with his arms and shoulders hyperextended backwards, while he hung suspended in the air. (His backside did not touch the floor. With his arms stuck in the tray slot, Defendant Sgt. A. Beck laughed as Plaintiff Adams screamed and cried from pain.

114. The three defendants then opened the door and the plaintiff hit the floor cryin Sergeant A. Beck yelled: "Don't Move," as plaintiff laid on the floor with his head in between the area of the toilet and wall. Defendant C/O Geibert then steppingly kicked plaintiff Adams in the face. Plaintiff Adams was dazed but still aware of what was going on and felt someone punch him in the back of the head with a closed fist.

115. Once plaintiff Adams got himself together, he felt his shoulder was out of place, His elbow was in pain and his hands were in great pain. There were cuff mark deeply embedded in the wrist of Plaintiff Adams. He couldn't breathe out of his nos and his vision was still blurred. We wrote medical a sick call slip explaining his medical problems.

116. On 11/21/2022 Plaintiff Adams told Defendant M. Gray that he had not received his lunch nor dinner. Plaintiff Adams saw the kitchen officer and told him and a food bad was brought to the MHU Unit. Plaintiff Adams watched Defendant C/O M. Gray open the food bag and hog spit into it and then he brought it to plaintiff.

117. On 11/21/2022 plaintiff Adams received a misconduct with the incident# 22-1121 865 and that misconduct report stated the following: "On 11/21/22 at 1010 inmate Adams, Robert began to kick cell door RHU 15. After about 7 or 8 kicks RHU door 15 open. Inmate Adams ran out of his cell holding a metal pole Inmate Adams swung the pole at my head, he also tried to punch and kick this officer. Code 99 was called inmate was escorted off module." **(See exhibit 5-RHU Misconduct).**

118. While plaintiff Adams was housed on the MHU unit he suffered a great deal. Everyday he begged each and every supervisor, namely: Deputy warden K. Reed; LT. K. Wylie; LT. M. Clyton; LT. C. Hugg; LT. J. Whitesall; Captain Nottingham; SGT. N. Murphy; SGT. M. Raggi; SGT. A. Beck; SGT. N. Cruz, SGT. A. Cruz; SGT. C. Odonnell; SGT. A. Cruz; SGT. R. Grous; SGT. K. Kinkelin; SPDT. Metellus; and whoever else I saw for a Mattress because it was extremely cold sleeping on the bed frame the was like the floor. Plaintiff Adams begged for a hot or warm shower and for a shower period and, everyday Plaintiff was toyed with by Defendant C/O Swan, Defendant C/O Black and Defendant Sgt. C. Odonnell for their amusement like they were going to give plaintiff a shower. Some days, plaintiff was humiliated in from of the othe inmates as C/O Swan told plaintiff he would give him a bucket of warm water to wash with. Plaintiff accepted the bucket of warm water as his cell only had cold water. Plaintiff asked Officer Swan for the bucket of warm water so he could wash and The Defendant Laughed at Plaintiff and then denied Him the water, making the inmates laugh that worked the unit.

119. Defendant SGT. K. Kinkelin Intentionally moved Plaintiff Adams out of MHU-5 cell into MHU-2 cell, that was covered in feces and Urine. Inmate "Dudley" had just been taken to that hospital and he was a mentally ill inmate who laid in bodily waste and tossed it all over the cell. Inmate (Dudley) never once cleaned that cell Plaintiff Adams begged not to be moved into that cell and was threatened with peppe spray and the confiscation of his property if he didn't move. Plaintiff Adams poste numerous letters/request/and grievances on the glass of the cell doors for the rotating camera to read before he submitted it. Plaintiff Adams begged for a mat-tress, a shower and his legal mail that was illegally confiscated  due to policy that stated, "Legal mail not from bucks county was to be taken."

120. Plaintiff Wrote Constitutional law, grievances and request slips and posted them on the Glass cell door for the rotating camera to capture. Video footage will show staff members and supervisors both stopping at plaintiff's cell door and reading those documents and then ordering plaintiff to remove those documents from the glass. So all staff and mentioned supervisors were indeed aware of plaintiff asking for a mattress and bedding and a shower. Video footage will show that all the correctional officers and lieutenants and sergeants, as well as the captain and the deputies was well aware of the cruel and unusual punishment that Plaintiff Adams was going through.

121. On 11/26/2022 plaintiff Adams became sick and requested medical help. While being transported to medical, plaintiff began to regurgitate. He was slung back in his cell where he continued to vomit even more in front of his closed door. He began to vomit shortly after nurse (ENA) Gave him his medication. (This is the very first instance where plaintiff notices he was being given different medication by the nurse). Plaintiff lost consciousness and a medical emergency was called. **Video footage will show Defendant LT. Wylie, Defendant SGT. Murphy and defendant Nurse Jamie, slamming Plaintiff on stretcher violently while he was handcuffed behind his back. Plaintiff was maliciously slammed to cause him pain.**

122. Defendant C/O Brassells lied and said (Spit) got on him when he was standing 8 feet from where the vomit sprayed. He also stood about 6 feet behind Defendant Correctional officer Hernandez. Defendant Brassells stood by the computer behind officer Hernandez and there was no way vomit could have gotten on him because physics does not work the way he described. **Video footage will also show he did not react at all as did the officer in front of him.**

123. On 11/21/22 Inmate Lopez, Inmate Number 031833 was removed from cell 3 and put in cell 1 on the MHU unit. Inmate Lopez was a inmate who Urinated and defecated in place and slung it on the walls and all over the place. His mattress was saturated with urine and feces and Plaintiff Adams complained to Defendant LT. Wylie about the mattress. Lt. Wylie removed the mattress out of the cell and did not replace it. Plaintiff Adams had laid on the mattress first, not knowing that it was in the condition it was in, then became soaked and immediately got off of the mattress and reported it.

124. On 11/22/2022 plaintiff Adams submitted a sick call slip to medical and stated he need medical attention for his elbow, a concussion and his nose and dislocated shoulder. On 11/22/2023 Plaintiff Adams submitted a second sick call slip stating he was having vision problems with his left eye where Defendant C/O Schuster kneed him. He explained and complained about a large knot on his right shoulder and about a lump on the top part of his head. He stated he couldn't breathe from his nose and his nose was in great pain.

125. On 11/22/2022 Plaintiff Adams wrote a grievance to Defendant Deputy warden Kelly Reed and posted it on his glass door, (Before Submitting it), so that the rotating camera could capture it.

126. On 11/2?/2022 Plaintiff Adams Breakfast Bag that contained dry cereal and dry cake was saturated with Tobacco (Spit) and pieces of chewed Tobacco. He immediately complained to Defendant C/O D. Connor and Connor said, "Your lucky its just tobacco juice."

127. On 11/26/2022 after the medical emergency was called and after Plaintiff Adams was handcuffed behind his back and violently slammed down on the stretcher. He was taken to medical where he complained about numbness in the left side of his body. Nurse Jamie down Played what plaintiff Adams was describing to him about his sickness and then at the request of Lt. Wylie, placed plaintiff on a watch where all plaintiff property was to be taken. Defendant Nurse Jamie was deliberately indifferent to plaintiff Adams medical needs and then he deliberately put Plaintiff

Adams in harms way by taking all of his warm blankets and clothing due to the medical order he had prescribed to Plaintiff Adams, which was to deliberately harm plaintiff Adams and humiliate him.

128. On 11/26/2022 Defendant LT. Wylie and Defendant SGT. Murphy Stripped Plaintiff Adams Naked for no reason, (After he returned from medical), and left him naked in front of other inmates for a period of time. This was done to degrade and really humiliate plaintiff Adams. Plaintiff Adams had nothing to cover himself for some time and officer Brassels laughed at plaintiff while other inmates talked and laughed.

129. On 11/26/2022 Defendant Nurse Jamie acted with deliberate indifference and indulged in cruelty by placing Plaintiff of Medical Watch for LT. Wylie. Plaintiff Adams was Forced to freeze in that cell. Plaintiff Adams continued to beg for a Mattress and A shower. Plaintiff was eventually given a jumpsuit this day to cover his nakedness.

130. On 11/27/2022 and 11/27/2022 Plaintiff Adams slept on the ice cold bed frame and he slept both days due to him being severely sick and cold. He asked for a **MAttress** and a shower both this days but was denied.

131. Plaintiff Adams Asked Defendant David Webb and Defendant LT. Clayton for a grievance  and they both told Plaintiff Adams, "NO!"  Plaintiff Adams wrote defendant Captain Nottingham hand asked for help but plaintiffs request fell upon deaf ears.

132. On 11/29/2022 Plaintiff Adams was transported to court by the Bucks County Sheriffs. The Sheriffs noticed how badly  plaintiff Adams condition was and asked Plaintiff if he was all right because of how he struggled to walk.

133. On 11/29/2022 Plaintiff Adams was found on the floor in a holding cell at the bucks county courthouse, on the floor convulsing and unresponsive. The EMT'S was call and Plaintiff Adams was Transported to Doylestown Hospital where he was seen and treated for several injuries. An Exray of his right hand and right shoulder was taken and two Catscans where  done to make sure there was no bleeding on his brain.

134. Plaintiff Adams suffered from Torn Ligaments in his right hand and his right shoulder, a fractured nose, a concussion, and he was dehydrated. Plaintiff Adams was also treated for an infection . During the Cat-scan of Plaintiff's head, he again vomitted and he grabbed his mask. Sheriff wOODARD grabbed Plaintiff Adams free hand until he realized what plaintiff was doing..I.E, (Preventing himself from choking).

135. On 11/29/2022 after being returned to Bucks county correctional Facility by the bucks county Sheriffs. Sheriff WOODARD turned plaintiff Adams over to defendant LT. Wylie and defendant SGT. Murphy. After being transported back to MHU cell-2, Defendant Lt. Wylie and Defendant SGT. Murphy stripped plaintiff naked again and left him naked in front of other inmates for a second time. Plaintiff stated, "Let me keep my Jumper unit you bring me another one." Defendant SGT. Murphy Laughed in plaintiff's face and stated; "No". There was no Penological reason for plaintiff to be stripped naked. This was done to degrade and humiliate plaintiff.

136. On 11/29/2022 during the late evening hours, plaintiff Adams placed a note on the glass door of his cell for the camera to see. The note state: "May I please get my legal work that I went to court with? The sheriffs returned my manila envelope containing my legal work. May I also get a shower? Cruel and Unusual punishment is prohibited under the EIGHTH AMENDMENT of THE UNITED STATES OF AMERICA'S CONSTITUTION." **(Please see exhibit 6)**

137

137.  On 11/29/2022 Plaintiff Adams submitted a second Request slip/grievance to Defendant Deputy Warden Kelly Reed, requesting to be 7xed out of Bucks county correctional facility due to the Inhumane conditions and Abuse/assault he endured from the staff at Bucks. Plaintiff complained about being forced to sleep on the freezing bed frame without a mattress for weeks. He complained about his food being spit in. He complained about his PREA rights being violated. He complained about being physically beaten. He complained about being denied proper medical treatment, He complained about not being given a shower for weeks, Plaintiff complained about being denied a shower and law library and he complained about his overall treatment. (Please see Exhibit 9).

138. On 11/30/2022 Plaintiff Adams placed the following Grievance on his cell window (Which is half the door size in length): **My name is Robert Adams! I have been denied Humane conditions such as a mattress that meet CDC health codes and regulations...i.e, "without being saturated with urine and feces," and I've been denied a mattress to sleep on which is inhumane. I've been forced to endure hate crimes against me by staff and inmates alike, my PREA rights have been violated where I was stripped naked by staff twice and made to be naked in front of inmates without proper attire. I was even forced to take my medication naked. Ive been denied a shower and my legal work has not been returned to me. The sheriffs return ed it to the prison. I plead to bathe in warm water, to shower period. My human rights, prisoner rights, PREA rights and constitutional rights have been violated. this is torture and against the law. Sincerely Robert Adams-074562 See exhibit 10)**

139. on 11/30/2022 a request slip/greivance was written by Plaintiff Adams and sent to Defendant Deputy Warden Kelly Reed. Plaintiff Adams deeply expressed himself and asked, for a meeting because he was tired of the beatings and all the other cruel and inhumane things he was enduring. She, Defendant Deputy warden Kelly Reed responded and stated: "I will look into it." **(See Exhibit 11)**

140. On 12/5/2022 Plaintiff Adams wrote a grievance about **DEfendant** LT. Hugg violating his 4th and 14th AMENDMENT of the UNITED STATES CONSTITUTION and his 1st AMENDMENT by opening his legal mail outside of his presence, searching it and removing legal material before giving it to plaintiff.  Defendant LT. Hugg took legal material out of Plaintiffs Legal Mail that could have vendicated  Plaintiff Adams in his parole hearing that was held inside of Bucks county correctional Facility's gym room via Telecommunication video. Lt. Hugg removed the legal documents that did not come from bucks county and documents that did not have the count of bucks name on it. **(See Video Footage)**

141. Bucks county correctional Facility Allows legal mail from other Districts to enter the facility via mail and then they conduct legal hearing from other jurisdictions via video. Bucks county prints case law and other legal documents that does not derive out of buck yet, they confiscate legal documents that contain the Heading of another Jurisdiction. Bucks county has a written policy that states: "All legal material that does not come from BUCKS COUNTY, is to be taken/removed from inmates possession and or confiscated and placed in inmates property".  This policy is impermissible and it violated Plaintiffs 4th Amendment of due process, How can it be legal for written legal material to be censored and taken? Plaintiff Adams was left unable to defend himself during his technical parole violation hearing properly because, he could not provide the parole board  with the much needed documents that was require in order to vendicate plaintiff.

142. Plaintiff's Legal mail was serached outside of his presence By Defendant LT. Hugg, Violated plaintiff's attorney client previlage of confidentiality and **BY THE** defendant confiscating plaintiffs needed documents, it denied plaintiff his liberty interest.

(19)

143. Plaintiff Adams Has been denied Access to the courts, violating his 4th and 14th AMENDMEND OF THE UNITED STATES CONSTITUTION.  Plaintiff Adams ACCOUNT Has been suspend by the jail and he has been blocked/denied access to the law library LEXIS NEXIS APP on the tablet. He has also been blocked from calling his Lawyer.

144. Plaintiff Adams is Denied Access to hygiene  products which is inhumane and cruel. Plaintiff Adams is denied access to Go to the RHU Commissary.

145. Plaintiff Adams is denied yard and as of **this** date (4/10/23) has been to the Rhu yard twice in five months. Mr Adams has asked for yard everyday since 11/1/22 and after 11/21/2022, his **yard was** taken from him.

146. On 10/30/2022 Plaintiff Adams wrote a grievance to deputy warden Kelly Reed on regular paper about his job within the institution and she responded to him on that regular paper. Please see exhibit 13 for proof that staff does respond to grievances written on regular paper.

147. On 11/30/2022 Plaintiff Adams was denied a shower by Defendant SGT. Odonnell and correctional officer black. On or about the above date Plaintiff Adams Asked Defendant SGT. Odonnell for a few cups of warm water to bathe with because he had not bathed and the water coming out of his sink was cold. Defendant Sergeant Odonnell said: "Yes!" But correctional officer (Defendant C/O Swan), denied the plaintiff the cups of warm water to wash with. Adams then told Defendant Sgt. Odonnell and the two Officers (SGT. Odonnell and C/O. Swan) began to joke on plaintiff Adams and humiliate him in front of the other inmates. Plaintiff begged Defendant Sgt. Odonnell to wash and he taunted and then mocked Plaintiff.

148. On 12/6-7-or08/2022, Defendant Deputy warden Kelly Reed and Defendant Captain Nottingham came to the MHU unit where Plaintiff Adams was being housed at on RHU Status. There was a meeting where Plaintiff Adams told both Captain Nottingham and Deputy Reed what had been going on and the pain he had been enduring. Deputy Reed, Then returned a lot of Plaintiff Adams Grievances to him and his request slips and said: "Lets get you a mattress". Plaintiff Adams cried to Deputy Reed and stated: "You people are killing me and treating me inhumanely. I have asked you for severa formal grievances and more. Medical has been denying help and Im sick. May I pleas get another grievance?" Defendant Deputy Kelly Reed told Plaintiff Adams to wait until the follow week knowing full well that plaintiff wasn't going to be in the facility. Captain Nottingham was also aware of this information as well.

149. Defendant LT. Clayton opened up the back closet and the smell of pure put-ridness filled the entire MHU. Defendant LT. Clayton the face the mattress from the closet to plaintiff and  laughed: "Shit tight, I meant sleep tight." Feces was stuck on the mattress in varies spots and urine was soaked (Stained) into the cotton of the mattress and it stunk so bad. Plaintiff Adams then asked Defendant B. Butler for cleaning supplies. Lt. Clayton clearly saw the fecal matter.

150. Defendant C/O B. Butler laughed at Plaintiff Adams and he taunted him before finally giving him the cleaning supplies. He said: Wait 3 hours for the cleaning supplies and then he refused to give him certain cleaning material. So Plaintiff was forced to used his own soap and toothpaste to clean the mattress. Nothing got clean and the mattress continued to Reek of urine.  **(Please see rotating camera footage showing plaintiff scrubbing mattress).**

151. On 12/12/2022  Plaintiff Adams was 7xed to George W. Hill Correctional facility in Delaware county Pennsylvania where, Plaintiff suffered another set of hardships These hardships was not caused by staff beating plaintiff. While at George W, Hill correctional Facility in Delaware COunty Pennsylvania, plaintiff filed grievances against bucks county correctional facility and its staff. Plaintiff also brought

Delaware county Grievances back to Bucks county correctional facility, when he was transferred back to bucks county, and filed them there against bucks county.

152. Because of Bucks county Correctional Facility's failure to protect Plaintiff Adams and Because Of George W. Hill correctional facility's failure to protect the plaintiff, Mr. Adams was forced to go through medical complications at George W. hill correctional facility and was hospitalized because of those complications. **(Please See Adams V. Delaware County et. ad 2:23-cv-01178-JFM, X-rays reveal Plaintiff Adams had a fractured nose that he obtained from staff Beating him at bucks...i.e, Defendant John doe #1 punching plaintiff in face and Defendant C/O Schuster kneeing plaintiff).**

153. On 1/8-or-9/2023 Plaintiff Adams was transferred back to Bucks county prison and placed on the MHU unit, in 5 cell, on RHU status. 5 Cell had fecal matter slung on the walls and toilet and door. Plaintiff Adams cleaned the cell with a wash cloth and his own soap. He also used the scrubber and some chemicals from the spray bottle. However, Feces did indeed cover the walls in numerous places and the toilet was covered with feces and the smell of urine.

154. While housed on MHU in 5 cell, Inmate Lopez was transferred to a hospital sometime in the early part of January. Lopez # 031833, was a wheelchair bound mental health patient who also had severe physical medical issues. He, Inmate Lopez, was a older man who sat in his wheelchair and relieved himself...i.e, urinated and defecated right there where he sat . This inmate also never got into the shower and there was a inmate worker assigned to quickly clean his cell, every time he was removed from his cell. During the 2nd shift, the day inmate lopez was Transferred out of the prison, Defendant SGT. Odonnell came to plaintiff Adams cell and told Plaintiff to pack up because he was moving to 8-cell. (The cell Inmate Lopez just left). Plaintiff Adams told the Defendant: "I'm not moving down there. Why are you people fucking with me? I haven't said anything to anyone since I've been back and I've been staying out of trouble." Defendant SGT. Odonnell said: "If you don't move I'm going to pepper spray you." Plaintiff told the defendant: "I'm not moving in that cell. Its covered with feces. Don't pepper spray me, call the Lieutenant." Defendant Sgt. Odonnell first said: "I'm not calling no one for you. I'm giving you a direct order to pack your property and move your punk ass down to 8 cell or I will pepper spray you." Plaintiff yell: "I want to talk to captain Nottingham." The defendant said: "Your Rat ass wont get the chance to tell this time, pack up, that's a order." Plaintiff Adams said, "I'm not fucking moving in that nasty ass cell and if you pepper spray me I'm pressing Charges. Call the Lieutenant or captain because I'm not moving in that cell. That's cruel and unusual punishment." Defendant SGT. Odonnell then got on the phone and after having a talk with someone on the other end,  He left the unit without further incident. The plaintiff however, was up pacing the cell and extremely nervous and outright scared because he worried all night about Staff coming back and forcefully moving him into the Repulsive cell.

155. Plaintiff Adams has been harassed by staff and and denied his equal protection of rights since he returned to Bucks county correctional, up until he was transferred to Montgomery County Correctional Facility. Plaintiff Adams was on RHU status at Bucks county until 6/26/23 and every morning before that date, while housed at bucks county correctional facility on the MHU unitl, at 3am, Plaintiffs cell was searched and ransacked by officers. Plaintiff also obtained 3rd degree burns from the shower and received medical attention. Plaintiff's cell has been searched every single day for over 5 months straight and plaintiff was cuffed and shackled and then removed from his cell to take his medication. This excessive searching and calculated harassment did not end.

156. Defendant C/O Clarke searched Plaintiff cell and ransacked it while Defendant SGT. N. Cruz was present and after Plaintiff Adams complained, He "C/O Clarke" began to call plaintiff a bunch of pussy's, bitches, faggets, cowards, rats and

threatened how he would harm Plaintiff Adams. It is clearly seen on video footage Defendant C/O Clarke cursing Plaintiff out and calling plaintiff out of his name and antagonizing Plaintiff. Plaintiff is clearly Upset and when plaintiff tried to verbally defend himself, Defendant SGT. Cruz is clearly seen getting in plaintiffs face, standing over plaintiff in a aggressive manner, telling plaintiff to shout up and then shut the fuck up. Plaintiff Adams told her to tell Defendant C/O clarke to stop calling him out of his name and to punish him for how he had just trashed plaintiffs cell. She did not order Defendant Clarke to stop.

157. Defendant C/O Clarke destroyed plaintiff Adams cell and really tore it up a few days later when he came at 3am with Defendant SGT. A Beck. He then threatened plaintiff Adams saying: "I'll break your fucking neck you pussy," and then he took a step towards Plaintiff like he was going to hit the plaintiff. Defendant SGT. A. Beck is clearly seen on camera quickly grabbing Clarke's hand to hold him back from attacking the plaintiff. Both defendants, Sgt. A. Beck and C/O Clarke then continue to harass and taunt and curse plaintiff during his medication period.

158. Plaintiff Adams cell was searched by defendant C/O B. Butler at 3am and Plaintiff complained about the excessive searches that happened everyday.

159. Plaintiff Adams cell was searched the next morning at 3am by defendants C/O miles and C/O Harrison who strip searched plaintiff in front of Female Defendant SGT. N. Cruz. Plaintiff Adams complained about being stripped in from of a female and he also complained about being searched every single day. No one listened to him and she, Defendant Sgt N. Cruz, stood there watching plaintiff being stripped and laughed as she joked about him body parts. This humiliated plaintiff and he wrote a grievance about the matter.

160. Plaintiff Adams cell was searched by Defendant C/O Geibert and Miles during which time plaintiff was again stripped searched in front of Defendant SGT. N CURZ who is a female officer and Plaintiff Adams complained about being stripped naked in front of her. Plaintiff told defendant SGT. N. Cruz that she was violating his "PREA" rights and that she should not be watching him get stripped search and she said, "I'll watch you be stripped searched as much as I want."

161. Plaintiff Adams cell was searched by Defendant C/O Romano who flipped plaintiffs cell and took legal documents from plaintiff. He also tossed plaintiffs food out of the cell on the floor and plaintiff complained about it to Defendant LT. C. Hugg who told plaintiff to shut up and let the officer do whatever he's doing.

162. Defendant LT. C. Hugg searched plaintiff Adams cell on 4/9/23 and completely destroyed plaintiff cell. All plaintiff's legal mail was out of the manila envelop that held them and his mattress was tossed about the floor. Plaintiff Adams asked: "Why am I the only one being searched everyday?" It was told because he takes Suboxone medication. Plaintiff Adams stated: "Inmate Alfonzo Sanchez #095098, SCI #QN8700, takes Suboxones in 4 cell and his cell is never searched. Nor is he cuffed and brought outside of his cell. You don't search no one's cell over here but mines."

163. Plaintiff Adams cell was searched by Defendant C/O Smythe and Plaintiff also complained about the searching of his cell again. Officer Smythe did not ransack plaintiff's cell but he stated: "You should just be silent and file whatever paper work your going to file because you know your cell is going to get searched anyway."

164. Plaintiff Adams cell was searched by defendant SGT. K. Kinkelin and he complained to her about the constant searching. She replied: "I have to search the cell and follow orders." Plaintiff Adams replied: "You only search my cell in the morning when I take my medication like you're trying to deter me from taking my Medication."

165. On 4/21/23 Defendant C/O Kasyprzk searched Plaintiff Adams cell ar 3am and ransacked plaintiffs cell. Tossing legal everywhere and kicking over hygiene products.

166. On 4/22/23 at 3am defendant C/O Smythe searched plaintiffs cell. Cell was not destroyed nor ransacked by this officer but his searching harassed plaintiff along with all of the other daily searching.

167. On 4/23/23 at 3am Defendant SGT. N. CRUZ searched Plaintiff Adams cell. This search was quick, what they call a once over where, they just look over everything once. The cell was searched but it was not destroyed nor ransacked this day.

168. On 4/24/23 at 3am Defendant SGT.N. CRUZ  searched plaintiff cell and left it not to bad. It was searched that's for sure but she didn't toss everything around this day.

169. On 4/25/23 at 3am Defendant C/O Harrison searched plaintiff Adams cell and he destroyed it this day. Papers were tossed around the cell and clothes where everywhere. Plaintiff complained about this but no one cared or listened.

170. On 4/26/23 at 3am Defendant SGT N. CRUZ searched plaintiff Adams cell and left it a mess. This day her and the plaintiff had words and it did end well for plaintiff's cell.

171. On 4/27/23 at 3am Defendant C/O Clarke searched plaintiff Adams cell and left is trashed. He tossed paperwork and clothes around the cell and placed a blanket in water that spilled from a cup that plaintiff had on his floor.

172. On 4/28/23 at 3am Defendant C/O Harrison searched plaintiff Adams cell and left if ransacked. Plaintiff complained and even had words with the officer but, after taking his medication, plaintiff just went back into his cell and cleaned up like he became accustom to.

173. On 4/29/23 at 3am Defendant SGT. A. Cruz looked over cell with plaintiff stil in the cell. He Cuffed plaintiff in the cell and the exited the cell with plaintiff. Plaintiff cell was not destroyed this day.

174. On 4/30/23 at 3am Defendant SGT N. CRUZ intentionally destroyed plaintiff Adams cell because she and Adams had words with each other. However, she only tossed plaintiffs hygiene products, books and clothes around the cell. she did not touch his legal work.

175. On 5/1/23 at 3am Defendant SGT N. CRUZ searched plaintiff Adams cell with a once over searched and left out. She did not touch  much  this day.

176. On 5/2/23 at 3am Defendant C/O Harrison searched plaintiffs cell and read plaintiff's legal mail. Defendant C/O Harrison came to the cell door reading legal mail of Plaintiff Adams. He is on video footage reading Plaintiff Adams legal mail and the plaintiff clearly became upset. Defendant SGT. K. Kinkelin then read the legal document with him (Harrison) and then told him to put it back. Plaintiff the complained and she, SGT Kinkelin told plaintiff to: "Grieve the matter like you do everything else."

177. on 5/3/23 at 3am Defendant SGT. N. CRUZ searched plaintiff cell and after she was done, she stood out where plaintiff was and waited for his medication to dissolve under his tongue. Defendant LT. C. HUGG then entered the MHU unit and headed directly to plaintiff Adams cell. Defendant SGT. N. CRUZ immediately informed LT. HUGG that she thoroughly searched the cell but he still went inside the cell and tossed the mattress and legal material everywhere, including the floor. Plaintiff complained and said that this was harassment and that there was no reason for him

(23)

to do that. At 3:25am plaintiff's cell was in shambles.  Plaintiff kept his light on and went to cleaning like he had down every other day.

178. The constant daily destroying of plaintiff's cell along with the everyday banging and screaming and kicking on the doors has caused plaintiff to endure a Atypical significant hardship. The continuing humiliation and degrations of staff has been cruel and punishment of the unusual type. At 4:17am Defendant SGT N. CRUZ entered 7 cell and gave that inmate his Suboxone medication and, He (The inmate) was not sat outside of his cell and his cell was not searched. He is also on RHU status.

179.  On dates 5/4-5-6/2023 plaintiff's cell was searched by officers. Each and everyday plaintiffs cell is searched at 3am in the morning to deter plaintiff from taking his much needed medication. If the facility can search a cell at any given time it so decides then, why is plaintiff Adams not searched during more appropriate hours? Staff has told plaintiff to stop taking his medication and the searches would stop. Plaintiff tested this theory and told an officer at this 3am time period that he didn't want to take his medication and the correctional officers began to walk away from plaintiff's cell. So if plaintiff didn't take his needed medication, his cell would not have been searched.

180. Defendant SGT. Odonnell told plaintiff Adams to; "Hurry up and swallow that shit," When plaintiff was taking his Suboxone medication.

181. Defendant C/O Faggins searched plaintiff Adams cell while he was working the 10pm to 6am shift on the MHU. The search of plaintiff's cell took place at 3am while plaintiff was taking his medication in the morning. Plaintiff was handcuffe and shackled and sitting in a chair outside of his cell.

182. Defendant C/O ROQUE searched Plaintiff ADams cell with Defendant SGT. N. cruz, leaning everything out of order and tossed around the cell. Plaintiff gets upset because staff laughs and him and makes dumb jokes about how his cell is tor up every day and how he cant do anything about it.

183. On 5/7/23 Plaintiff Adams wrote a grievance on Defendant C/O Kasyprzk and Nurse (ENA) Grievance #2023- -32. In that grievance Plaintiff told authorities that Nurse (ENA) Had been deliberately poisoning him by slipping him different medication under his tongue instead of Suboxone. Plaintiff is 100% consistent wit taking his **OPIOID USE DISORDER MEDICATION** and it takes 15-20 minutes to dissolve under his tongue every single time, (No matter the size of the pill). He also knows the texture and taste of his medication. The following is the response to Plaintiffs Grievance: "As previously answered in grievance 2023-30, inmates are subjected to searches at any times. As for your medical complaint, you should submit a request slip to medical or a sick call to address any concerns you feel you may have with your prescribed medication. This Grievance is Denied."
Plaintiff Adams responded: "I told you that Nurse ENA is deliberately poisoning m and slowly killing me with the substance she's giving me and you tell me my grievance is denied? I've written Lieutenant Thompson and Medical and I'm telling you this woman has been deliberately harming me and poisoning me by crushing up some type of medication and you render me no help to protect me from attempted murder? are you serious? What happened to care, custody and control? I've become sick due to her actions. Burning acid comes up, my legs, ankles and other limbs have swelled."

184. Plaintiff Adams appealed the above grievance to the prison oversight board but, No answer was given to him. He wrote his appeal like the instructions given on the grievance and mailed it in. Defendant Nurse Ena, had stopped given plainti Adams his medication for a few weeks after his complaint and his health improved tremendously. The acid that was coming up and burning him, had stopped and the swelling went down and the itching stopped.

185. Plaintiff Adams wrote several sick call slips and request to staff in the nursing department of Bucks county correctional facility and complained about Nurse ENA and how she was harming him. She had been slipping Plaintiff Adams different medication since November of 2022.

186. On 5/11/23 while Plaintiff Adams was in the RHU Yard, defendant C/O Labadie searched plaintiffs cell and left things out of order and in disarray. On this day plaintiff's cell was searched twice. One at 3am during his medication time and at the time of this defendant searching it.

187. On 5/12/23 at 3am, Defendant C/O Smythe searched plaintiff Adams cell while the plaintiff sat in a chair outside of the cell. The cell was left destroyed with plaintiff's property tossed around the cell and plaintiff's hygiene products was knocked over. At 3:15am, inmate ANDERSON, whose on RHU status, was not brought out of his cell to take his medication and his cell was not searched. This is indeed discrimination as plaintiff continues to be harassed and denied his equal protection of law which he;s guaranteed under the fourteenth Amendment.

188. The excessive searching of plaintiff cell is truly causing psychological damage and its causing plaintiff to rear taking his disability medication as he's tired of having to reorganize his paperwork and belongings. On 5/12/23 C/O welnert stood on plaintiff;s door and taunted plaintiff and pointed in plaintiffs face through the glass door. Plaintiff was more bother by the fact that other Inmates were allowed out of their cells and he wasn't. Inmates taunted plaintiff and banged on plaintiffs door or stood in front of plaintiffs cell and just looked into his cell to provoke plaintiff and staff did nothing about it. Plaintiff asked to be moved off of the MHU (Mental Health unit) daily but, he was never moved.

189. Defendant Bucks county correctional facility "Administration", along with its top officials deliberately tormented and tortured plaintiff Adams by housing him on the Mental health unit where, inmates constantly banged and screamed and kicked on their doors all day and night. Staff even housed inmates in cells right next to plaintiff's cell and employed those inmates to bang on the wall continuously.

190. Defendant Hearing Examiner "Dittman", sentenced plaintiff 20 additional days or RHU time, without have a hearing. There was no hearing at all. The defendant did not even ask plaintiff if he want to participate in a misconduct hearing. The protocol is for the Misconduct hearing examiner to ask the inmate in person, if he or she want to participate in the misconduct hearing and the (Inmate JVC worker is always with him. The defendant said, He called and heard plaintiff say, "No!" that he didn't want to participate in the misconduct hearing. **IMPOSSIBLE!** The plaintiff can not be heard while he's inside of his cell, across ten feet of floor over the loud television, over inmate monitors loudly talking and through the phon receiver.

191. On 5/13/23 Defendant C/O J. Polichetti searched plaintiff Adams cell while nurse ENA gave plaintiff his medication at 3am in the morning. Defendant SGT. C. Odonnell was the supervisor overing the morning operation. After Defendant C/O J. Polichetti searched plaintiff's cell he exited it and sergeant Odonnell said: "You searched it that fast?" Defendant C/O J. Polichetti replied: "Yes, you told me to give it its normal fucking up so I didn't touch nothing." Defendant SGT. C. Odonnell said: "You wasn't suppose to say that in front of him."

192. On 5/13/23 Defendant Nurse ENA, jammed Plaintiff's medication in his face in a very aggressive way, that showed she meant to hurt plaintiff because, plaintiff asked to see his medication. Plaintiff has the right to see all the medication he takes before he takes it. Plaintiff mouth became very numb and the weird lingering taste of that medication told plaintiff that she had given him something different The medication also dissolved extremely fast. Plaintiff told SGT. Odonnell this right then and there but, no one cared. Inmate Anderson was then given his medic-

ation and he was not searched nor removed from his cell. Inmate Anderson was also caught with several balloons containing METH and he was sentenced to 14 months in the RHU with 7 month suspended. Plaintiff has been in the RHU since 11/1/2022 for being attacked after Defendant C/O Simpson deliberately put plaintiff in harms wa and allowed plaintiff to be assaulted after knowing Inmate boiling was going to attack Plaintiff Adams. Inmate boiling told Defendant C/O Simpson that he was goir to hurt plaintiff and the defendant allowed it to happen.

193. On 5/15/23 Defendant C/O mayers searched plaintiff Adams cell at 2:55am, during the time that plaintiff is given his **OPIOID USE DISORDER MEDICATION.** The plaintiff asked Defendant SGT. N. Cruz why inmate "ANDERSON" in MHU-3 cell wasn't removed from his cell and searched when he took his SUBOXONES Like he was and she replied: "You know the deal. you tried to assault one of fficers. If you don't want to be searched, don't come out and take this medication." Plaintiff said: "This is harassment!" And Defendant SGT. N. Cruz said: "I'm suppose to strip search you every single time too but I don't. So keep complaining and I'll really give you something to complain about." For fear of being stripped searched again, plaintiff closed his mouth and then returned to his cell that had been ransacked again and began to clean it.

194. Plaintiff Adams was blocked from using the Law Library while he was going to trial for his case in bucks county. Once his trail was over, he was allowing access to the law library LEXIS NEXIS and even the telephone to call his attorney However, while plaintiff was on trial, the jail restricted him from using lexis nexis, froze his account so he couldn't order RHU commissary, and denied him legal access to the court. It is against the law to restrict an inmate from using lexi nexis. Again, once plaintiff was done with trial, he was given access to law libr ary and telephone.

195. Plaintiff Adams was a pre-trial detainee who was locked in the Hole on RHU status for over 7 months however, He was not housed on the RHU unit after 11/21/2 Plaintiff was transferred to the mental health unit and place on RHU status there Each cell plaintiff was moved in, was covered with feces and urine. Plaintiff was denied a mattress for weeks and he was denied a shower for weeks. Staff and medica personnel was deliberately indifferent to plaintiff's medical need and his physica well being. Plaintiff was intentionally torture by correctional officers having inmates bang all night and all day. They allowed inmate works to stand on the cel door of plaintiff and curse plaintiff out or harass him and more. **(Video footage will prove all of this and more)**

196. On 5/16/23 at 3am defendant C/O Smythe searched plaintiff Adams cell while plaintiff sat in a chair outside of his cell and took his medication. Plaintiff's cell had already been searched when defendant LT. C. HUGG entered the unit and went directly into plaintiff's cell, without saying a word to anyone. He then be gan to flip plaintiff's cell even more then what it had already been tore up and plaintiff immediately became upset. Defendant SGT. K. Kinkelin told plaintiff to calm down, (Using hand jesters and whispering), and plaintiff continued to say: "Look at what he's doing." Defendant LT. C Hugg then exited plaintiff's cell and went to Inmate (ANDERSON) cell where he spoke briefly to him and then left the unit. **(Video Footage will show everything mentioned in this paragraph).**

197. On 5/16/23 Defendant's C/O Smythe, C/O Miles, and SGT. K. Kinkelin then cuffed inmate (ANDERSON) in MHU-2 cell and entered his cell where, he was given his medication. He was not removed from his cell and sat in a chair, nor was his cell search when, Inmate "ANDERSON" is on watch for introducing drugs into the institution. Plaintiff Adams 14th Amendment of equal protection of the law con tinues to be violated in a major way by bucks county and its correctional officer: who deliberately and intentionally causes plaintiff emotional distress, distress,

pain, suffering, harm and harassment. Contraband is never found in plaintiff's cell.

198. On 5/18/23 Defendants SGT N. CRUZ and C/O Bromiley ransacked plaintiffs cell and tossed legal mail everywhere around the cell.

199. Being transferred to the MENTAL HEALTH UNIT and forced to live in cells covered with feces and urine, forced to sleep without a mattress and denied a shower for weeks was cruel and unusual punishment. No one should be made to sleep on the ice cold floor or bed frame and no one should be denied bedding and proper hygiene.

200. On 5/17/23 Defendant's C/O Clarke and SGT N. CRUZ Ranksacked plaintiff's cell Plaintiff Asked SGT. N. Cruz: "Why are you guys reading my legal mail," And She replied: "Because we can!" This harassment of bucks county's staff is retaliation. Plaintiff is retaliated on for writing his grievances against staff and other high ranking officials. Every single day, Plaintiffs cell and ran through and trashed or completely destroyed while, the white inmates who are locked in their cells on RHU Status, are not searched. The Inmates on the RHU UNIT who takes Suboxones, cells aren't searched like plaintiff Adams cell is searched.

201. Plaintiff Adams has developed serious medical problems from being placed in cell after cell thats covered with feces and urine. This atypical Hardship is very cruel and unusual punishment. Plaintiff's legs, ankles and feet have swelled to 2½ times their normal size. Plaintiff has been locked in a cell from 11/1/22 until 6/20-?/23. Plaintiff Adams requested blood work to identify the substance nurse ENA was poisoning him with but he was denied that request. Bucks county medical Department, was deliberately indifferent to plaintiffs serious medical needs. Also Defendant's SPDT. Metellus, Deputy warden Kelly Reed, Deputy warden Cantino, captain Nottingham, and Lieutenant Clayton. were all deliberately indifferent to plaintiff Adams medical needs and physical well being as plaintiff complained to them in both -person and writing- how he was going through serious physical complications. Plaintiff also wrote LT. Thompson about his medical issues and other problems. (Lt. Thompson is not a defendant in this complaint. He helped plaintiff right there on the spot whenever plaintiff asked for help.)

202. Plaintiff Adams asked Lieutenant Thompson for permission to call his attorney and the Lieutenant gave plaintiff permission. When plaintiff tried calling his Attorney "LIOUS BUSICO", the institution had blocked plaintiff Adams from calling his Attorney. Plaintiff was also blocked from using lexis Nexis law library app on the tablet. Defendant's Captain nottingham and Deputy warden Cantino are the two who gave the order to block plaintiff. And Again, as soon as plaintiff was done with trial, the bucks county institution unblocked him from accessing those programs. (Lexis Nexis)

203. On 5/18/23 Defendants SGT. N. CRUZ and C/O Bromiley ransacked plaintiffs cell at 3am in the morning. Plaintiff complained about it and then he complained about how the officer tried forcefully snatching his leg up when he explained his medical problems prevent his leg from lifting. Staff intentionally began calling plaintiff Adams pussy's and cowards and other inappropriate names, trying to get plaintiff to respond. Plaintiff Adams then asked: "Why do you deliberately search my cell at 3am every morning when, you can search it at any other given time durning the day and why am I the only cell that's ever searched?" Plaintiff was given the same reason he was given before: "We do what we want, whenever we want," By SGT N. CRUZ. Plaintiff wrote the following request slip to captain nottingham: "Captain Nottingham, every morning at 3am you have my cell searched and destroyed and my legal mail is toss everywhere. This is not done to no other inmate on RHU status. This is no right. I shouldn't even be placed over here on the MHU unit. Yes, you have the right to search my cell at any time you want but this excessive searching is indeed harassment and I am begging you to stop. Search it at another time but please stop

(27)

during the time I take my Disability medication. Please tell your officer to stop talking aggressively to me and to stop calling me out of my name. Please tell them to stop grabbing me and tightening the leg irons purposely to hurt me. I'm no ones rat, coward, pussy, bitch or nothing else. Officer Bromiley tossed my legal mail everywhere and then he read my legal documents. My cell is in disarray and you and your officers keep abusing me and harassing me.

204. Plaintiff Adams was told by Defendants SGT. N. Cruz, Sgt. Odonnell and C/O Smythe, on several different occasions to stop taking his medication if he wanted his cell not to be searched. This is cruel and unusual punishment as Bucks county correctional officials and trying to deter plaintiff from taking his much needed medication as, they are associating the negative harassment with the positive medication time. Staff were deliberately indifferent to plaintiffs medical need for his medication and they did things to intentionally harm plaintiff mentally and cause emotional distress, to prevent plaintiff from taking his medication. This deliberate harassment was caused by Captain Nottingham and All the officers following his command.

205. On 5/19/23 Defendant C/O Labadie  searched plaintiffs cell at 3am and ransacked it

206. On 5/20/23 Defendant Smythe searched plaintiffs cell at 3am, didn't destroy it

207. On 5/21/23 Defendant SGT. N. Cruz searched plaintiff's cell at 3am.

208. On the 19th and 20th of may, 2023, Defendant SGT. K. Kinkelin ordered a quick pass over search where the officer just enter the cell and look over the surface of things. She stated: "You know I dont try to fuck your stuff up like other officers. I know the searching is a bit much but, If you stop taking these SUBS (Referring to the Suboxones)- we won't go into your cell."

209. This excessive searching every day is mentally tearing plaintiff. Witnessing his legal papers tossed around the cell while his other property is kicked or thrown around is demoralizing. Defendant Sgt. N. CRUZ just threw all plaintiff's manila envelops around, ripping two of them. 5/21/23 is the date of this incident.

210. Defendant Bromiley destroyed plaintiff's cell on 5/22/23 at 3am in the morning. Plaintiff tried complaining to Defendant SGT. N. CRUZ about C/O Bromiley reading his paperwork and she told plaintiff ADams: "We can read everything in tha cell and go through whatever the fuck we want. That's what I hate about you Faggets, y'all fuckin' whine to much." Plaintiff said: "How are you going to say something like that when you're gay too?" Then plaintiff looked around officer long, who stood in the doorway of the cell, because he (Plaintiff) heard papers rip. The plaintiff saw his legal mail tossed around the cell and he said to Defendant SGT. N. CRUZ: "LOOK at my Legal mail! You watched him tear my legal mail up and you did not say anything." She, Defendant SGT. N. Cruz, did not say anything else to the plaintiff after he was placed back into his cell.

211. On 5/24/23 Defendant C/O Bromiley destroyed plaintiff Adams cell and then wrote The Plaintiff up stating Plaintiff Adams threatened him, "Which was a lie". Plaintiff Adams never threatened Defendant C/O Bromiley. Plaintiff said: "This is harassment and I'm going to sue each and every one of you". This is what plaintiff stated and (**VIDEO FOOTAGE**) will prove this.

212. Defendants C/O Bromiley, C/O Harrison and SGT. N. CRUZ destroyed plaintiff Adams cell on 5/25/23 and found no contraband. No contraband is ever found in plaintiff Adams cell and bucks county officials continue to Ransack and destroy plaintiffs cell each and every day. They also talk nasty and foul and very very disrespectful to plaintiff calling him out of his name and more.

213. On 5/24/23 at 7:30 pm, Defendant C/O Bromiley relieved officer BOMBAY for his 15 to 30 minute break. Defendant C/O Bromiley approached Plaintiff Adams cell and stated: "We are going to hang you the first chance we get you off camera. You's a monkey that should be tarred and feathered." Plaintiff Adams replied: "Why'd you lie on me and write me up for nothing? You know I never threatened you nor anyone else." Defendant Bromiley said, "Don't sleep to hard boy! When the power goes out so does the cameras and then, you'll be another inmate written off as a suicide." Plaintiff Adams yelled out his cell door: "It won't be you doing nothing to me. I contacted the authorities and they are aware of what Bucks county has been doing to me."

214.  Plaintiff Adams wrote a grievance about what Defendant C/O Bromiley had said to him and then He spoke to Defendant Lt. Clayton and told him that none of the white inmates on the sub program are ever searched in the morning nor are they brought outside of their cells and shackled and cuffed like plaintiff. Clayton smiled at plaintiff and said, "Sucks to be you."

215. Defendant SGT. N. Cruz and C/O Barnette searched plaintiffs cell at 2:30am on 5/28/23. Plaintiff cell was left with a white substance splashed on the floor and his matress and things were out of order but, it wasn't trashed or ransacked  this morning. However, plaintiff was awaken out of his sleep at 2:30 am to take his medication. This is a unreasonable time to wake a person up every single day to take his medication. Its very bothersome. Then to search plaintiff and only the plaintiff is discrimination and it denies plaintiff is equal protection of rights. No other inmate is treated like plaintiff Adams. Not even Inmates on the same status as plaintiff is treated so harshly as plaintiff is treated. The two white inmates, (Anderson and Morning), was on RHU status, took suboxones and was housed on the MHU Unit. (They were not searched, shackled and cuffed and made to sit in a chair outside of their cell and, they were quickly moved off of the MHU unit bec- ause they were on RHU status. Plaintiff should have been moved off of the mental health unit but, Bucks county official intentionally and deliberately tortured plaintiff Adams and caused him significant harm and hardship by keeping him locked in a cell on the MHU. Video footage will show mental health inmates banging on their doors and screaming all night. It will also show those mental health inmates kicking and banging on Plaintiff Adams door to torment me and provoke him. Plain- tiff Adams was singled out by bucks county official. Inmate Mikhael #131081, cell was never searched when he was removed from his cell and taken to medical while he was on RHU status.

216. Plaintiff ADams requested to press charges on a inmate who deliberately spit in his face. He (Plaintiff Adams) was taken to medical and treated by nurse Amy. She also gave plaintiff antibiotics. Inmate Jimmy Aguyao #133425 was removed from the RHU Yard, away from Plaintiff. Defendant SGT. N. Murphy and C/O Marino, escorts plaintiff to medical. Plaintiff requested to press charges and the investigators denied plaintiff the right to pursue charges against the inmates who spit in plaintiff's face because, (That inmate was transferred to Norristown state hospital On 11/26/22 plaintiff became sick and vomit got on inmate David Gentile. David Gentile, (An informant for bucks county), wrote to the investigators saying he wanted to press charges on plaintiff. Plaintiff Adams had been transferred /7xed to **GEORGE W. HILL CORRECTIONAL FACILITY**, (To prevent him "Plaintiff" from filing grievances and law suits against bucks county. While at Delaware county prison, Plaintiff Adams was charge with aggravated harassment due to Inmate David Gentile pressing charges. David Gentile, who is white, contacted the investigators via request slip and stated, he wanted to press charges on Plaintiff Adams. Plaintiff Adams, who is black, wanted to press charges and contacted the investigators via request slip and plaintiff was denied his equal protection of the law be these bucks county investigators. See exhibit§ (Request to investigators)

217. On 5/27/23 at 3am, Defendant Smythe searched plaintiff Adams cell. Plaintiff

Adams is never found with any contraband in his cell. Plaintiff Adams asked staff to stop harassing him and they literally said: "No!" This defendant did not trash plaintiff's cell this day and he tried to give plaintiff advice that involved plaintiff not taking his medication. On 5/26/23, as defendant Smythe got close to the tray slot, Plaintiff Adams said: "I don't want my medication this mornign," and the officers closed the tray slot and began to walk away. Plaintiff actually need his **OPIOID USE DISORDER MEDICATION** and said, "Yo! I want my meds." He then placed his hands through the tray slot and got cuffed up so he could receive his medication. Staff was not going to search plaintiffs cell and had begun to walk away from the cell when plaintiff said he didn't wants his medication.

218.  Defendant Hearing Examiner Dittman, violated plaintiffs procedural due process rights by sanctioning plaintiff to 20 days RHU time, without giving plaintiff a hearing. He never entered the unit and asked Plaintiff Adams if he wanted to participate in his misconduct hearing. Instead of following procedure and protocol Dittman said: "I called and asked officer Butler did you want to participate in your hearing. I heard him ask you and you said no!" Its litterally impossible for that to have happened as plaintiff Adams is locked behind a metal door with a plexic glass top and the door is sound proof, across ten feet of floor, over the television, aver inmates yelling and over the phone receiver. Plaintiff is locked in 24 hours a day. Defendant C/O B. Butler lied and stated plaintiff said no when he never asked plaintiff and there's no way Defendant Dittman could have heard plaintiff say anything. He denied plaintiff his procedural due process by sentencin plaintiff to more time in the RHU, Which is false imprisonment.

219.  Defendant C/O Labadie searched plaintiff cell for the second time, while plaintiff was in the yard. Plaintiff's cell had already been searched at 3am. Ther was no need to search plaintiff cell again.

220. Defendant C/O Simpson searched plaintiff's cell while he was at court, after the cell had been searched at 3am. Defendant SGT. R. Grous ordered the cell searche to harass the plaintiff, as it did. Plaintiff returned from court to find his cell is complete disarray.

221. On this wednesday of may, 2023 Defendant C/O M. Gray searched plaintiffs cell for a second time, while plaintiff was in the RHU yard. There was no need to search the plaintiffs cell as it had already been searched at 3am and plaintiff had no contraband. A tablet is not contraband. The institution issues inmates the tablets every day and Correctional officers give plaintiff tablets so he could use then to contact his attorney and to do his legal work. Plaintiff has been able to log in to the law library app using other inmates ID number. Plaintiff has been in the Hole since 11/1/22 while at bucks county prison and the prison has denied him visits from his family and friends. Plaintiff is a pre-trial detainee and to deny him the right to associate is in violation of the FIRST AMENDMENT OF THE UNITED STATES CONSITIUTION.

222. Defendant C/O Glenn has searched plaintiffs cell at 3am in the morning. This officer did not ransack plaintiff's cell but he did his job and followed the order that was given to him and searched plaintiffs cell.

223. Defendant C/O Roque searched plaintiffs cell with Defendant SGT. N. Cruz and plaintiff's cell was tore up lightly. His cell was definitely searched to harass plaintiff as, he was forced to have to clean the cell back up again.

223. Plaintiff Adams complained about being housed on the MHU unit when he was a RHU inmate. Staff was deliberately tormenting plaintiff by continuing to keep him on the MHU unit with all the inmates who slung feces and urine and who banged on there doors and screamed all night. Inmates were placed in cells-4 and 6, on both sides of plaintiff Adams cell, where they banged, kicked and screamed 24/7.

224. Defendant C/O Mayers searched plaintiff Adams cell at 3am one morning while plaintiff was shackled and cuffed and then sat in a chair outside of his cell as usual. Plaintiff's cell was noticably searched but, this officer did not go out of his way to destroy plaintiff's cell like so many other officers did. He was following orders given to him by his superior officer.

225. Defendant NUrse Ena has been deliberately slipping plaintiff different medication, poisoning him for months. She has caused plaintiff many different medical complication due to her being deliberately indifferent and outright malicious to plaintiff Adams. Plaintiff wrote several grievances on her but when his response was returned to him, he was advised to contact PrimeCare. Plaintiff did as he was instructed but, to no avail. In fact, the only relief plaintiff received was when nurse ENA was not the nurse administering the medication. Plaintiff is aware of how long it takes his medication to dissolve under his tongue. He purposely does not eat in the morning so he could get the full effect of his medication. When it dissolves super fast, its not his Suboxones.

226. Defendant C/O D. Connor, from about 11/22/23 up until plaintiff was transferred to Montgomery county correctional facility, did in fact deliver foor to plaintiff that was spitin with globs of tobacco spit, hog spit, a gel gue like substance and other un-describable things. Not every single day but periodically throughout the week, plaintiff's food came tampered with and un-eatable.

227. Defendant C/O New, on many different occasions, when he delivered plaintiff Adams food, did in fact serve the food with spit, dirty, a slimmy substance and on one occasion, he delivered plaintiffs food with a used piece of toilet paper inside the tray. Someone wiped their backside with the tissue and placed it in plaintiffs tray. Plaintiff Adams wrote several grievances and request slips to deputy Reed and other high ranking officials. Plaintiff told LT. Clayton and got laughed at. The lieutenant the walked away and said nothing else to plaintiff.

228. Defendant C/O Mcfadden searched plaintiff's cell at 3am one morning while plaintiff was sitting in the chair outside of his cell and, he ransacked plaintiff Adams cell quickly. He Placed the handcuffs on plaintiff extremely tight and the plaintiff complained about it.

229. Plaintiff Adams has not once had his clothes washed sinced he was moved over to the MHU unit. Plaintiff wrote staff and asked to have his clothes washed like everyone else in the facility but, no one ever responded to plaintiff. So Plaintiff wrote a grievance about the matter but the grievance was never returned.

230. Plaintiff Adams continued to be tortured by bucks county and its many officials as they refused to move him the the Mental Health Unit. Plaintiff Adams wrote Doctor Jerry and spoke with several mental health staff, trying to get moved from the unit because of how it caused him a significant hardship that was indeed driving him crazy. Mental health worker "GIN" and others tried to get plaintiff moved but, administration would not move plaintiff.

231. On 5/29/23 Defendants SGT. . CRUZ and C/O CARULLI, entered plaintiffs cell and tore it all the way up. Plaintiff legal mail was out of its envelops and tosse around the bed frame. Defendant C/O Carulli sat in plaintiff's cell reading his legal mail and SGT. N. CRUZ approved of this invasion of legal privacy. This act violated plaintiff's constitutional first Amendment right. Plaintiff is also now missing evidence which shows Responses to handwritten grievances sent to deputy warden kelly Reed. Plaintiff is also missing Medical request slips where Primecare responded back to plaintiff after he complained about nurse ENA slipping him medication that wasn't his. Defendant SGT. N. CRUZ and bucks county officials are looking through plaintiffs legal mail looking for documents against the staff in the facility. Defendant C/O Labadie, Officer Smothers and Officer Bueler sat on the outside of the cell with plaintiff. Plaintiff asked Defendant Labadie to say something to defendant C/O Carulli and he said: "No! You knew this was going to

you should of stayed in and not taken your meds this morning."

232. Plaintiff Adams complained about the inhumane conditions that he was forced to live in to Lieutenant Minasian. He is one of the numerous supervisors that the plaintiff spoke to face to face about the conditions he was in. Each and every day plaintiff complained to every supervisor that did a round or that came to the MHU Unit. The repulsive smells from inmates smearing feces on the walls and on the doors and urinating on their cell floors and letting it sit, made plaintiff and staff gag. **Video footage will show all.**

233. Plaintiff Adams has asked Defendant Deputy warden Cantino, Deputy Warden Kell Reed, And superintendent Metellus For help with getting off of the MHU unit because of how it was causing him severe physical and psychological problems. He also asked for yard. Plaintiff was visited by Deputy Warden K. Reed twice. The other deputy came and visited plaintiff once and The Superintendent came to visit plaint iff once and none of them helped plaintiff at all. Plaintiff requested for a time cut due to Defendant Dittman sentencing him to RHU Time without having a formal Misconduct hearing and each Defendant said no. Plaintiff wrote a grievance about the illegal RHU sentencing and was told, He was not allow to grieve a misconduct. Plaintiff stated, He was not grieving the misconduct but the procedure of the mis-conduct is what he was grieving and how he wasn't given a proper hearing and he was still denied any relief.

234. Plaintiff Adams wrote a grievance about the law library and how long it took for him to receive the legal document he requested. He explained in that grievance that he requested case law on the 4th of may and didn't receive the case law until the ±8th of may-(This is an example of the grievance). He then explained how bucks county correctional facility's law library was insufficient and not adequate enoug to do legal research and that he need to use the LEXIS NEXIS app on the tablet. Plaintiff was blocked from using the law Library which denied him access to the court. Blocking plaintiff from using Lexis Nexis is against the law and its indeed unconstitutional. Captain Nottingham and Deputy Warden Cantino, are the two de-fendants responsible for blocking Plaintiff from using the law Library LEXIS NEXIS program on the tablet. Other inmates who were on RHU status, was not blocked from using the Lexis Nexis legal program and plaintiff knows this to be true because, plaintiff used their inmate number and Pin-number to the tablet to log on to the Legal program Lexis Nexis.

235. Defendant Bucks County and their official has indeed forged plaintiffs hand-written documents and more. Plaintiff has presented proof of staff at bucks county trying to duplicate Plaintiff's hand writing and then rewriting plaintiff's paper work and mailing it as if it was plaintiff mailing it. Plaintiff has filed papers with attached documents as exhibits showing this. This is not an allegation or a fictional statement of the plaintiff's. Bucks county has employed the help of others to hinder plaintiff's attempts to file evidence and complaints to this HONORABLE COURT. Plaintiff can prove this but, it will take the video footage from different court proceedings to show this actual fact. Plaintiff's Outgoing sealed mail was opened and tampered with by Bucks county correctional Officials. Plaintiff Adams Adams does not write and articulate like it has been depicted in the copy of the complaint that was sent to him by the CLERK OF COURTS.

236. Plaintiff Adams was unable to sleep properly due to his fear of being hung like officer (Defendant Bromiley) had threatened. Plaintiff was in fear of his lif and because of that, stayed sitting by the door where, he would briefly fall to sleep and then wake up. Plaintiffs sleep was also effected by the mental inmates who constantly banged and kicked on their doors. The constant yelling and loud screaming was the things of nightmares that continue to haunt plaintiff. Plain-tiff has since been transferred from buck county correctional facility.

237. Defendant C/O Keefe is the intake officer who removed legal documents from

plaintiffs legal material upon plaintiffs transfer back to bucks county prison from George W. Hill Correctional Facility. The removal of those legal documents caused plaintiff to lose his parole hearing as, he could not provide the PENNSYL-VANIA parole board when the required documents that was needed to vendicate him. But because those legal document was branded with the BUCKS COUNTY LOGO or stamp the defendant removed those legal documents after plaintiff explained he needed them.

238. Plaintiff continues to be harassed by Bucks county officers every morning at 3am. On 5/4/23  Defendant C/O Harrison searched plaintiffs cell and illegally began Reading plaintiffs legal mail/documents. He then came to the door while reading plaintiffs legal mail and made a comment saying: "Who the fuck is this?" Defendant SGT. Kinkelin  began reading the document as well and after plaintiff complained, she told Harrison to put the legal mail back. Defendant C/O Harrison opened plaintiff's legal mail, went through it and then removed that document and read it on camera as he came to the door. This is captured on video footage and it also proves bucks county officials reads plaintiffs legal mail which is against the law.

239. On 5/5/23 Defendant C/O mattoi, entered plaintiffs cell and searched it. All plaintiffs legal work was dumped on his bed frame and mixed up. Its taken plain-tiff over 24 hours to put everything back in order.

240.  On 5/6/23 Defendant Smythe, searched plaintiffs cell and as he searched the cell, plaintiff sat in a chair outside of the cell. Plaintiffs cell  was searched but it was not trashed this day but it still bothered plaintiff a great deal due to the constant excessive searching and harassment every single day.

241. Plaintiffs phone pin is still blocked on this 6th day of may, 2023. LT. Thompson gave plaintiff permission to call his attorney on 5/3/23. He allowed plaintiff to get a tablet and ordered officer smothers to give plaintiff a tablet Plaintiff tried calling his attorney MR. LOUIS BUSICO at 215-504-2930 and plaint-iffs pin code was blocked.  Plaintiff Asked another inmate to call and plaintiff used Michael Mogilevich, pin code# 50752 and called. This inmate in also on RHU status and his pin code was not blocked nor restricted. Plaintiff's 1st, 4th, and 14th amendment of the U.S.Constitution has been violated here and his equal pro-tection of law has been denied to plaintif.

242. On 5/7/23  Defendant SGT. N. CRUZ  searched plaintiffs cell and quickly tossed  his mattress and paperwork around the cell. Plaintiff complained to  her about his cell being trashed real quick and then he complained about the dosage of his medication. He told her that the dose Nurse ENA had given him was not 16 millagrams and how it wasn't suboxone. Defendant SGT. N. CRUZ said she would log the complaint and did nothing else.  Defendant N. CRUZ then went to inmate (Morning)  and gave him his medication. It took him the normal 15 minutes thats required to dissolve the crushed medication under his tongue. It only took Plain-tiff Adams two minutes this morning and camera footage will show this. None of the other inmates on RHU status who takes Suboxones, cell was searched this day. The inmates on RHU who takes SUBS, Cells are never searched in the morning when they take their medication. Only plaintiff Adams cell is searched every day. This denies plaintiff his equal protection of rights and its harassment. **Video footage will prove this.** Plaintiff Adams is singled out by Bucks county officials and he is harmed by their actions every single day.

243. Defendant C/O Hernandez Used excessive force when he placed the leg Irons on plaintiff swollen ankles and legs. He forcefully bent plaintiff's legs upwards into a position that they couldn't go because of the swelling. He told plaintiff to life his leg and plaintiff stated: "I cant!" The Defendant stated: "You was kicking the door yesterday morning just fine." Plaintiff said: "I was at court yesterday all day you liar. Stop pulling my leg." Plaintiff then yell out of tremendous plain and he yell for Defendant SGT. N. CRUZ because Defendant

Hernandez was pulling the leg iron upwards with great strength, causing the leg iron that was attached to plaintiff's other leg to cut into his skin. He was intentionally pulling the leg iron to cause the plaintiff pain. Plaintiff was alread hand cuffed behind his back and facing the wall. Defendant Hernandez continued to maliciously and sadistically hurt plaintiff and cause plaintiff great pain with his assault/excessive force on plaintiff and he didn't stop until Defendant SGT. N. Cruz exited plaintiffs cell and took the extended leg shackle out of Officer hernandez's pulling hand. There was no need for him to pull the leg iron upwards and by him intentionally doing so, plaintiffs leg was cut into and plaintiff was hurt. **VIDEO FOOTAGE WILL SHOW PLAINTIFF BEING ASSAULTED BY THIS DEFENDANT AT 3AM i the morning. THIS HAPPENED IN JUNE, DAYS BEFORE PLAINTIFF WAS TRANSFERRED.**

244. Plaintiff Adams Stopped Defendant LT. KAVOCH and asked him if he could stop having plaintiff's cell searched every morning. This defendant stated: "No! I will searched you cell every single day so long as your in this prison. You forget what you did to my officer? Your lucky all I'm doing is searching." Plaintiff said: "That retaliation," and the Defendant said: "I don't care what it is.

245. Plaintiff Adams stopped Captain Nottingham as he was doing his rounds and said "I've been writing you asking for your help but you never respond to none of my request slips." He said: "I know I have a pile of them on my desk that you sent me. "Plaintiff said: "I keep writing you asking for your help why aren't you writing me back or responding." The defendant said, "Because I'm not going to help you so stop writing me. Write someone else. You assault one of my officers. Why the fuck would I help you. I blocked your phone, I blocked you on the tablet and I blocked you from commissary. Your lucky I couldn't keep you from getting RHU commissary. So stop fucking writing me." Plaintiff said: "I'm suppose to write you, Dittman gave me Hole time without giving me a hearing." The defendant said, "I don't care. I'm not going to help you. Take responsibility for your actions." Plaintiff said: "I do and I wasn't given a hearing which is against the rules and regulations of this facility." The defendant said: "I don't care!" And then left all the unit. This was witness by several inmates. Plaintiff is waiting on his copies of the record to add that inmate as a witness. Video footage will also show the words between the defendant and plaintiff.

246. Defendant SGT. K. Kinkelin searched plaintiff's cell at 3am one morning. She did a quick pass over and didn't destroy plaintiffs cell but it was most definitely searched.

247. Defendant C/O Hortijenko, searched plaintiff's cell at 3am one morning and he ransacked plaintiffs cell. Plaintiffs legal work was tossed on the bed frame and he was several boot prints on plaintiffs legal papers.

248. Defendant SGT Jergelewicz, searched plaintiff's cell on morning at 3am and thi sergeant did not destroy plaintiffs cell. This Sergeant did search plaintiffs cell but,  it was searched more to show that he was following orders from his superior officers and who ever ordered plaintiff to be searched at 3am every morning. Some officers went out of their way to destroy plaintiffs cell, others stole plaintiffs legal material that was against bucks county and caused plaintiff great emotional and mental distress.

249. Defendant C/O South, On 11/21/22 tried to maliciously and sadicistically harm plaintiff Adams with the excessive force he attempted to use. This defendant used his head and tried to spear (Head-butt) tackle plaintiff in the faces intentionally the defendant was running with full speed and  use upwards propulsion to smash his head into plaintiff Adams face. This Defendant missed his attack and injured himsel by way of crashing into the floor face first. **VIDEO FOOTAGE WILL SHOW THIS DEFENDANT DELIBERATELY LEADING WITH HIS HEAD TO MALICIOUS HURT AND HARM PLAINTIFF.**

250. Plaintiff Adams was not resisting, he was going down and his hands were on the floor when, the defendant C/O south attempted to fatally injure him. The Plaintiff was defenseless and his face was not protected.

251. Defendant C/O south was running at top speed and he testified that he was indeed deliberately trying to tackle plaintiff Adams.

252. Defendant south and the District Attorney of Bucks county, then had a hearing, a surprise preliminary hearing on March 13, 2023, charging plaintiff with aggravated assault and other charges, while plaintiff nor counsel for plaintiff was present. Defendant C/O South and the District Attorney of bucks county then had a preliminary hearing without plaintiff being there and stated: "Plaintiff waived his preliminary Hearing."

253. Plaintiff Adams never waived his preliminary hearing. On March 13, 2023, The plaintiff didn't even have representation and the public defenders office had been declined to represent plaintiff due to it being a conflict of interest. Plaintiff never signed a waiver nor did plaintiffs private attorney "LOUIS BUSICO" sign any waiver. Plaintiff 4th Amendment Right of Due Process has been violated by both defendant south and the Bucks county District Attorney's Office. This is a illegal prejudicial act committed by the Commonwealth and its a miscarriage of justice. Plaintiff is being held in prison, was locked behind metal doors 24 hours a day and must be transported by officer and a supervisor. Plaintiff never waived his hearing

254. On 3/13/2023, no officer opened Plaintiff's cell door and escorted him to the receiving room for court. Plaintiff's try slot was never opened for him to be hand cuffed and shackled. Plaintiff's door was never opened for court. Plaintiff didn't even know he had a preliminary hearing. Plaintiff was asked if he wanted to go to medical By Defendant SGT. R. Grous and plaintiff declined to be escorted to medical

255. Defendant C/O Harrison searched plaintiffs cell on 4/25/23 and placed plain-tiffs Quran on the floor. In paragraph 169 of this complaint, plaintiff mentions this defendant searching his cell.

256. On 5/8/2023, defendant N. Cruz searched plaintiffs cell at 3am. She was accompanied by two other Sergeants and a new class of officers. As usual done, The plaintiff was handcuffed, shackled with leg irons and set in a chair outside of his cell while he cell was searched. His **OUD (OPIOID USE DISORDER)** medication was given to him and Defendant SGT. N. CRUZ searched plaintiffs cell in front of the new class of officers. Plaintiffs cell wasn't ranksacked this day but it was still searched for the sake of routined harassment. At 3:15am, SGT. N. Cruz entered inmate "MOR-NING'S" cell and did not remove him from the cell as he took his SUBOXONE medication like (All RHU inmates who take SUBOXONES are suppose to be removed). At 3:18am, SGT N. CRUZ and the two Rookie officers exited MHU 7-cell without searching it and then went to the RHU. The Inmate in 7-cell is on RHU status just like Plaintiff Adams but, He's white and plaintiff Adams is black. Plaintiff Adams is maliciously singled out by Staff and bucks county Officials and harassed everyday and denied his Equal rights of protection and law. Plaintiff suffers greatly behind the actions of bucks county correctional officers and bucks county administration. Staff are antagonizing plaintiff and humiliating him or degrading him each day and the calculated harassment is constant and none stop.

257. Sergeant Hodges searched plaintiff's cell on 5/9/2023 and he did not destroy plaintiffs cell at all. None of plaintiff's legal mail was dumped out and tossed around the cell. Plaintiff clothes wasn't thrown on the floor nor was plaintiffs hygiene products kicked over. Although this Search was done due to this Sergeant receiving orders from a lieutenant, this officer did not go out of his way to harm

plaintiff or plaintiff's property.

258. Plaintiff Adams cell was searched every single day for over four months straight. Each day that past, plaintiff was Harassed and tormented by bucks county and their officials. Some days, plaintiffs cell was searched twice or thrice. There is no possible way for plaintiff to get contraband in his cell. Tablets are not contraband and staff has issued plaintiff tablets, including Lieutenants, have given plaintiff tablets to use to contact his attorney and his loved ones. Also to do legal work. Other inmates helped plaintiff by allowing him to use their Pin numbers to log into LEXIS NEXIS law library because, bucks county correctional facility's captain and deputy warden , "Nottingham and Cantino", blocked plaintiff from using the law library and blocked plaintiff from contacting his attorney.

259. Plaintiff Adams received burns from the shower one morning because the water was extremely hot. The water burned plaintiff's skin off from his groin area. The defendant, Lt. Clayton, Did immediately take plaintiff to medical where he was treated by the nurse. Plaintiff filed a grievance about the burning water and then the heart from the water was turned down.

260.

## CAUSES OF ACTION-LEGAL CLAIMS

### COUNT I
**VIOLATION OF AMERICANS WITH DISABILITIES ACT (AGAINST DEFENDANTS BUCKS COUNTY, ALL BUCKS COUNTY OFFICIALS NAMED IN THIS COMPLAINT)**

260. Plaintiff hereby incorporates by reference the allegations contained in each and every preceding paragraph, as if fully set forth herein.

261. Plaintiff Adams is a qualified individual with a disability which substantiall limits his major life activities.

262. Defendant Bucks county Correctional Facility and all of its named Officials in this complaint, discriminated against and caused Plaintiff Adams to be excluded from programs, services, protection and activities at buck county correctional facility, due to his disability, in violation of Title II of the Americans with disability Act.

### COUNT II
**VIOLATION OF THE REHABILITATION ACT (AGAINST DEFENDANTS BUCKS COUNTY, BUCKS COUNTY POLICY MAKERS, BUCKS ADMINISTRATION AND ALL BUCKS COUNTY CORRECTIONAL OFFICALS MENTIONED IN THIS COMPLAINT)**

263. Plaintiff hereby incorporates by reference the allegations contained in each, and every preceding paragraph, as if fully set forth therein

264. Plaintiff Adams is a qualified individual with a disability which substantiall limits his major life activities.

265. Defendant Bucks county, bucks county policy makers, bucks county administration and bucks county correctional officials mentioned in this complaint, discriminated against and caused plaintiff Adams to be excluded from participating in programs, services, protection and activities at bucks county correctional facility due to his disability, in violation of section 504 of the rehabilitation act.

### COUNT III
**INADEQUATE MEDICAL CARE UNDER THE FOURTEENTH AMENDMENT, DELIBERATE INDIFFERENCE (AGAINST  DEFENDANTS BUCKS COUNTY, PRIMECARE MEDICAL INC, SPDT. C. METELLUS; DR. V. GESSNER; NURSE JAMIE; NURSE ENA; CHIEF MEDICAL EXAMINER BRIAN NORFLEET; LT. WYLIE; DEPUTY WARDEN KELLY REED; SGT. N. MURPHY; SGT. A. CRUZ)**

266. Plaintiff hereby incorporates by reference the allegations contained in each and every preceding paragraph, as if fully set forth therein.

267. Defendants acts and omissions in denying Plaintiff Adams adequate medical treatment were objectively unreasonable, causing an excessive risk to his health and safety.

268. Defendant were deliberately indifferent to Plaintiff Adams serious medical needs, causing him to suffer needlessly and creating a substantial  risk of future harm.

269. Defendant SGT. A. CRUZ was deliberately indifferent To plaintiff Adams serious medical needs by denying Plaintiff a "Rape Kit" When plaintiff was at medical on 11/1/22.

270. Defendants were deliberately indifferent to plaintiff Adams serious medical

needs by indulging in Malpractice, Namely- Defendant Nurse Jamie who Placed the Plaintiff on a Medical watch at the request of Defendant LT. Wylie and SGT. N. Murphy on 11/26/22 after a medical emergency was called to MHU cell 2 for Plaintiff Adams. Defendant Nurse Jamie falsified medical documents after refusing Plaintiff Adams medical treatment and then down playing plaintiff Adams symptoms so that the plaintiff wouldn't be taken to the outside hospital to receive treatment where, his existing medical problems that be received by bucks county staff would be noticed and documented by outside medical officials. An incident report should have been filed but, Video footage of the medical emergency has be captured by camera. PrimeCare medical staff refused to provide proper adequate medical care to plaintiff Adams, creating a substantial risk of future harm.

271. Defendant Nurse Ena was deliberately indifferent to plaintiff Adams serious medical needs and caused plaintiff Adams to develop medical condition due to her illegally slipping plaintiff medication that did not belong to him. For month this defendant had been experimenting on plaintiff Adams giving him different medication under his tongue, that was crushed and appearing to be his Suboxones. This slipping plaintiff ADams different medication had physical side effects on plaintiff that caused plaintiff's body to swell up, acid reflux and it caused plaintiff to develo an explosive disorder. Proof to this explosive disorder can be seen by the events that took place on 11/21/22. Plaintiff has requested blood work and more but, Buck county and its medical department has denied plaintiffs request.

272. Defendants acts and omissions in denying plaintiff Adams Adequate medical treatment were objectively unreasonable, causing plaintiff Adams to suffer with a fractured nose, torn ligaments in his right hand, torn ligament in his right shoulder, left facial contusion, head swelling, third degree burns to his groin area, dehydration and an infection from being placed in feces covered cell after feces covered cell that was also saturated with urine, causing an excessive risk to plaintiffs health and saftey. Plaintiff Adams wrote numerous request slips to PrimeCare stating he was sick but Primecare Medical InC staff failed to help him.

### COUNT IV
**VIOLATION OF THE 6th AMENDMENT right to counsel; 1st AMENDMENT VIOLATION of freedo to speech to lawyer-(Opening legal mail while not in The presence of plaintiff ADAMS; Removing legal documents, censoring written legal documents and denying the plaintiff law library,)violating plaintiffs 4th and 14th AMENDMENT CONSTITUTIONAL Rights. Adainst (Defendants Bucks county, Captain Nottingham, Deputy warden Cantino, SPDT. C. METELLUS, Deputy Warden K. REED, Bucks county policy makers, LT. C. HUGG and Buck County Administration).**

273. Plaintiff hereby incorporates by reference the allegations contained in each and every preceding paragraph, as of fully set forth herein.

274. Defendant LT. C. HUGG did indeed open plaintiff Adams legal mail that was delivered by bucks county Sheriffs on Friday, December 2, 2022, and read and remove legal documents while not being in the presence of Plaintiff Adams. Plaintiff was rushed to Doylestown Hospital due to injuries he obtained by the hands and feet of bucks county correctional officers. Plaintiff Adams legal work was labeled legal work in big black marker letters. The defendant is seen on video footage walking through the hallways with plaintiffs legal envelope tore open and then he entered the MHU unit and sat plaintiff legal mail that had been opened by himself on the desk. MHU video footage also shows this incident.

275. Plaintiff Adams had called The Bucks county Sheriff's Department and spoke to he sheriffs directly who, assured plaintiff that his legal mail was still sealed nd would be delivered on Friday, the 2nd of december. Plaintiff's legal mail was ndeed delivered by the sheriff department and handed over to bucks county officials

276. On sunday at 3 or 4am, Defendant Lt. C. Hugg did rip open Plaintiff Adams sealed Manila legal envelope, without being in the presence of plaintiff Adams and then read and removed legal documents that could have vendicated plaintiff in his technical parole violation hearing. Defendant Lt. C. Hugg illegally censored plaintiff's legal material and removed legal documents from Philadelphia county, Berks county, Montgomery County and even bucks county.

277. Plaintiff Adams complained to Defendant Lt. C. Hugg about his legal mail being opened while out of his presence and then plaintiff complained about legal documents being removed and missing from his legal work. Defendant Lt. Hugg then replied: "Our policy says no other county's legal documents are allowed into this institution and that all legal documents that come from other than Bucks county is to be confiscated from inmates." Plaintiff Adams then stated: "My legal mail was mailed in and I need it for my hearing." Defendant Lt. C. Hugg denied plaintiff The right to properly defend himself in his parole hearing that was the following day. Plaintiff had a liberty interest illegally and unlawfully taken in violation of plaintiff's constitutional rights. Plaintiffs fourth and fourteenth Amendment was violated by this officer and Defendant C/O Keefe who, also took legal papers and documents from plaintiff, unlawfully.

278. On December 3rd, 2022 Plaintiff Adams had a technical parole violation hearing with Pennsylvania state parole board. Counsel for plaintiff testified that, the required documents plaintiff Adams needed to Combat the technical violation, was confiscated by prison officials and that a continuance was needed to obtain those documents. The state parole board granted plaintiff a continuance to get those documents. However those legal papers was again confiscated and plaintiff lose his technical parole violation hearing. Therefore bucks countys correctional officer Keefe and Lieutenant C. Hugg denied plaintiff of a liberty interest.

279. Defendant LT. C. HUGG also violated plaintiff Adams confidentiality right with his attorney by reading Plaintiffs legal documents and then removing those documents that would have vendicated plaintiff Adams. Defendant C/O Keefe also violated plaintiff's Confidentiality Right between client and attorney by reading plaintiff's legal mail and removing his legal documents.

280. Defendant C/O Harrison did indeed violate plaintiffs Confidentiality rights by reading plaintiff Adams legal mail in the cell during a calculated harassing search. He then came to the door and continued reading plaintiffs legal documents while on camera. Defendant SGT. K. Kinkelin then participated in this unlawful act and began reading plaintiffs legal mail on camera along with Defendant C/O Harrison before ordering him to put the legal mail back.

281. Defendant Captain Nottingham Blocked plaintiff ADams from using the LEXIS NEXIS law program by giving the order for plaintiff to be blocked from using the program, which is against the law. Blocking plaintiff from law library denies the plaintiff Access to the court. Bucks county correction facility does not have a adequate law library for plaintiff to do legal research. Futhermore, plaintiff was only blocked from using LEXIS NEXIS LAW SERVICES while he was going to trial. Once plaintiff was finished with trial, (Lost), the legal program LEXIS NEXIS became available for plaintiff to use. This defendant also gave the order from plaintiff Adams Phone PIn to be blocked, denying plaintiff the right to contact his attorney when he need to contact his attorney. Plaintiff's phone account was unblocked and he was able to contact his attorney after his trial was over. This defendant did indeed denied plaintiff access to the courts and he violated plaintiffs Constitutional rights.

282. Defendant Deputy Warden Cantino Also gave the illegal order for plaintiff Adams to be denied access to the courts by ordering plaintiff to be blocked from Lexis Nexis Legal services/ programs. He also blocked plaintiff from making legal

calls to plaintiff Attorney. This defendant along with Defendant Captain notting-
ham, also collective gave orders for plaintiffs inmate account to be blocked and
restricted so plaintiff couldn't order RHU Commissary...i.e, hygiene products,
stamps, paper and envelopes.

283. Defendant Superintendent Metellus, Defendant Bucks County Policy Makers and
defendant Bucks County Administration, Denied plaintiff ADams from making legal
calls and from accessing the courts. Plaintiff appealed to the Superintendent and
bucks administration and respectfully requested to use LEXIS NEXIS and contact hi
attorney. Plaintiff begged to have his legal work returned to him so that he coul
properly defend himself at his parole hearing but, he was denied. Plaintiff Adams
write grievances stating his constitutional rights of due process and more but,
These defendants continued to deny plaintiff.

284. By the defendants illegal actions. failing to correct that misconduct, and
encouraging the continuation of the misconduct, All the defendants are in violati
of Plaintiff Adams 6th, 1st, 4, 14, and 8th Amendments of the  UNITED STATES
CONSTITUTION, causing plaintiff Adams pain, suffering, emotional distress, lost
of liberty interest, Injury to his first amendment freedom of confidential speech
between client and attorney and it denied plaintiff the equal protection of law
that he is gauranteed.


### COUNT V

**PROFESSIONAL NEGLIGENCE UNDER PENNSYLVANIA LAW; DELIBERATE INDIFFERENT, CRUEL AND
UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS (AGAINST
DEFENDANTS BUCKS COUNTY CORRECTIONAL FACILITY, SUPERINTENDENT METELLUS, OFFICER
SIMPSON, SERGEANT A. CRUZ, SERGEANT K. KINKELIN, SERGEANT N. MURPHY, LIEUTENANT
K. WYLIE, SERGEANT A. BECK, LIEUTENANT M. CLAYTON, LIEUTENANT J. WHITESALL,
DEPUTY WARDEN KELLY REED, DEPUTY WARDEN CANTINO, CAPTAIN NOTTINGHAM, NURSE JAMIE,
NURSE ENA, LIEUTENANT C. HUGG, LIEUTENANT KAVOCH, SERGEANT N. CRUZ, SERGEANT C.
ODONNELL, SERGEANT R. GROUS, SERGEANT R. RAGGI, PRIMECARE MEDICAL INC, CHIEF
MEDICAL ADMINISTRATOR BRIAN NORFLEET, BUCKS COUNTY ADMINISTRATION, SERGEANT JURGI
LEWICZ, DOCTOR GESSNER, AND C/O F. WILLIAMS**

285. Plaintiff hereby incorporates by reference the allegations contained in each and
every preceding paragraph, as if fully set forth therein.

286.Defendants acts and omissions in denying plaintiff Adams adequate and equal
protection, as defendant had a duty to act in accordance with the standards of
care required of security and medical professionals and to act as a reasonable
person would under the same or similar circumstances. Bucks county and its official
has known for years about how unsafe their cell doors to the cell are.

287. Defendants Bucks County, Superintendent Metellus, deputy warden K. Reed,
deputy warden Cantino, Bucks county Administration, Has failed to Install/replace
fix and provide inmates with **TAMPER PROOF DOOR** or **DOORS THAT LOCK**  with **adequate
locking devices thats  TAMPER-PROOF. Escape Proof** and  unable to be broken into
by inmates. Bucks county and the superintendent (Metellus), along with its many
official listed in this heading, has been aware of the unsafe cell doors on the
units and the hazardous conditions caused by the lack of security of   the doors
However, Bucks county correctional institutional and its top ranking officials
have neglected to provide security to Plaintiff Adams by failing to Fix the locki
issues with the cell doors. Instead of fixing the locking mechanisms and installi
reliable locks that would prevent inmates from breaking in and out of the cell,
Bucks county chose to build another prison to houses females. The proof of these
official being aware of the Problems with the locks, can be found   in  the
thousands of misconducts issued to inmates for **Popping** In and out of their cells

288. Due to defendants Bucks county, Superintendent Metellus, Bucks Administration and those in charge of security's negligence, Plaintiff Adams was hurt and harme by Inmate boiling who, broke into plaintiffs locked cell-(From outside of the cell)-and assault Plaintiff Adams. Bucks county correctional Administration, superintendent Metellus, captain nottingham, Deputy warden K. Reed, Deputy warde Cantino and Bucks county Policy Makers were deliberately indifferent to plaintif Adams security needs. Defendant C/O Simpson was aware of the danger plaintiff wa in as Inmate Boiling Told Plaintiff directly He was going to "Kick his teeth in and beat his ass". Defendant C/O Simpson further placed plaintiff in great Dange By calling plaintiff A "Snitch and a Rat" several times.

289. Defendant SGT. A. Cruz was deliberately indifferent to plaintiff Adams ser- ious medical needs by denying plaintiff medical attention. On 11/1/22 plaintiff Adams requested a Rape Kit be done due to him being knocked unconscious in the cell. After answering the Defendants questions and explaining to SGT. A. CRUZ that he was attacked, Plaintiff Adams requested a Rape medical exam be done due to him being knocked unconscious because, he didn't Know what happened to him. Defendant Sergeant A. Cruz told Plaintiff: "NO!" and then locked plaintiff into a holding cell. Plaintiff was complaining about abdominal and rectal plain while he was in the holding cell and this was the reason why two officer took plaintiff to medical.

290. Defendants Bucks county, Superintendent METELLUS, and Bucks county administ ration Denied plaintiff Adams the equal protection of law by neglecting to prot- ect plaintiffs physical welling being. The superintendent and the staff mentione in this complaint has a legal obligation to protect a inmate from the physical abuse/harm of another inmate. (Especially when staff has been made aware of the threatening issues that put another inmate in imminent danger).

291. Defendants Deputy warden K. Reed, Deputy warden Cantino, Superintendent Metellus, Bucks county correctional facility, Bucks county Administration, SGT. A. CRUZ, SGT. C. ODONNELL, SGT. K. KINKELIN, SGT. N. CRUZ, LT. C. HUGG, LT. M. CLAYTON, LT. KAVOCH, SGT. R. GROUS, SGT. R. RAGGI, SGT. N. MURPHY, SGT. A. BECK, LT. J. WHITESALL, LT. K. WYLIE, was deliberately indifferent to plaintiffs serio medical needs, sanitary needs, hygiene needs, Basic needs and, each defendant imposed cruel and unusual punishment on plaintiff Adams, causing him to suffer needlessly. Plaintiff Adams begged eached of this defendants for a mattress to sleep on but, for weeks he was denied a mattress. On 11/21/22, MHU Video footage will show Defendant Lt. K. Wylie removing a urine saturated mattress with feces all over it from mhu 3-cell, where plaintiff was housed. This cell was also covered with feces and urine. Video footage will show that very mattress being placed in a clear plastic beg because of it foul smell and dripping of urine. Each and every day, plaintiff Adams asked these official for a mattress and shower. Defendant SGT. K. KINKELIN then intentionally moved plaintiff Adams into 2-cell where, it was covered in even more feces. Plaintiff was transferred to th mental health unit to torment and torture him. Captain Nottingham and others tha is name in this paragraph and responsible for the cruel and unusual punishment that plaintiff suffered. Plaintiff Adams was stripped naked and left naked in front of other inmates by Lt. K. WYLIE and SGT. N. MURPHY, to humiliate and de- grade plaintiff. Plaintiff was then stripped naked for a second time by the same two defendants and left naked in front of other inmates, for the amusement of the officers. SGT. N. MURPHY laughed at plaintiff as he asked to keep on his clothes that he had. Plaintiff had never felt so low nor been so humiliated in his lift. Plaintiff was forced to freeze and sleep on a hard bed frame that was harder and colder than the floor for weeks. Video footage will show this. Plain- tiff Adams often wrote grievances and request slips requesting humane conditions and then posted them on the cell door's glass so that the rotating camera would capture plaintiffs cry for help. Plaintiff then would file the grievance so that

they would get to the grievance coordinator.

292. Defendant Lt. K. Wylie was deliberately indifferent to plaintiff's serious medical needs by telling Nurse Jamie to down play plaintiff Adams medical issues. Lt. K. Wylie then asked nurse jamie to diagnose plaintiff with a sickness so that plaintiff could be put on a medical watch, where all his property would be taken from him. Defendant Nurse jamie obliged Defendant K. Wylies Request and plaintiff was forced to suffer needlessly and cruelly. Due to the medical order written by Defendant Nurse Jamie on the behalf of defendant Lt.K. WYLIE, plaintiff Adams became extremely sick.

293. Defendants failure to provide safe secure doors with adequate locks allow inmate (Cody Atkison) to pick a cell lock on C-Unit which, caused him to become Plaintiff Adams Cell-mate On the RHU-Unit in cell 15. This inmate is a witness to the torment and torture of Defendant C/O F. Williams who imposed cruel and unusual punishment on plaintiff by encouraging plaintiff to commit suicide. The plaintiff, at the time, was taking this officers advice and therefore began to save his medication so that he could over dose and end the daily torment of defendant williams.

294. The Defendants Professional Negligence caused unsafe conditions for plaintiff Adams and ultimately it enabled the assault on plaintiff Adams  After defendant C/O Simpson deliberately put plaintiff in danger. Defendant C/O was fully aware of the danger that plaintiff Adams was in as Inmate boiling told him he was going to Hurt plaintiff Adams. He also threatened plaintiff Adams a numerous of times in the very instance. The defendant knew about the danger and the danger he put plaintiff in by calling Plaintiff a "Snitch and Rat" several times in front of all the inmates that was out for their recreation. Down stairs was locked in and up stair was out for recreation.

295. Defendant C/O Simpson failed to provide plaintiff with equal protection and he allowed inmate Boiling to Assault plaintiff Adams. This defendant did not tell Plaintiff boiling to return to his cell, or move away from plaintiffs cell nor did he tell Inmate boiling to leave plaintiff Adams alone. Instead, This very defendant, C/O Simpson, instigated the situation by calling plaintiff a Snitch and a rat, while arguing in front of the inmate who were out for their morning recreation. Officer Simpson knew plaintiff was in danger when inmate "Boiling" stated "Im a knock this nigga out".

296. Defendant C/O Simpson Failed to provide Plaintiff Adams with the equal protection of law that he's gaurenteed under the 14th Amendment of the United States Constitution, Causing plaintiff Adams pain, suffering, emotional distress, and physical harm. Defendants deliberately indifference caused Plaintiff Adams to be Assault by inmate Boiling. VIDEO FOOTAGE shows Defendant C/O Simpson causing the argument by calling inmate (Boiling) to assist him. Officer Simpson then assisted inmate **BOILING** by alling him unrestricted access to plaintiff Adams cell. Inmate **Boiling** is seen on camera breaking into plaintiffs cell,

297. Defendant Nurse Ena, was Deliberately Indifferent to plaintiff Adams medical needs by refusing to give plaintiff Adams his medication. Nurse Ena has on a number of occasions, slipping plaintiff Adams medication that wasn't his. This illegal and unlawful Act was done in an attempt to hurt plaintiff. Plaintiff then called upon nurse ENA and told her he had a stomach problem and this nurse refused to see him or provide plaintiff with any medical help. Plaintiff Adams wrote several grievances on Nurse Ena and complained about her trying to harm plaintiff. This defendant refused to provide plaintiff with his proper dosage of his medication and then some days, she didn't give him his medication at all but gave plaintiff a completely different substance. She would crush up different

298. Defendants illegal actions, failing to correct that misconduct, and encouraging the continuation of the misconduct, violates plaintiff Adams 14th and 8th Amendment of the UNITED STATES CONSTITUTION. And it caused plaintiff Adams pain, suffering, emotional distress, physical hurt, and punishment that was indeed cruel and unusual. Placing plaintiff in feces cover cell after cell and denying plaintiff a mattress and forcing plaintiff to sleep on a frozen bed frame that was harder and colder then the floor was cruel and unusual punishment. It was inhumane to subject plaintiff to those unsanitary repulsive conditions and then to deny him a mattress and force him to sleep on frozen bed frame was torture.

299. Defendant Nurse Ena attempted to murder plaintiff by intentionally giving plaintiff crushed medication that, was not his medication, was cruel and unusual punishment that plaintiff his not deserve. This defendant indulged in professional negligence by going against the code of conduct that people in her licensed profession take a oath to.

300. Each and every defendant named in the heading of this count, was professionally negligent in failing to provide plaintiff with the adequate help he needed. No reasonable professional personnel would be Okay with doing nothing to help a human being in desperate need of life sustaining assistance. No reasonable professional would strip another human naked and leave him nake in front of other for amusement or to humiliate that individual. To force a human to live in feces covered cell after feces covered cell is indeed cruel and unusual punishment. To encourage a person to commit suicide is cruel and unusual punishment and its professional negligence . Searching a persons property and ransacking his property for more than 90 days straight is not only excessive and harassment but its also deliberate indifference and cruel and unusual punishment and it denied plaintiff his 14th Amendment of Equal protection of law. No other inmate was searched every single day like plaintiff was.

301. Defendants illegal actions, failing to correct that misconduct and encouraging the continuation of the misconduct, violates plaintiff Adams 14th and 8th Amendment of the UNITED STATES CONSTITUTION. And it caused plaintiff Adams pain suffering, emotional distress. mental distress, physical hurt, and punishment that was indeed unusual.  Transferring Plaintiff Adams to the mental health unit to serve RHU time was a torturing and tormenting tactic that caused the plaintiff a significant amount of Hardship that was malicious and extremely harmful.


**COUNT VI**
**DELIBERATE INDIFFERENCE, CRUEL AND UNUSUAL PUNISHMENT, DEGRADING, DENIAL OF EQUAL PROTECTION, DISCRIMINATION, LABELING A SNITCH AND A RAT, PSYCHOLOGICAL TORTURE/MENTAL ABUSE, DEFAMATION OF CHARACTER-(CALLING PLAINTIFF A FAGGET, HOMO MUHAMMAD, HOMO-MUSLIM), DELIBERATE HUMILIATION: (AGAINST DEFENDANTS C/O F. WILLIAMS, C/O G. SIMPSON, C/O CLARKE, SGT. N. CRUZ)**

302. Plaintiff hereby incorporates by reference the allegations contained in each and every preceding paragraph, as if fully set forth therein.

303. Defendants acts and omissions in denying Plaintiff Adams adequate and equal protection as defendants had a duty to act in accordance with the standard of care required of security professionals and to act as a reasonable person would under the same or similar circumstances.

304. On 11/1/2022 Defendant C/O G. Simpson began arguing with 9 cell and plaintiff Adams about a broken tablet and officer simpson began to call plaintiff Adams a "Snitch" in front of the inmates who were out for recreation. Plaintiff Adams was locked in his cell and spoke from inside of his locked cell. The

defendant told plaintiff Adams; "Adams shut the fuck up you rat. All you do is snitch on what goes on on the unit, trying to get browny points." Plaintiff Adams replied: "Yo stop lying on my name." Defendant C/O G. Simpson then says; "You've been telling since you've been on this block." Defendant G. Simpson deliberate put plaintiff Adams in danger by labeling him a Snitch in front of the entire upstairs half of the unit, who was out for their morning recreation.

305. Defendant C/O G. Simpson continued to plaintiff Adams a Rat several times and plaintiff asked him to stop. The defendant then allowed another inmate to assault plaintiff Adams. Inmate Boiling told C/O Simpson to **"Step off while I handle this situation"**, and Defendant C/O G. Simpson did as inmate boiling told him to do. This was after Inmate boiling had told officer G. Simpson: "I'm getting ready to kick this faggets teeth out. I hate mother Fuckers who rat yo." He then turned to plaintiff in front of Defendant C/O G. Simpson and said; "I'm going to kick your fucking teeth in you snitch ass nigga. I promise I'm about to beat your ass, keep talking." The defendant was very aware of the danger he had intentionally placed plaintiff Adams in and he did nothing to prevent plaintiff from being hurt. He caused plaintiff to be hurt and assaulted because plaintiff was different from the other men on the unit. Because of plaintiffs LBGTQ± status and demeanor and out spokenness, the defendant denied plaintiff equal protection. So this defendant immediately labeled plaintiff a "Snitch" and that labeling caused plaintiff to be assaulted and attacked.

306.Defendant C/O G. Simpson then deliberately turned around and followed inmat boilings orders, intentionally allowing inmate Boiling to break into plaintiffs cell. Plaintiff Adams doesn't know what happened after he was knocked unconscious by inmate boiling. Defendant Simpson knew what was happening to the plain tiff but, he did not call a code for staff to help plaintiff Adams nor did he himself try to stop inmate boiling from assaulting plaintiff. This Defendant was deliberately indifferent to plaintiff Adams safety and security needs and denied plaintiff the equal protection that every other prisoner had, safety.

307. Calling plaintiff a Snitch and a Rat indeed was a defaming of character an it placed plaintiff in immediate danger. To be labeled a jail house Snitch and a Rat, forces a inmate to walk around with a target on his back. In this case, the harm plaintiff Adams suffered was immediate as, Inmate boiling became revve up by the Defendant C/O G. Simpson, who continued to call plaintiff Adams a Rat This inmate then Broke into plaintiff Adams Locked cell because, Bucks county correctional facility and its top officials neglected to address the issue with the faulty malfunctioning locks on the cell doors thats not escape proof nor tamper proof. Bucks county, its superintendent and its numerous deputy wardens has neglected to fix the locks and or replace the locks with ones that was adequate enough to keep inmates in their cells and to keep unwanted inmates out of cells that doesn't belong to them.

308. Defendant F. Williams began his Assault on plaintiff on 11/2/2022, while plaintiff Adams was housed on the RHU (Restricted housing unit). Plaintiff had a babysitter/monitor sitting on his door because, plaintiff was placed on medical watch. When defendant C/O F. Williams became aware of plaintiff filing a grievance against the Superintendent and the facility, he began to call plaintiff out of his name and joke on plaintiff to amuse the other inmates on the block. He called plaintiff Adams a "Nigger" and Plaintiff said: "Don't call me a nigga I'm not your nigga/ nor anyone elses nigga for that matter." The defendant said "I'm black! I can call you nigga as much as I want. " Plaintiff repeated himsel and than began to argue with the inmate monitor that was on his door. Mr. Steve the inmate monitor on plaintiffs cell door, began to cry. This can be seen on video footage. Defendant C/O F. William watched the inmate monitor cry and then

309. Defendant C/O F. Williams threatened to shoot plaintiff Adams on several occasions. He then began to call plaintiff Adams: "A fagget, a snitch, homo-muhammad, Homo-muslim, a bitch a pussy and a Joint-(Another degrading name for a LBGTQ± man). Defendant Williams frequently called plaintiff Adams a nigger several times a day. Plaintiff responded with: "I'm not your nigger, or, You wish I was your nigga." Saying; "You wish I was your nigga", seemed to get under the defendants skin so plaintiff decided not to say that any more because he wanted for this defendant to leave him alone.

310. Defendant C/O F. Williams stood on plaintiffs cell door one day when the plaintiff was in 7-cell and stated while plaintiff was in prostration praying, "Yeah, bust it open for me." Referring to plaintiff's back side.  Plaintiff did not respond immediately. Instead  plaintiff immediately wrote a grievance and complained to deputy warden Kelly Reed about the actions of officer F. Williams and plaintiff asked her to tell him to leave him alone. The defendant then, on this same day, yelled to this entire Unit: "This Fagget got beat up By inmate Boiling in 11-cell y'all. He's a fagget and a Rat, now he want to pray. His new name is Homo-Muhammad."

311. Defendant C/O F. Williams then told plaintiff he was going to get his wifes address from his visiting list, find her and then go fuck her. Plaintiff Adams replied by spitting on the glass of the cell as this defendant stood on the door. Every single day that this defendant worked on the RHU, he found a way to start with plaintiff ADams. He began calling plaintiff faggets and punks and pussy's more and more each day. The defendant can be seen on camera, hold-ing his keys and creeping up on the side of the shower, where plaintiff Adams was showering, then peaking around the wall into the shower. Plaintiff Adams began yelling as he became angry about what had just happened. This happened on a wednesday, in the morning hours of the day. On this same day, defendant C/O F. Williams is caught by Lt. Whitesall, Cursing plaintiff Adams out and calling plaintiff Adams Faggets and more. This Lieutenant also heard Defendant C/O F. Williams, threatening to kill and hurt plaintiff Adams with physical pain. This Lieutenant then removed defendant C/O F. Williams off of the unit for a couple of days.

312. For three weeks straight, with the exception of his days off, Defendant C/O F. Williams called plaintiff Adams all kinds of dick eating Faggets, rats, niggers, Homo-muhammads, joints, pussy's and then one day, this defendant over heard plaintiff telling someone about how he had attempted suicide in the past. The defendant then began to encourage plaintiff to commit suicide by saving all of his medication for a week or two and then taking them while plaintiffs cell mate was in the yard. Plaintiff Adams began to listen to this officers advice and encouragement because, plaintiff wanted the daily degration and humiliation and psychological torment to stop. On 11/21/2022 after the incident involving the plaintiff and this very defendant, C/O F. Williams, Plaintiff was found with a plastic bag full of his crushed medication. Plaintiff needed to be free of this defendants daily put-downs, insult and gay bashing assaults.

313. Defendant C/O F. Williams stood on plaintiffs door and told him to kill himself. This defendant also told plaintiff Adams that he would kill his son. Plaintiff Adams often cried some days because no one would listen to his grie-vances and stop officer williams for harming him. It was cruel and unusual punishment for this Defendant to encourage plaintiff to kill himself. It was humiliating to be degraded by this officer who continuously called plaintiff faggets and snitchs and homo-muhammad and  this defendant denied plaintiff the equal protection because of plaintiffs sexuality. This defendant then entered plaintiff Adams cell on 11/21/2022 and threw plaintiffs Quran on the floor under the toilet and smeared some type of white substance on plaintiff's other religious papers. This caused plaintiff to become angry because, this defendant

had violated plaintiff Religious material and when confronted about the matter, this defendant became deliberately indifferent to plaintiffs 14th amendment of equal protection, plaintiffs 1st Amendment of Freedom of religion without the government interference.  The defendants actions violated plaintiffs 8th Amendment causing plaintiff to suffer needlessly, putting plaintiff through emotiona distress, depression and he humiliated plaintiff.  Plaintiff suffers from PTSD, Depression, oppositional defiant disorder, Bi-polar depression and Gender Dysphoria issues that only he and other LGBTQ± people live with. Plaintiff has had to increase his medication because of issues stemming from this defendant and others from bucks county correctional facility.

314. Defendant C/O F. Williams onslaught of Homophobic slurs and degrading insults violated plaintiffs equal protection right under the 14th Amendment and he discriminated against plaintiff and caused great psychological harm to plain tiff Adams that caused him to suffer needlessly, creating a substantial risk to his health and safety.

315, Defendant C/O clarke on the early morning hours that he searched plaintiff Adams cell, while Plaintiff was housed on the MHU unit, in cell 5, Called the plaintiff A Rat, coward  pussy, bitch and then he ransacked plaintiffs cell. Calling plaintiff Adams a "Rat and A Coward" degraded the plaintiff and it was cruel as, it labeled plaintiff a Snitch and that ultimately, puts a prisoner in harms way. This defendant denied plaintiff the equal protection of rights and this Defendant was deliberately indifferent to the security needs of plaintiff Adams. This defendant caused more harm then he did good towards Plaintiff Adams and he deliberately harassed plaintiff during the times that he participated in the excessive searching of plaintiff's cell. On one occasion  this defendant is seen taking a step towards plaintiff as if he was going to assault the plaintif and defendant SGT. A. Beck is seen holding this defendant back from assaulting the plaintiff.

316. Defendant Sgt. N Cruz said to plaintiff Adams after he complained about his cell being ransacked by her officers; "That's what I hate about you faggets y'all fuckin' whine to much." This incident occurred on 5/22/23. Plaintiff said in response: "How could you say something like that when your gay too?" Calling the plaintiff a Fagget is defaming his character, its humiliation and its cruel and unusual punishment. Plaintiff was already bond and shackled while his cell was being ranksacked and excessively searched. To call plaintiff a fagget did deny plaintiff his equal protection of rights and law that every prisoner is intilted to.

COUNT VII

**EXCESSIVE FORCE, BEATING CUFFED PLAINTIFF IN VIOLATION OF THE 8TH, 4TH AND 14th AMENDMENT OF THE UNITED STATES CONSTITUTION: (AGAINST DEFENDANTS C/O SCHUSTER, SERGEANT A. BECK, C/O GEIBERT, C/O HERNANDEZ, C/O JOHN DOE #1, C/O JOHN DOE #2, SERGEANT N. MURPHY AND LIEUTENANT K. WYLIE, C/O SOUTH)**

317. Plaintiff hereby incorporates by reference the allegations contained in each and every preceding paragraph, as if fully set forth therein.

318. Defendant C/O South, used excessive force when he attempted to head-butt spear plaintiff Adams in the face as plaintiff was in a state of surrender. This defendant tucked his head and turned his body in to a human projectile, with the intentions of causing plaintiff Adams serious bodily harm.

319. On 11/21/2022, while plaintiff Adams laid on the floor motionless and subdued by six to seven correctional officers, defendant C/O Schuster did knee plaintiff Adams in the head and then on the left side of the face. Plaintiffs skin was torn off of the left side of his face where, chief investigator Anthony-(Of Bucks county correctional facility)-took pictures of plaintiffs face. This investigator also testified on cross-examination that plaintiff Adams obtained injuries from officers at bucks county correctional facility. This investigator testified that he with held this evidence from this district attorney

320. On 11/21/2022, Defendant C/O John Doe #1, did punch plaintiff Adams in the face while plaintiff was hand cuffed and laying motionless  Plaintiff was subdued by six or seven other officers who sat on the plaintiffs back. This defendant then punched plaintiff in the face, (The nose to be specific) and fractured plaintiffs nose. Plaintiff Adams face immediately erupted with pain and plaintiff still remained motionless. This defendant than delivered another blow to plaintiffs face by punching plaintiff with a closed fist. This defendant assaulted plaintiff while he was hand cuffed lying on the floor and these set of hits came before the kneeing of Defendant C/O Schuster.

321. On 11/21/2022, Defendant C/O GEIBERT, SERGEANT A. BECK and DEFENDANT JOHN DOE #2  entered MHU 3-cell and assaulted plaintiff Adams with excessive force. The defendant C/O GEIBERT and JOHN DOE #2 Slammed plaintiff face first down on the bed frame as hard as they could. Defendant Sergeant A  Beck then placed his hands on the hand cuffs and smashed down on the cuffs, locking them even tighter around the plaintiffs wrist. Plaintiff ADAMS then screamed to the top of his lung out of the tremendous pain the he felt. Defendant John Doe and C/O Geibert then set plaintiff Adams up after the leg irons was placed on extra tightly. Plaintiff continued to cry loudly from the pain the the officers were imposing on him. The nurse stood there in shock or (What appeared to be shock) because he didn't attend to the plaintiff at all.

322. On 11/21/2022, Defendants C/O GEIBERT, Sergeant A. Beck and defendant JOHN DOE #2 snatched plaintiff through the tray slot while he was still hand cuffed and violently pulled. Plaintiff was snatched off of his feet and then plaintiff hung suspended in the air as his arms and shoulders were hyper-extended backwards Sergeant A. Beck laughed as plaintiff hung crying with his body suspended in the air. The defendants had locked the leg irons around the middle of the hand cuffs and used the length of the chains to pull backwards.  So plaintiff Adams, was snatched backwards, off of his feet, and because of how he was snatched off of his feet  he buttocks never touched the floor.

323. Plaintiff Adams was told to lay on the floor and he did as he was ordered by Sergeant A. BECK  When the cell door was opened, defendant C/O GEIBERT  steppingly kicked plaintiff in the face. Plaintiffs head laid in between the wall and

the toilet. Plaintiff was told not to move and plaintiff didn't move but was then punched in the back of the head by one of the three officers behind him. Plaintiff was no able to see which officer punched him in the back of the head because, they were behind plaintiff. But plaintiff definitely felt the punch.

324. The excessive force used by the defendants SGT. A  BECK  C/O Geibert and C/O JOHN DOE #2 was uncalled for as plaintiff was in need of medical attention. Plaintiff was not being disruptive nor was plaintiff being combative. Smashing the hand cuffs down around plaintiffs writs tore ligaments in plaintiffs right hand. Ligaments in plaintiffs right shoulder was also torn. X-Rays of plaintiffs right hand and shoulder was taken at Doylestown hospital and a catscan was taken of the plaintiffs head.  Plaintiff was taken to Crosher hospital in chester county where, another cat-scan was done showing plaintiff had a fractured nose. This fractured nose came from bucks county correctional facility's officers assaulting the plaintiff. Plaintiff did not enter the facility with a fractured nose and this can be proven by hospital records as, plaintiff was taken to bucks county prison from the hospital where he was at for several days.

325. Defendant C/O Hernandez did indeed use excessive force on plaintiff at 3am in the morning during the month of june 2023  This defendant placed a leg iron on the plaintiffs swollen Right leg and then he pulled the chain upwards and was pulling with great force to hurt the plaintiff. Plaintiff Adams was already hand cuffed behind his back and facing the wall. Plaintiff had severe medical issues that developed from Defendant Nurse ENA. Then swelling of plaintiffs legs and ankles prevents plaintiffs legs from doing certain things and from lifting certain ways. Defendant C/O HERNANDEZ  used excessive force and maliciously and sadistically pulled the chains up hard to cause plaintiff pain. There was no Penological reason from this defendant to pull the leg irons upwards. The other leg cuff wasn't even locked around plaintiffs left leg. Plaintiff wasn t attempting to run. Plaintiff was already hand cuffed and facing the wall. This defendant used harmful force to retaliate against plaintiff Adams because of the incidents that occurred between plaintiff and Officer south on 11/21/22. This defendant was upset because plaintiff was found not guilty of the charges that he was charged with concerning defendant Correctional officer SOUTH.  **This Defendant is seen on Video Footage violently pulling the leg iron,** Plaintiff Adams yell for SGT. N. CRUZ who, exited the plaintiff's cell and took over. She immediately undid the leg iron that was on plaintiffs leg after she took the chains out of C/O Hernandez s Pulling hands, and then she placed the leg irons on plaintiff legs. Defendant C/O HERNANDEZ then verbally to verbally assault plaintiff by calling plaintiff a bunch of cowards and pussys and other inappropriate names and the plaintiff did defendant himself verbally but in a respective way...i.e, plaintiff said "Not Guilty!" Repeatedly.

326. Defendant C/O Hernandez entered the MHU unit at 3am with the premeditated intentions of hurting plaintiff Adams. He took hold of the leg irons knowing he would get his chance to hurt plaintiff Adams and he did  Plaintiff Adams was indeed defenseless and unable to physically stop this defendant from hurting him. This defendant used excessive force in retaliation to hurt plaintiff deliberately. This violate plaintiff's 8TH AMENDMENT of the UNITED STATES CONSTITUTION. This defendant ceased the moment that was made readily available to him by the excessive searching thats done during the calculated harassment thats imposed on plaintiff Adams daily Plaintiff Adams immediately wrote a grievance after this assault on him was done.

327  Defendants Lt. K  WYLIE and DEFENDANT SGT. N. MURPHY used excessive force by stripping plaintiff Adams naked and leaving him naked in front of other imates. Plaintiff Adams said no to taking off his clothes but these two defendants both forcefully took plaintiffs clothes off him against his will  This was not a security search nor a contraband search but, this stripping of the plaintiff against his will was excessive force. It was also cruel and unusual punishment. It was indeed

humiliating and done to humiliate the plaintiff. There is  no reason whatsoever to justify the cruel and unsual punishing actions that these two defendant imposed on plaintiff Adams. This horrible act was done twice to plaintiff by these very two officers. Sgt. N. Murphy even began laughing at plaintiff When Plaintiff asked if he could Keep his jumper on.

328. Because of the excessive force and assault by bucks county correctional officers mentioned in this complaint, plaintiff Adams suffered with a fractured nose, torn ligaments in right shoulder, torn ligaments in right hand-(wrist), a concussion, left facial contusion, face and head swelling, dehydration and an infection from being placed in feces covered cell after feces covered cell. There is not an valid legal explanation that could be given to justify forcefully taking a human beings clothes off and leaving him naked in from of other inmates. To be laughed at by both staff and inmates whose watching you trying to cover yourself is humiliating and demoralizing. No human being should ever be treated like that. To hearing homophobic slurs and other degrading words while plaintiff was forced to be on display naked, was unlawful, wrong, illegal  cruel and unusual punishment and denied plaintiff his equal protection of law. **Video footage will show this incident. It was captured on the Rotating camera,**

## COUNT VIII
**Plaintiffs 1st, 4th, 8th, and 14th Amendment has been violated by all defendants named in this complaint. Plaintiff's right to counsel, Freedom of speech, and right to associate; Plaintiff has been denied Access to the court; Plaintiff has been denied equal protection of Rights; Harassment; excessive searching; Plaintiff right to confidentiality between client and attorney has been violated; Conspiracy:**

329. Plaintiff hereby incorporates by reference the allegations contained in each and every preceding paragraph  as if fully set forth herein.

330. Defendant Harrison read plaintiff Adams legal mail in the door. He knew it was legal mail because he went into plaintiffs sealed legal mail while searching the cell and then removed it. Video footage shows this Defendant reading plaintiffs legal mail and the Defendant Sgt. K. Kinkelin Read it with Harrison Before ordering him to put the mail back.

331. Defendant Lt. C. Hugg, Read plaintiffs legal mail and then censored it buy removing much needed legal documents that would have vendicated plaintiff in his parole hearing. This denied plaintiff of his liberty interest and it denied plaintiff access to the court. It also chilled the confidentiality clause between client and attorney.

332. Defendant C/O Keefe read plaintiffs legal mail and then censored it and took much needed documents out of plaintiffs legal mail that would have caused plaintiff to have a different outcome at his parole hearing.

333 All of the defendant Correctional officers in this complaint did in fact participate in the everyday harassment and excessive searching of plaintiffs cell. With the exception of Correctional officer New and correctional officer D. Connor. Each Sergeant mentioned in this complaint, oversaw the excessive searching of their plaintiff cell on the MHU-unit at one time or another. Each of this officers was carrying out the order of Lieutenant Kavoch and Lt. C. Hugg and these officers were carrying out the order of captain Nottingham's. However each officer, Both Lieutenant and sergeant had the ability to not search plaintiffs cell. Each correctional officer had the ability to not ransanck and destroy plaintiffs cell. Each officer had the ability to grant plaintiff some type of relief at one point or another but didn't.

334. Defendants Acts and omissions were objectly unreasonable and outright against the law.

335. Defendant south Participated in a preliminary hearing conducted by the bucks county District Attorneys office. The hearing was set for March 27th, in front of the Honorable Judge Douple and then all of a sudden, a preliminary hearing was held on March 13th 2023, in front of a completely different judge, without plaintiff being present. Nor was there any counsel for plaintiff present on plaintiffs behalf. Plaintiff was not representing himself or proceding **PRO-SE** in that matter. The public defenders office did not represent plaintiff due to there being a conflict of interest. Plaintiff was not transported over to the courthouse as plaintiff was locked in cell 5 on the MHU unit at bucks county prison, where he was locked 24 hours a day. Plaintiff Adams also had a security bulletin on him when means, he has to be transported under handcuff and shackle with a sergeant present at all times. No supervisory opened plaintiff Adams cell door for court. No supervisor opened plaintiff tray slot for him to be handcuffed and shackled.

336. On March 13, 2023, Plaintiff tray slot was not opened for him to be cuffed for court. Plaintiff Adams was not told he had court. **(Please view video footage).** Plaintiff Did not refuse court and plaintiff door nor tray slot was ever opened. Sgt. R. Grous asked plaintiff if he wanted to got to Medical and plaintiff declined medical.

337. On March 13th, 2023 Defendant Sgt. R. Grous wrote a Misconduct and gave it to plaintiff Adams. It stated that The Sergeant cant to plaintiff Adams cell but, when it speaks about what took place, this defendant begans speaking about another inmate on a different unit. The Defendant stated; "Inmate Roberts...etc...etc". Plaintiff is Inmate Adams. not inmate Roberts. This fictious Misconduct report was written in an attempt to conspire with Defendant C/O south and the district attorney office, to say the plaintiff refused court. The Plaintiff never refused court and when does defendant ever have the ability, once in custody, to refused appearing at the irst most important proceding, The Preliminary Hearing? This is where the burden of Prima Fices is made. A Man or waman, is denied bail because they may be considered a flight risk. They sheriffs and other law enforcement are in places to take a person to court so justice can be served. This miscarriage of justice was done in vioation of the 4th Amendment and the 14th Amendment of procedural due process. Then bucks county officials, Namely; C/O South, Sergeant Grous and misconduct examiner ittman, all worked together alone with the district attorney, to conspire against the plaintiff, after the charges against plaintiff was thrown out, to have those charges south brought against Adams to stick.

338. The District Attorney of Bucks county and Bucks county Officials illegally conspired against plaintiff and denied plaintiff his due process by hold a preliminary hearing, without plaintiff present, and then saying plaintiff waived his hearing which was a lie. Plaintiff never waived his preliminary hearing and was conspired against to deny him his liberty and justice.

339. Defendant acts and omissions were objectively unreasonable and deliberately indifferent to plaintiff Adams 14th and 4th Amendment which is guarantees Plaintiff due process, and equal protection of law.

340. Plaintiff Adams cell was searched ever day for months straight. This harassmen as done to retaliate against plaintiff. No other inmate is searched after being cuffed and shackled for medication ever single day. Plaintiff has been transported to the Psychologist office and or to medical or to an attorney visit without leg irons on. Captain Nottingham deliberately and intentionally desired to cause plaintiff  needless harm, hurt, pain and intentional distress. This defendant, captain

as deliberately indifferent to plaintiffs needs of not being harassed and he indee
ontinued the excessive searching and the destroying of plaintiffs cell and propert
very day. Plaintiff asked this defendant for help and this defendant said:("**NO,
'm not going to help you. Stop writing me request slip**"). A witness to this incid-
nt has submitted an affidivait to this Honorable describing the Defendants actions
nd words.

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT L. ADAMS JR                    :
                                      :
        V.                            :          CASE NO. 2:23-cv-02142-JFM
                                      :
BUCKS COUNTY CORRECTIONAL             :
FACILITY et, al                       :

### MEMORANDUM OF LAW

Defendant Officer Simpson knew about the danger plaintiff Adams was in as he did instigate the argument, watched it intensify and heard inmate BOiling threaten plaintiff ADams. Inmate Boiling even told Correctional Officer Simpson that he was going to knock Plaintiff Adams out. **FARMER V. Banner 511 .U.S. 825 (1994)** Condition was so obvious that the officials must either know about it or be purposefully ignoring it. Defendant Deputy Warden Kelly Reed was also aware of Defendant C/O F. Williams constant threats and degation. and verbal assaults on plaintiff as the plaintiff wrote her request slips where she responded. Defendant Lt J. Whitedsall also was aware of Defendant C/O F. Williams mentalling torturing plaintiff Adams and he removed defendant F. Williams from the RHU For a couple of days. **Prison officials cannot ignore a problem once its brought to their attention. Vance V. Peters, 97 F.3d 987 (7th Cir. 1996)** Plaintiff wrote complaints, grievances and request slips complaining about not having a mattress, his food being spit in and more yet, bucks county staff and Administration continued to torture Plaintiff Adams and ignore his pleas for help.and humane conditions.

Prison official can not deny you a mattress for weeks **Gillis V. Litscher 468 "f.3d 488 (7th cir. 2006)** nor bedding clothing soap **Womble V. Chrisman, 770 F.Appx 918, 925 (10th cir. 2019)** (enial of clean toilets and showers) **Fountain V. Rupert 819 F. Appx 217, 219 (5th cir. 2020)** (Unsanitary conditions and inadequate nutrition). Bucks county official knew of Plaintiffs food being spit in by Defendant C/O D. Connor and C/O "new" and officer "Gray", because plaintiff wrote several grievance and request slips complaining about the matters of spit and tobacco spit in his food.

Looked at on a **"Totality of the condition theory"** in regards to the 8th Amendment of the U.S. Constitution, Plaintiff Adams had to endure cruel and unusual punishment for months. Being openly Gay should not have denied him his 14th Amendment equal protection rights nor should he have been bullied and antagonized by Defendant C/O F Williams, who continuously degraded plaintiff Adams because of his sexuality and religion...i.e, By calling plaintiff (Homo-muhammad, homo-muslim, Rats, faggets, bitch ass niggers, fagget niggers, pussy's and more). Calling plaintiff Adams so many names and labeling him a "Snitch" and making so many lewd sexual comments and encouraging plaintiff to commit suicide by telling him to save his medication for a week and then taking them was cruel and unusal punishment under

the 8th Amendment. See **Beal V. Foster, 803 F.3d 356, 358 (7th cir. 2015).** Everyon
has the right to be free from physical and sexual assault in prison, **Farmer v.
Brennan, 511 U.S.825 (1994)** "Prison official have a duty to protect prisoners fro
violence at the hands of other prisoners". Under the 8th Amendment, in **Harper v.
Dourrette, 107 fed. Appx. 444 (5th cir. 2004)** it is not reasonable for guards to
do noting after a prisoner has reported a substantial risk of injury. Defendant
C/O G. Simpson knew of the risk as the attacker informed him of his attack gettin
ready to take place on plaintiff Adams. He, Inmate Boiling  Then gave defendant
C/o south a Order to "step Off" so he could carry out the attack on plaintiff
Adams and this defendant, C/O Simpson, followed Inmate boilings order.
The institution itself failed to protect plaintiff Adams in violation of the equa
protection of the 14th Amendment as, it failed to fix the malfunctioned faulty
locks that's been known to official for years. Prison officials have issued over
a thousand misconducts to inmates that have broken out of their cells or broken
into other inmates cells and for breaking other inmates out of their cells. The
Defendant Superintendent Metellus and other top Officials have been aware of this
problem with the cell doors and have ignored it for decades. Due to these high
ranking officials neglecting to fix this security problem, plaintiff Adams was
harmed twice.
Prison officials violate the 8th Amendment when they act with deliberate indiff-
erence to a prison condition that exposes a prisoner to an unreasonable risk of
serious harm or deprives a prisoner of a basic need. Basic human needs such as
shelter, food, exercise, sanitation, hygiene. Plaintiff was rushed to the Doyles-
town Hospital by Bucks county Sheriffs on 11/28/2022 because of unsanitary living
conditions he was forces to live in, excessive force, being beaten and from being
tortured by bucks county officials. Defendant simpson also placed plaintiff in a
situation that he knew was unsafe for the plaintiff
Under the First, Fifth  and Fourteenth Amendment plaintiff has the right to petit
ion the court, due process of law and the freedom of speech. Opening plaintiffs
legal mail while not in his presence and reading it, chills the confidentiality
clause between lawyer and client. Censoring plaintiffs legal mail and reading
it outside of plaintiffs presence violates plaintiffs constitutional rights.
**Castillo v. cook county mail room, 990 F.2d 304 (7th cir, 1993); Bieregu v. Reno,
59 F.3d 1445 (3d cir. 1995); Al-Amin v. Smith, 511 F.3d 1317 (11th cir.2008);
Jones V. Brown, 461 F.3d 353 (3d. cir 2006)**
Plaintiff has also been placed under extremely hard conditions which are torturin
plaintiff. On 11/21/2022 plaintiff was transferred to the mental health unit (MHU
and placed in a cell covered with feces and urine. A urine soaked and feces
stained mattress was removed from 3-cell where plaintiff was housed on RHU ststus

The conditions on the MHU Unit are Putrid, Horrible, Unsanitary, with 24 hours of inmates constantly banging and kicking on their doors and screaming all night long by mental health patients. These conditions are far worse then anything imaginable and they are causing psychological damage to the plaintiff  In **"Palmer V. Richards 364 F.3d 60 (2d cir. 2004), a court held that 77 days under aggravated conditions could be atypical and significant. Gills v. litscher, 468 F.3d 495 (7th cir. 2006)** and **Mitchell v. horn, 318 F.3d 523 (3d cir.2003)** The very very bad conditions are cruel and inhumane and plaintiff Adams is suffering needlessly  **Wolff v. Mcdonnell 418 US.539 (1974). Sandin v. Conner, 515 U.S.472(1995)**=treatment that leads to an **atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life....Aref v. Lynch, 833 F.3d 242 (D.C.cir.2016)**  Plaintiff has a liberty interest for being transferred to mental health and forced to live i feces and urine covered cells with no mattress and with inmates that constantly banging and screaming all night on a block of only 8 cells.

Furthermore, to block plaintiff from the free LEXIS NEXIS law library service/program, denied plaintiff access to the court. Blocking plaintiff from calling his Attorney violates his First, fourth. Fifth  sixth and fourteenth Amendment of the UNITED STATES CONSTITUTION. **Allah v. Seiverling, 229 F.3d 220 (3d. cir. 2000).** Plaintiff Adams has been subjected to **"A Campaign of Harassment"** for filing grievances against staff and the bucks county institution. **Calhoun v. Hargome, 312 F.3d 730 (5th cir. 2002); Withe V. Wisconsin Dept. of corrections, 434 F.3d 1031 (7th cir. 2006)** The harassment has been constant and continous,  at the time when plaintiff takes his disability medication  (SUBOXONE). plaintiff Adams is a  American with a real disability, actually several disabilities and at 3am in the morning, every morning, He takes his medication. He's hand cuffed and shackled and then sat in a chair outside of his cell. For over 150 days straight, plaintiffs cell was searched, ransacked, tore up, trashed and left in disarray  There is no penological reason to search plaintiffs cell every single day, sometimes twice a day. This was lone to deliberately harass plaintiff  **Scher v. Engelke, 942 F.2d 921 (8th cir. 1991).**  Other RHU Inmate cells are not searched like plaintiff. No one is ever searched like plaintiff Adams cell is searched  Plaintiff was then stripped search in front of female Defendant sergeant N  Cruz, when there was no security need to so  **Hayes v. Marriott, 70 F.3d 1144 (10th cir. 1995).** Being stripped searched in front of a female officer violated plaintiffs 4th Amendment, **Cornwell V. Dahlberg, 63, F.2d 912 (6th cir. 1992).** It also violates plaintiffs **PREA 28 C.F.R.§ 115.15** imits cross-gender viewing, pat-downs and strip-searches to exigent circumstances nd require all such searches be documented.

Prison officials were deliberately indifferent to plaintiffs serious medical needs

Officer south Used Malicious and sadistical intent that was cruel and done for the purpose of Attempting to Murder/serious injure plaintiff as he tucked his head and used a mercinary kill move, attempting to tackle plaintiff. This defendant thruster upwardly, aiming at plaintiff Adams exposed defenceless face, while Adams was going down to the floo, and tried to smash plaintiffs face in. This attack would have drove plaintiff s nose (Bone cartilage) up into his brain.

Correctional Officer Defendant Schuster Brutally attacked plaintiff Adams while plaintiff was hand cuffed kneeing plaintiff in the head and face while using other officers for leverage so his damaging blow could be more powerful. This was done to purposely and intentionally hurt plaintiff Adams who was laying on the floor motionless and already subdued by six other officers. He deliberately and maliciously intended to hurt plaintiff Adams and his action was not done to restore order as again, plaintiff laid motionless on the floor, hand cuffed behind his back and with six other correctional officers on top of him. **Video footage shown at the preliminary hearing showed this defendant kneeing plaintiff Adams in the head and face repeatedly.** This defendant apologized to the plaintiff several times and stated: "I got caught up in the moment". This defendant is seen coming to the holding cell in the hallway where plaintiff was held on 11/21/2022 and apologizing again for assaulting plaintiff. **Video footage will show this defendant violently kneeing plaintiff Adams while he was handcuffed with six officers sitting on his motionless body.** Correctional officer John Doe #1 Punched plaintiff in the face seceral times. This defendant wore Blue gloves and had those blue gloves on when and while punching plaintiff in the face. **Brown v. Lippard, 472 F.3d 384 (5th cir. 2006)** – Beat while cuffed – and **Estate of Davis by Ostenfeld V, Delo 115 F.3d 1388 (8th cir. 1999) Beaten after obeying orders is excessive force and Brutality.** Defendant Sergeant A. Beck and correctional officer Geibert and John doe #2, Did indeed use excessive force and Assaulted plaintiff Adams when defendant Sergeant. Beck deliberately smashed the hand cuffs extremely tight. causing the plaintiff to scream from pain, then this defendant clinched the handcuffs even tighter. Defendant Geibert and John doe #2 Did use excessive force by slamming the plaintiff on the hard bed fram and, these defendants did use excessive force by snatching plaintiff through the tray slot, hyper-extending plaintiffs shoulders and then leaving plaintiff suspended in the air, causing plaintiff extreme pain. These defendants torn ligaments in plaintiff Adams right shoulder and hand. After ordering plaintiff Adams to lie face down on the floor, Defendant C/O Geibert the used excessive force by intentionally and deliberately kicking plaintiff in the was in a stepping way. These defendants continued to use excessive force when one of the three punched plaintiff in the back on the head while he laid face down as ordered.

Defendants Lieutenant K. Wylie and Sergeant N. Murphy, did use excessive force By forcefully stripping plaintiff Adams naked and then leaving his naked in front of other inmates. Calling plaintiff names and laughing at him while he trie to cover his nakedness was cruel and usual punishment. To forcefully strip a person naked against his will while he was hand cuffed was excessive force and it should not have been done at all. However these two defendant did this illegal unlawful humiliating act twice. On monday when plaintiff was returned to the facility from the hospital in Doylestown, These to defendant stripped plaintiff Adams naked again and left him naked in from of other inmates. Both prison officials and inmates made fun of plaintiff as he stood there again for a second time naked and humiliated. Defendant C/O Hernandez, did indeed use excessive force by cuffing plaintiffs leg with one leg iron and the pulling the chain up-wards extremely hard and holding that tention to cause plaintiff pain This C/O purposely set out to hurt the plaintiff and intentionally pulled the leg iron as hard as he could, cutting into plaintiffs leg. Plaintiff is seen on video footage yelling for Sgt N. Cruz, who was the supervisor on duty at that 3am operation. This sergeant immediately exited plaintiffs cell and then took the chains out of defendant Hernandez's assaulting hands

Plaintiff Adams was transferred to Delaware County Correctional Facility so he could not file grievances against bucks county and their many officials. During a meeting with Defendant Captain Nottingham and Defendant Deputy warden Kelly Reed, Plaintiff Asked for a grievance and Deputy K Reed Said: "Next week I'll give you a grievance", knowing full well that she was transferring Plaintiff that next monday. Fridays video footage will show the two defendants outside of plaintiffs MHU 2 cell talking with plaintiff **Allah v. Seiverling, 229 F.3d 220 (3d cir 2000 Prison officials must not use transfers or segregation to restrict access to the courts.** Plaintiff was on RHU status and had been restricted from using LEXIS NEXI because he was on RHU status Excessive force is any physical content by a guard that is meant to cause harm Rather than keep order

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners **[Farmer v. Brennon U.S 1994),6] "Cortes-Quinones v. Jimenez-nettleship, 842 F.2d 556, 558 (cal) (Internal quotation marks and colation omitted) cert,denied, 488 u.s. 823 (1988); see a;so Wilso v. Seiter 501 U.S. at 303 (describing "the protection [an inmate is afforded against other inmates "as a condition of confinement" subject to the strictures of the eighth Amendment) havin incarcerated persons with demonstrated Proclivities for antisocial criminal and often violent conduct, "Hudson V. Palmer, supra, at 526, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, this government and its officials are not free to let the state of nature take its course CF Deshaney supra at 199-200. Estelle, supra, at 347, but gratuitously allowing the beating or rape of one prisoner by another serves no "legitimate penological objective " Hudson V Palmer supra at 548 (Steven J.**

concurring in part and dissenting in part), any more than it squares with "evolvin standards of decency, '"Esrelle, supra, at 102 (Quoting Trop V. Dulles, 356 U.S.86 101 (1958) (Plurality opinion). Being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society." Rhodes, supra, at 347. [Farmer v. Brennon,_u.s_(1994).7)

Prison officials violate the 8th Amendment when that act with deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm, or deprives a prisoner of basic needs. To strip plaintiff naked and leave him naked in front of other inmates for a period of time, on two different occasions , did defendants Sgt. N. Murphy and Lt. K. Wylie, was cruel and unusual punishment. It was done with malicious and sadistical intent to hurt, harm and humiliate plaintiff. Each and every defendant within this entire complaint, have harassed plaintiff with a calculate harassment by searching plaintiffs cell every single day. +Hudson V. Palmer, 468 U.S.517,530 (1983)

Prison official and the District Attorneys office of Bucks county, did indeed violate plaintiffs 4th Amendment Right of Due Process by holding a preliminary hearing without plaintiff being present and then, stating plaintiff waived his preliminary hearing when, plaintiff did not sign a waiver not did counsel for plaintiff sign a waiver for plaintiff. Under constitutional law and state law, an attorney must make an appearance on behalf of a (Defendant) in the (defendant) is not representing him or herself. Furthermore  Defendants have a right to remain silent, he has the right to an attorney and if he can not afford an attorney the government will see to it that one is provided for him (the Defendant). Plaintiff did not waive his preliminary hearing and there was no counsel present on the plaintiffs behalf. Prison camera will show plaintiff tray slot was never opened for him to be hand cuffed so he could attend his preliminary hearing. Plaintiffs cell door was never opened for him to attend his preliminary hearing. Plaintiff can not lawfully let himself out of a cell nor can plaintiff legally leave the prison using his own will to attend this preliminary hearing. Plaintiff was not represented by any attorney as there was a conflict of interest between plaintiff and the public defenders office. Prison officials and the bucks county district attorneys office deliberately violated plaintiffs rights to due process  right to counsel and rights to a fair and impartial trial as evidence has illegally been entered into the record and prejudiceness was used to violate plaintiffs rights. This miscarriage of justice has caused plaintiff to suffer needlessly in violation of plaintiffs 4th and 8th amendment. Plaintiff has been attacked by bucks county, its guards and its court officials unjustly and prejudicely in violation of his 14th  8th, 1st  and 6th amendment  To allow such (criminal case) to proceed was a crime as what was done by bucks county prison official and the bucks county dis-

trict attorney was illegal  Defendant C/O South and other bucks county officials conspired with the district attorney of  bucks county to convict and violate plaintiffs rights. This violation of plaintiffs 4th and 1th amendment Violates everything our HONORABLE CONSTITUTION and country stands for...**JUSTICE FOR ALL!** Plaintiff Adams should not have been mentally tortured by defendant C/O F. William for three weeks straight. Plaintiff Adams has suffered with Bipolar depression, PTSD, Gender Dysphoria  and other psychological disorders that causes severe menta and emotional damage if constantly abused. Plaintiff has been taking psyche medic ation since he was the age of 8 and he has been in some type of treatment facilit that handles his issues going back to the late 1980ies. Plaintiff has a mental health record and has been in therapy to help me cope with living and other day t day problems that LGBTQ± men live with. Plaintiff has been placed in impatient facilities to help him and he's been on medication for the better part of 35 year It is illegal to torture a man by bullying him and mentally attacking him every day, verbally assassinating him and then, defacing his religious book and materia is cruel and unusual punichment. Plaintiff was a pre-trial detainee who had been locked in the RHU since 11/1/2022, Plaintiff is not a mental health patient who bangs, screams, sees thing nor does he hear things thats not there.
Plaintiff was seeking medical help and obeying all orders when Defendant SGT. A. Beck, Officer Geibert and John Doe #2 assaulted him and injured him. Plaintiff is a pre-trial detainee whose on state parole and he is also a convicted individual so, Both the 14th Amendment and the 8th Amendment claims apply to him and he respectfully request that both claims/clauses be applied.
Defendant F. Williams used excessive force and caused mental torment and psycho-logical trauma in violation of the 8th Amendment when he encouraged plaintiff to commit suicide. He told plaintiff to save his medication and take them. He then told plaintiff to hang himself from the bunk bed. The constant threatening of serious bodily harm to a man who suffers from PTSD from being shot in the belly in Philadelphia, significantly caused mental anguish and serious psychological injury. Verbally assaulting a person who suffers with bipolar, bipolar depression defiant disorder, gender identity, and more, constitutes excessive force, profess ional negligence and discrimination as plaintiff was told; "I hate you fake tough fagget nigga's". This defendant committed hate crimes against plaintiff and plain tiffs religion by defacing plaintiffs Islamic material and throwing plaintiffs Quran on the floor under the toilet. Defendant had never once been in plaintiffs cell until 11/21/22. (While plaintiff was on the unit in the shower) and Plainti knows that video footage will prove this. Just like video footage will show this defendant on plaintiffs cell door threatening plaintiff and degrading plaintiff on several different occasions. Calling plaintiff a **Rat, Snitch, Fagget, Homo-**

muslim, homo-muhammad, bitches, pussy's, dick eaters and more  violated plaintiffs
8th Amendment see **Williams v. Horner, 403 Fed. AppX. 138 (8th cir. 2010)**
In **Hudson v. Mcmillian, 112s.ct at 995.** see also **§3:7** The court held that the use
of force by prison guards violates the eighth Amendment when it is not applied
"In a good faith effort to maintain or restore discipline" but, rather, is
administered "malicious and sadistically to cause harm". The gratuitous infliction
of physical force by prison staff against inmates when it occurs can be the basis
of criminal as well as civil liability. **U.S. V. Miller, 477 F.3d 644 (8th cir.
2007) (Detention center supervisor convected and sentenced to 78 months in prison
when he act maliciously and sadistically by striking one inmate in the head with
a closed fist, kicked and stomped him in the upper body and called him a nigger
and kicked handcuffed second inmate.)** Under standards of the American bar assoc-
iation force should only be used to protect the safety of staff, to prevent serious
property damage, and to prevent escape but even in those cases force should not
be employed except as "a Last alternative and after other reasonable efforts to
resolve the situation have failed. "American Bar Association, standard for criminal
justice, treatment of prisoners, section 23-5.6(b)(2010). Force can never be used
merely to enforce a rule or an order unless the disciplinary process is inadequate
to address the problem. "American Bar Association, standard for criminal justice,
treatment of prisoners, section 23-5.6 (c)(2010). Plaintiff was not unruly or
fighting anyone. Plaintiff was handcuffed when Defendant C/O Schuster kneed him
repeatedly in the head and face. plaintiff was handcuffed and motionless while
laying on the floor with six other officers on his back when Defendant John Doe
#2 punched him in the face several times. Plaintiff was going down in surrender
when defendant C/O South attempted to fatally injury him. Plaintiff was handcuffed
and facing the wall when defendant Hernandez locked the leg iron around on of his
legs and began to violently pull the chain, causing the cuff to painfully dig
into plaintiffs leg and causing plaintiff to scream for help because of the pain
he felt. Plaintiff was fully clothed and hang cuffed when defendants SGt. N.
Murphy and Lt. K. Wylie stripped him naked and humiliated him and left him naked
in front of other inmates.
Officers falsely labeling plaintiff a Snitch is sufficient to support a eighth
Amendment claim: **Benefield v. Mcdowall, 241 F.3d 1267 (10th cir. 2001) (labeling
an inmate a "snitch" to the other inmates meets deliberate indifference standard)**
The recognition that physical injury is not an indispensable requirement that is
in keeping with the reality - all too apparent in recent times of terrorist attacks
and threats - that mental pain can be intentionally inflicted without necessarily
leaving physical scars. **(HEALTH CONSEQUENCES OF TORTURE (2001)** see also **Hudson

v. Memillian, 503 U.S.1, 112 S. ct. 995, 117 L. Ed. 2d 156 (1992) (observing that pain "in its ordinary meaning surely includes notion of psychological harm") (Blackmun, J., concurring); Jordan v. Gardner, 986 F,2d 1521 (9th cir. 1993) (Psychological hard from cross-gender body searches of women prisoners presents an eighth Amendment claim.). To hold otherwise would be to "Place various kinds of state-sponsored torture and abuse - of the kind ingeniously designed to cause pain but without a tell-tale "significant injury" - entirely beyond the pale of the constitution." Hudson, 503 u.s. at 1 (1992) (Blackmun, J., concurring) (citing the examples of such infamous torture devices as the tucker telephone." For this reason the sixth circuit of appeals held, "claims of excessive force do not necessarily require allegations of assault." Cornmell v. Dahlberg, 963 F.2d 912, 915 (6th cir. 1992) (Forcing an inmate to lie on the cold ground constituted excessive force..Etc) causes profound psychological harm see Washington v. Hively, 695 F.3d 641, 643 (7th cir. 2012)

Furthermore, the use of excessive force for revenge is prohibited. Defendant Sgt. A. Beck, C/O Geibert and John Doe #2 deliberately hurt plaintiff on the second shift, Retaliating for what happened or for what they thought happened on the morning shift. Lunsford v. Bennet, 17 F.3d 1574 (7th cir. 1994); Williams v. Kelly, 624 F.2d 695 (5th cir. 1980); Sadler v. young, 118 Fed. Appx. 762 (4th cir. 2005). however, the use of force to retaliate is forbidden. See e.g., Mitchell v. Keane, 974 f. supp. 332 (S.D.N.Y. 1997) aff"d, 175 F.3d 1008 (2d. cir. 1999) (Holding that the 8th Amendment does not allow guards to use force as retaliation).

For weeks plaintiff Adams complained about his food being spit in everyday, being forced to sleep on a cold frozen bed frame without a mattress, being denied a mattress, being forced to live in filthy nasty unsanitary conditions and he report these complaints on request and grievances forms. He also told ever supervisor that did their rounds and entered the MHU unit. He wrote Captain nottingham and Both Deputy wardens K. Reed and Deputy warden Cantino. Plaintiff Adams also reported every form of brutality to all the officials mentioned in this complaint but, not one of them intervened or provided plaintiff with any relief. "When Guard brutality occurs, other prison officials who are aware of it have a responsibility to intervene. If they do not, they may be held responsible for the ensuing injury. see, e.g., Bacchus v. Scarborough, 466 Fed, Appx. 269 (4th cir. 2012); Coleman v. St. lucie county jail, 433 Fed. Appx. 716 (11th cir. 2011); Webb v. Hiykel, 713 F,2d 405, 37 Fed. R. serv. 2d 254 (8th cir. 1983) (holding that guard had a responsibility to protect an inmate subject to his charge from physical assault by other officers despite the fact that the officers were his superiors)  Sgt  N Murphy and Lt. K Wylie forcefully stripped plaintiff against his will on 11/26/22 and left him naked

in front of other inmates. Officer Brassell had a responsibility to intervene.
Plaintiff Adams requested to press charges against officer Schuster who de;iberatel
assaulted him by kneeing him in the head repeatedly, while he was handcuffed,
laying motionless on the floor, with six other officers on top of him. Defendant
C/O Schuster maliciously and sadistically hurt plaintiff Adams, leaving permanent
swelling to the top part of Plaintiffs head and a scar on the left side of the
plaintiffs face. Doctors performed two cat-scans to check for bleeding on the
plaintiffs brain. **(See Harrah, 271 S.E.2d at 322. It is also within the states
authority to criminally prosecute guards who employ excessive force)**.
Plaintiff humbly request that both the (Malicious and Sadistic) and the (deliber-
ate indifference) standard be applied to all matters in this entire complaint as
he is both a convicted inmate whose serving a technical parole violation, and
is being held in the county jail as a pretrial detainee  (See e.g., **Estate of
Davis by Ostenfeld v. Delo, 155 F.3d 1388 (8th cir. !999) (Finding liability base**
**on a deliberate indifference theory when a "movement team" repeatedly struck davi**
**as he was lying motionless on the floor; the other officers failed to stop the
assault and did not report it to supervisors);**  Correctional Officer John Doe #1
repeatedly punched plaintiff in the face and Defendant Schuster Kneed plaintiff i
the head and face while he was handcuffed. **See video footage. Also see video
footage from camera at entrance of Rhu/**_____

Moreover, Correctional officer Franklin Williams, for three weeks straight did
verbally assault  and sexually assault (verbally)-plaintiff by calling him Fagget
Pussy's, bitch ass nigga's, Homo-muhammad, Homo-muslims. dick eaters, and for
calling plaintiff a Snitch. Constantly degrading plaintiff, humiliating him,
bullying him, calling him "Snitch ass Nigga" for writing grievances, violated the
8th Amendment. What Correctional officer F  Williams did was criminal and his
conduct has been known to high ranking officers. There's misconduct reports
written on correctional officer williams throughout the years and those incident
reports are what prevents this defendant from working the actual cell blocks in
population.  Plaintiff respectfully requested all the discenplinary report ever
written on Defendant C/O F  Williams and bucks county denied plaintiffs request.
See **Hubbard v. Taylor, 399 F.3d 150 (3d. cir. 2005) (Describing 14th Amendment
due process analysis or pretrial detainee's conditions of confinement claim);**
See **Helling v Mckinney, 509 U.S. 25, 113 S. ct. 2475, 125 L. Ed, 2d 22 (1993)
(Describing 8th Amendment analysis of conditions of confinement claim)**. Plaintiff
cites the above two case laws with regards to defendants bucks county and all its
named officers and High ranking officials failure to protect claim, based on use
of unsanitary cells with feces caked up on walls, sink  toilet, under toilet, bed

frame and for purpose of placing plaintiff in these cells for retaliation. Correctional officers John doe #1 Punched plaintiff in the face several times for the reason of maliciously and sadistacally causing plaintiff harm. Plaintiff was handcuffed and lying motionless. Defendant C/O south did not give a verbal warning or directive to plaintiff nor did he follow protocol when he maliciously and sadistically attempted to murder plaintiff who had surrendered before responding officers entered the RHU unit. Slamming the plaintiff on a hard Bed frame and then smashing the handcuffs down on plaintiff wrist, snatching plaintiff through the tray slot Hyper-extending his shoulders and then step kicking plaintiff in the fac and punching him in the back of the head- Did Sgt. A. Beck, C/O Geibert and john doe #2, so these thing to maliciously and sadistically cause plaintiff pain and harm. Plaintiff suffered needlessly at the hands of these officers, tearing  the ligaments in his right hand/wrist and right shoulder. Plaintiff screamed from the pain of the hand cuffs and he cried as he was suspended in the air. **Video Footage will show this incident on 11/21/2022.** The unnecessary and wanton infliction of pain, constitutes cruel and unusual punishment, which is forbidden by the 8th Amendment. **"Whitley v. Albers, 475 u.s. 312, 319, 106 S. ct. 1078, 89 L. Ed 2d 251 (1986).** Plaintiff is a convicted parole violator whose serving a 9 month hit. He i on Pennsylvania state parole. **"The 8th Amendment applies only after the state has secured a formal adjudication of guilt because prior to that time is has not acqu-ired 'the power to punish with which the 8th Amendment is concerned, '"Sylvester v. City of Newark 120 F. Appx 419, 423 (3d. cir. 2005) (quoting Ingraham v. wright 430 u.s 651, 671-72n. 40, 97 s. ct. 1401, 51 L. Ed. 2d 711).** A plaintiff state an 8th Amendment excessive force claim by pleading facts that indicate force was used maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore peace. see **Wilkins V. Gaddym 559 u.s.34, 37, 130 s. ct. 1175, 175 L. Ed. 2d 995 (2010).** A Municipality it "Liable under § 1983 on where the Municipality itself causes the constitutional violation at issue. For Liability, the constitutional injury must have been caused by a municipal "policy" or "Custom". **"City of Canton v. Harris ("canton"), 489 u.s. 378, 385, 109 s. ct. 1197, 103 L. Ed. 2d 412 (1989).** and **"Monell v. Dep't of social services of city of NEW YORK, 436 U.S. 658, 694, 98 s. ct. 2018. 56 L. Ed. 2d 611 (1978).** Taking plaintiffs legal mail because it didn't have Bucks county"s name on it Violated plaintiffs 4th and 14th amendment of the United States Constitution. Blocking plaintiff from LEXIS NEXIS Legal Service and blocking plaintiffs phone pin so he couldn't call his attorney, denies  plaintiff Access to the courts and it denies him his right to an attorney. Denying plaintiff a visit violates his First, Fourteenth and Eighth Amendment of the United States Constitution. No other inmate is treated like plaintiff is treated/tortured by

Bucks county and its officials. Bucks county has even conspired with the Buck County District Attorney's off and held a preliminary hearing without plaintiff or counsel for plaintiff being present, which is a miscarriage of justice and a complete prejudicial error that was maliciously done to deprice plaintiff of his 4th amendment of due process and of his liberty interest. The bucks county Distric attorney even switched judges to help inadvertently conspire against plaintiff. **Allegations of a** conspiracy must provide some Factual basis to support the elements of a conspiracy: agreement and concerted action. **"Capogrosso v. The supreme court of New Jersey, 588 F.3d 108, 185 (3d. cir. 2009) (quoting Crabtree V ıchmore   904 F.2d 1475, ±48± (10th cir. 1990).** The existence of a conspiracy may be ınferred from the circumstances. **Capogrosso, 588 F.3d at 184.** Defendant Officer South d other bucks county Prison officials conspired with the district Attorneys office ·charge plaintiff with a crime that He did not commit. Plaintiff Adams also never aived his preliminary hearing and did not sign any documents waiving such hearing. Jor did Plaintiff's Attorney sign or attend this preliminary hearing. All other prisoners are taken to their preliminary hearings and even forced to attend it or .t is continued until both parties (Especially the defendant) is present. This act lone by Bucks county officials, Defendant C/O South and the Bucks county district ıttorneys off violated plaintiffs ±4th Amendment and its a miscarriage of justice. .t also violates plaintiff's 4th Amendment of due process.

Furthermore,  Defendant C/O Simpson telling inmates that Plaintiff Adams was a jail louse "Snitch", Encouraged inmate boiling to break into Plaintiff Adams cell and ıssault hi,. Therefore defendant C/O Simpson is Responsible see **McGill, 944 F.2d at** ¡47. Inmate Boiling told Defendant C/O Simpson he was going to physically attack Plaintiff Adams after simpson called Plaintiff Adams a snitch. He then told Defendan ¡/O Simpson to walk off while he Handled Plaintiff Adams," and Defendant C/O Simpso followed his orders and from a distance, watched inmate boiling break into the ¡ plaintiffs cell. After Inmate Boiling attacked Plaintiff Adams, Defendant C/O ¡impson immediately walked over to Plaintiff Adams cell and keyed it open. He asked [How did he get in here?" Referring to Inmate Boiling which shows, He watched This ınmate (Boiling) attack plaintiff Adams and did nothing about it. No Code 99 was :alled nor did he protect Adams or attempt to protect Adams. He intentionally and leliberately got plaintiff Adams assaulted and then lied on his misconduct report ınd stated, he was stocking toilet paper. The security door failed to keep inmate 'Boiling" out of the locked cell that plaintiff Adams was in because Bucks county ınd its officials have neglected to fix the problem with the locks (That they've ¡een aware of for decades). Inmate "Boiling) is seen picking the lock on video 'ootage.

Plaintiff continues to suffer from mental anxiety and emotional distress as he con-

tinuously harassed each and every single day by buck county official and their excessive searching and destroying of plaintiffs cell and legal material. In june of 2023, plaintiff Adams was transferred to Montgomery County Correctional Facilit in Eaglesville Pennsylvania, and the harassment of bucks county official ended. Th is because plaintiff was transferred at the end of June 2023 but, The harassment and excessive force and excessive searching and more continued at bucks county up untill the day plaintiff left.

The court of Appeals for the Third Circuit set forth the standard for imposing lia bility against Supervisor under §1983 in **Sample v. Diecks, 885 F.2d 1099 (3d cir 1989).** In sample, the third circuit noted that "a person" is not the 'moving force [Behend] the constitutional violation' of a subordinate, unless that 'person'.... has exhibited deliberate indifference to the plight of the person deprived." 885 F 2d at 1117-18. Defendants Bucks county, superintendent Metellus, Deputy Warden K. Reed, Deputy Warden Cantino, Deputy Warden Galione, Captain Nottingham, Lieutenant K. Wylie, Lieutenant M. Clayton, Lieutenant Kavoch, Lieutenant C. Hugg, Lieutenant J. Whitesall, Sergeant N. Murphy, Sergeant Raggi, Sergeant A. Beck, Sergeant R, Grous, Sergeant N. Cruz, Sergeant A. Cruz, Sergeant C. Odonnell, and Sergeant K. Kinkelin all was well aware of plaintiff begging them for a mattress so he wouldn' have to sleep on a extremely cold bed frame and they all knew he wanted a shower because, plaintiff Adams personally begged each and every one of them verbally and through written documents. Sergeant K. Kinkelin deliberately moved plaintiff from cell 3 after he had cleaned it, into 2-cell that was littered with feces and urine. Feces was visibly clear and all over the cell. **Video footage will even show inmate monitor trying to clean the cell but was unable to because of the amount of feces.** Sergeant Odonnell tried to move plaintiff Adams from 5-cell into 8-cell after inmate "Lopez" was transferred. Plaintiff refused and defendant SGT. Odonnel threatened to pepper spray plaintiff. Plaintiff wrapped his face with a Towel and refused to move into another cell covered with feces after he has scrubbed 5 cell. Bucks county staff and its officials have deliberately moved plaintiff Adams into feces covered cells to cause him great harm. to degrade, humiliate, torture, hurt, retaliate and to cause cruel and unusual punishment. These official were deliberate indifferent to plaintiff Adams basic needs, his sanitary needs, his medical needs and his human rights as a human being. Lieutenant K. Wylie took the first Feces and urine soaked mattress from plaintiffs cell after plaintiff Adams unknowingly laid on it and became soaked. All mentioned supervisors seen, saw and was well aware of the unsanitary, vile, inhumane conditions plaintiff Adams was forced into and they all were deliberately indifferent to plaintiff Adams health and safety and need for humane conditions. Lieutenant Clayton than gave plaintiff Adams a mattress the was cover with feces and stained urine. Plaintiff is seen scrubbing the mattress vigorously  after begging Defendant C/O B. Butler for cleaning sup-

plies.  The Defendants knew their Actions and practices created an unreasonable risk of harm. The Defendants knew their actions caused needless pain, suffering, and risk that resulted in plaintiff Adams being harmed from their failure to employ Humane supervisory practices and procedures. Captain Nottingham and every other named Official was indeed deliberately indifferent under the eighth Amendment and Fourteenth  Amendment clause. Plaintiff Adams was Rushed to Doylestown Hospital by bucks county Sheriffs, in an ambulance, because of injuries he obtain at the bucks county prison by its officers and conditions of inhumane, excessive force, assault, battery, negligence, failure to protect, deliberate indifference and more. Plaintiff Adams nose was fractured by officers who assaulted him while he was handcuffed. The Constitution **"Does not mandate comfortable prisons,"** **Rhodes V. Chapman, 452 U.S.** **337, 349 (1981), But neither does it permit inhumane ones, "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment". Helling, 509 U.S., at (slip op., at 5).** In its prohibition of "Cruel and Unusual punishment, "The Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. see **Hudson V. Mcmilliam, 503 U.S. 1 (1992).** The Amendment also imposes duties on these officials, who must provide humane condition of confinement, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take Reasonable measures to guarantee the safety of the inmates, "**Hudson V. Palmer, 468 U.S. 517, 526-527 (1984). See Helling, supra, at __(slip op., at 526-527 washington v. Harper, 494 U.S.210, 225 (1990); Estelle, 429 U.S., at 103. CF. Deshaney v. Winnebago sounty Dept. of Social service, 489 U.S. 189, 198-199 (1989). (The Eight Amendment prohibits all punishment, physical and mentall, which is "Totally without Penological Justif8ication") Gregg V. Georgia, 428 U.S. 153, 183 (1976).**

Plaintiff humbly request that this HONORABLE COURT Retrieves all video footage of plaintiff from 11/1/2022, beginning at 8am up until that last day in june when the plaintiff was transferred. There are five cameras on the RHU unit, 3 down stairs, (One at the entrance, one over the desk and on in the corner to the right of the officers desk. Then there one on the second floor right next to cell-11). Theres two camera on the MHU-unit. (A rotating camera in front of three-cell and a camera at the entrance of the unit.) **Scott v. Harris, 55o U.S. 372, 278, 127 S. ct. 1769, 167 L.Ed. @d 686 (2007),** but the existence of a security video presents an "added wrinkle. "Id. at 378,127 S. C. 1769. But in cases where there is a reliable Video depicting the events in question, courts must not adopt a version of the facts that is "Blatantly contradicted" by the video footage. Id. at **380, 127 S. CT. 1769.** Also **Jacobs V. Cumberland Cnty. 8 F. 4th 187 (3d cir. 2021)**

**Giles V. Kearney. 571 F.3d 318, 326 (3d cir. 2009)**-(It was Established that an officer may not kick or otherwise use gratuitous force against an inmate who has been

(15)

Subdued); Estate of Davis V. Delo, 115 F.3d 1388, 1394-95 (8th cir. 1997) ("The law was well established that striking an unresisting inmate....in the head while four other officers were restraining his limbs....is a violation of the Eighth Amendment").; Skrtich V. Thornton, 280 D.3d 1295, 1303 (11th cir. 2002) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued). Therefore plaintiffs 8th Amendment Rights were Violated by Defendants C/O Schuster, C/O Geibert, C/O John Doe #1, C/O John Doe #2, Sergeant A. Beck, Sergeant N. Murphy, Lieutenant K. Wylie Sergeant N. Cruz for viewing plaintiff naked and ordering plaintiff stripped searched in front of her, C/O Geibert For Strip searching plaintiff in front of Sergeant N. Cruz, C/O Harisson for Strip searching Plaintiff in from of SGT. N. Cruz, C/O Miles, For strip searching plaintiff in front of SGT. N. Cruz. SGT. N. Murphy and LT. K. Wylie, who forcefully stripped plaintiff naked and left him in front of other inmates naked on two different occasions, caused plaintiff mental Anguish, humiiliation and needless pain, without any penological reason.

In Brooks V. Kyler, 204 F.3d 102 (3d cir. 2000) The court said: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Mi;house v. Carlson, 652 F.2d 371, 374 (3d cir. 1981) plaintiff has been denied Access to the courts and officer Brassells lied on his misconduct stating plaintiff spit on him. See footage. Defendant Brassells was too far behind the incident for vomit to have gotten on him. The air was not on and physics doesn;t work how he stated. Defendant hearing examiner DITTMAN also lied and stated he seen plaintiff fighting on video from 11/1/23. Inmate "Boiling" broke into Plaintiff Adams locked secured cell, due to the fault locking mechanisms with in the doors of the cells, that bucks county and its officials have neglected to fix and repair. Bucks county and its officials neglected and failed to provide plaintiff Adams with protecting by deliberately neglecting to install escape proof cell doors.

### PRAY FOR RELIEF

Wherefore, Plaintiff Adams Respectfully request that this court enter judgement:

1. Granting plaintiff Adams a declaration that the acts and omissions described herein violated his Rights under the Constitution and Laws of the UNITED STATES, and

2. A Preliminary and permanent injunction ordering Defendants Bucks County, SPDT. Metellus, Deputy Warden Cantino, Captain Nottingham to unrestrict plaintiffs account and allow plaintiff to use Lexis Nexis legal service, to Allow plaintiff to call his Attorney, to remove security bulletin status from plaintiff and to remove Administrative custody status from plaintiff. To remove unlawful hole time from plaintiff.

3. Granting plaintiff Adams compensatory damages in the amount of $100,000 (One Hundred Thousand) Dollars against each defendant, jointly and severally. namely:

4. Plaintiff Adams seeks Nominal and punitive damages in the amount of $60,000 (Sixty Thousand) dollars against each defendant, Jointly and severally. Plaintiff suffered greatly at the hands and actions of bucks county and its officials named in this complaint. Plaintiff has lost wages, has suffered both physical, mental and emotional anguish tremendously, causing plaintiff to become heavily medicated. Plaintiff is traumatized and continues to suffer from PTSD because of his suffering that bucks county and its officicals imposed on him.

5. Reasonable Attorneys fees and cost; and

6. Such other Relief the Court deems just and proper


Date:

Respectfully Submitted, ROBERT L ADAMS JR
#23-03884
60 Eaglesville Road
Eaglesville PA, 19402

### VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe to be true. I certify under penalty of Purjury that the foregoing is true and correct.


                                        RESPECTFULLY SUBMITTED:



ROBERT ADAMS -2303884
MCCF
60 EAGLESVILLE ROAD
EAGLESVILLE PA, 19104





MONTGOMERY COUNTY
CORRECTIONAL FACILITY

FIRST-CLASS





CLERK OF COURT
U.S. DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA
601 MARKET ST., ROOM 2609, PHILADELPHIA, PA 19106-1797



RECEIVED

SEP 2 9 2023

BY:_____